Shannon Seibert (State Bar No. 240317)
Joe Bautista (State Bar No. 255708)
SEIBERT & BAUTISTA
18711 Tiffeni Drive #17-129
Twain Harte, California 95383
Telephone: 209.586.2890
Facsimile: 888.874.8107
*Attorneys for Plaintiff*

KAMALA D. HARRIS
Attorney General of California
FIEL D. TIGNO
Supervising Deputy Attorney General
MICHAEL D. GOWE
Deputy Attorney General
State Bar No. 226989
 1515 Clay Street, 20th Floor
 P.O. Box 70550
 Oakland, CA 94612-0550
 Telephone: (510) 622-2201
 Fax: (510) 622-2121
 E-mail: Michael.Gowe@doj.ca.gov
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND GUTHREY, | **1:10-cv-02177-AWI-BAM** |
| Plaintiff, | **JOINT STATEMENT RE DISCOVERY DISAGREEMENT** |
| vs. | |
| CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, MICHAEL PATE, JR., and DOES 1 THROUGH 25, Inclusive, | |
| Defendants. | |

////

////

////

# I.

## DETAILS OF CONFERENCES

Plaintiff submitted his first set of written discovery requests to Defendant CDCR and Defendant Michael Pate, Jr. on August 24, 2011. Plaintiff submitted a second set of written discovery to Defendant CDCR on October 4, 2011. Defendants served their responses to Plaintiff's requests, pursuant to stipulation, on November 21, 2011.

Counsel for Plaintiff and counsel for Defendants have extensively met and conferred in the intervening months, beginning with a lengthy letter sent to Defendants' counsel by Plaintiff's counsel on December 17, 2011. Due to the holidays and Plaintiff's counsel's trial schedule, the parties engaged in verbal meet and confer efforts in February 2012, which resulted in resolution of some areas of dispute. The parties entered into a protective order, and supplemental responses were served by Defendants in March 2012.

Despite these efforts, three areas of dispute remained, and Plaintiff's and Defendants' counsel engaged in a telephone conference with the Court on April 16, 2012. The categories of discovery requests discussed during the conference call were 1) Plaintiff's requests for information regarding Defendant Michael Pate, Jr.'s religious beliefs, 2) Plaintiff's requests for information regarding complaints for religious or racial discrimination submitted or filed by SCC (i.e., Sierra Conservation Center) employees against CDCR employees including Defendant Pate for the last 10 years and requests for religious accommodation submitted to SCC by employees other than Plaintiff for the last 10 years, and 3) personnel files of Defendant CDCR employees. In this non-binding discussion, the Court indicated that, based on the written and oral arguments made by the parties, Plaintiff had failed to establish a basis for discovery in the first category, and suggested that the parties meet and confer regarding a more limited scope for the information requested in the second category. In the conference call, however, CDCR indicated that it would not disclose information in the second category even if it encompassed a shorter period of time. Regarding the third category, the parties' counsel disagree on the Court's indications during the telephone conference: defense counsel believes that the Court indicated that nonparty CDCR employee records are not relevant and

////

////

would not be subject to disclosure, whereas plaintiff's counsel believes that the Court only advised the parties to continue to meet and confer to determine the portions of personnel files that are relevant to Plaintiff's action.

Following the telephone conference with the Court, Plaintiff's counsel and Defendants' counsel continued to meet and confer regarding outstanding discovery. Plaintiff's counsel and Defendants' counsel spoke immediately following the April 16, 2012 telephone conference to confirm that Defendants would not produce the requested discovery absent a motion to compel. Counsel for the parties spoke on April 27, 2012 and again on May 14, 2012 regarding outstanding discovery that had been agreed to but not yet produced.

Through these conversations, it became clear to Plaintiff that matters Plaintiff's counsel previously believed had been agreed to were in fact in dispute, and that the defendants' continued lack of disclosure could no longer be tolerated given the fast-approaching discovery cutoff. Plaintiff's counsel informed Defendants' counsel that if the discovery was not served by May 17, 2012, Plaintiff's counsel would be forced to include the requests in the present motion.  Based on indications by the Court in the informal telephone conference, however, as well as the defendants' position that Plaintiff's discovery requests are increasingly excessive and lack foundation on actionable claims, the defendants believe that Plaintiff is entitled to no additional discovery and should instead voluntarily dismiss the entire action.

## II.

## NATURE OF THE ACTION & ITS FACTUAL DISPUTES

This is an action for discrimination against Plaintiff Raymond Guthrey by Defendants CDCR and Michael Pate, Jr. based on Plaintiff's religion, perceived race, and/or perceived national origin in violation of the federal Constitution, Section 1983, and Title VII.  Plaintiff Raymond Guthrey is an adherent of the Ananda Marga faith, which he alleges advocates the maintenance of naturally grown hair on men's heads as well as the maintenance of a full beard by men.

Plaintiff retired from Defendant CDCR in December 2008 as a Correctional Counselor I at Sierra Conservation Center ("SCC"). Plaintiff  contends that he was regularly subjected to verbal taunting due to his alternative religious beliefs (Ananda Marga) and his perceived race/national origin (Middle Eastern) during this period of employment and prior to his retirement in 2008.

Plaintiff  never filed a complaint with CDCR for this alleged conduct at any time during his employment.

In February 2010, Plaintiff applied to CDCR to work as a retired annuitant at SCC. On or about April 29, 2010, Pate, who holds the position of Correctional Counselor II, contacted Plaintiff about returning to SCC to work under his supervision in a Correctional Counselor I position. Guthrey agreed. During this conversation, Guthrey's hair length and beard came up, as his photograph had recently been in the local newspaper. Pate instructed Plaintiff to report to work on May 3, 2010, when Plaintiff would begin one week of block training. Plaintiff testified that he indicated to Pate that he'd arrive for the training with his hair and beard in compliance with the applicable grooming standards for his position as he understood them.

Upon entering the facility to begin the training program on May 3, 2010, Plaintiff encountered Pate. Plaintiff alleges that, upon seeing Plaintiff, Pate told Plaintiff that "this isn't going to work" with reference to Plaintiff's hair and beard. Plaintiff alleges that Pate told him that Pate would return to the training room but that Plaintiff would not.

Plaintiff contends that Pate's conduct during their encounter on May 3, 2010 was motivated by religious and/or racial bias against Plaintiff.  Plaintiff's contention is based on his previous experiences with Pate over the course of nearly twenty (20) years while Plaintiff worked as an employee of Defendant CDCR and his theory that Pate adheres to religious beliefs that teach intolerance to followers of untraditional faiths.

Defendants deny that Pate acted with any unlawful bias against Plaintiff's religion, race, or national origin (perceived or otherwise). Defendants contend that Plaintiff was in violation of CDCR's grooming standards when he arrived for training on May 3, 2010, and that Pate acted in a lawful manner that is consistent with the applicable grooming policies as well as his own obligations as a supervisor.

////

////

////

////

////

# III.

## CONTENTIONS OF EACH PARTY

**A.**     **Plaintiff's Requests for Information Regarding Defendant Pate's Religious Beliefs.**

Plaintiff requested information regarding Defendant Pate's religious beliefs and practices through seven (7) interrogatories and two (2) requests for production. The propounded discovery and objections to each are as follows:

**INTERROGATORY NO. 1:**

Do you believe that human beings have souls?

**RESPONSE TO INTERROGATORY NO. 1:**

Defendant objects to this interrogatory as vague and ambiguous as to the terms "believe" and "souls" and that it is not calculated to lead to the discovery of admissible evidence. Defendant also objects that the interrogatory is designed to harass and annoy. Defendant further objects to this interrogatory on the basis of his right to privacy and his constitutional rights under the First Amendment.

**INTERROGATORY NO. 2:**

Do you subscribe to a religious belief system?

For the purposes of this interrogatory, "subscribe" means believe in, adhere to, follow, believe to be the truth, think to be the truth, and/or consider to be legitimate; "religious belief system" means any formal or informal, traditional or nontraditional organization that teaches, believes in, supports, or otherwise advocates the existence of a supernatural entity.

**RESPONSE TO INTERROGATORY NO. 2:**

Defendant objects to this interrogatory as vague and ambiguous as to the terms "subscribe" – including its supplied variety of definitions – and "religious belief system" – including its supplied variety of definitions. Defendant further objects on the grounds that the interrogatory calls for the production of information that is not calculated to lead to the discovery of admissible evidence. Defendant also objects that the interrogatory is designed to harass and annoy. Defendant further objects to this interrogatory on the basis of his right to privacy and his constitutional rights under the First Amendment.

////

**INTERROGATORY NO. 3:**

If YOUR answer to Interrogatory No. 2 is in the affirmative, please describe the religious belief system to which you subscribe.

For the purposes of this interrogatory, "subscribe" means believe in, adhere to, follow, believe to be the truth, think to be the truth, and/or consider to be legitimate; "religious belief system" means any formal or informal, traditional or nontraditional organization that teaches, believes in, supports, or otherwise advocates the existence of a supernatural entity.

**RESPONSE TO INTERROGATORY NO. 3:**

Defendant objects to this interrogatory as calling for the production of information that is not calculated to lead to the discovery of admissible evidence, and because it is overly broad as well as vague and ambiguous. Defendant also objects that the interrogatory is designed to harass and annoy. Defendant further objects to this interrogatory on the basis of his right to privacy and his constitutional rights under the First Amendment.

**INTERROGATORY NO. 4:**

Have YOU attended any service at any religious institution in the previous five years?

For the purposes of this interrogatory, the definition of "service" includes, but is not limited to, an event held or attended for the purpose of demonstrating, pledging, exhibiting, feeling, expressing, and/or commemorating YOUR belief in, commitment to, desire for understanding of, and/or adherence to the principles of a religious belief system; "religious belief system" means any formal or informal, traditional or nontraditional organization that teaches, believes in, supports, or otherwise advocates the existence of a supernatural entity; "religious institution" includes, but is not limited to, a church, synagogue, mosque, temple, house, office, or any other physical place where YOU have been present for the purpose of worshipping, expressing belief in, understanding, discussing, or celebrating any entity that is not part of our physical world.

**RESPONSE TO INTERROGATORY NO. 4:**

Defendant objects to this interrogatory on the grounds that it is not calculated to lead to the discovery of admissible evidence, and because it is overly broad, unduly burdensome and oppress, and vague and ambiguous both despite and because of its supplied definitions. Defendant also objects

that the interrogatory is designed to harass and annoy. Defendant further objects to this interrogatory on the basis of his right to privacy and his constitutional rights under the First Amendment.

**INTERROGATORY NO. 5:**

If YOUR answer to Interrogatory No. 4 is in the affirmative, please provide the time, date, and location, and facility name of each service that YOU have attended in the previous five years.

**RESPONSE TO INTERROGATORY NO. 5:**

Defendant objects to this interrogatory on the grounds that it is not calculated to lead to the discovery of admissible evidence, and because it is overly broad and unduly burdensome, oppressive, and designed to harass and annoy. Defendant further objects to this interrogatory on the basis of his right to privacy and his constitutional rights under the First Amendment.

**INTERROGATORY NO. 6:**

Have YOU discussed YOUR thoughts or beliefs about religion or spirituality with any other natural person in the previous five years?

For the purposes of this interrogatory, "religion or spirituality" means any formal or informal, traditional or nontraditional belief system that accepts as truth, teaches, or otherwise advocates the existence of a supernatural entity.

**RESPONSE TO INTERROGATORY NO. 6:**

Defendant objects to this interrogatory as it violates his right to privacy and seeks to chill his freedom of speech and association under the First Amendment. Moreover, the interrogatory is not calculated to lead to the discovery of admissible evidence, and because it is overly broad, unduly burdensome, oppressive, designed to harass and annoy the defendant, as well as vague and ambiguous as to the terms "religion," "spirituality," and "discuss."

**INTERROGATORY NO. 7:**

If the answer to Interrogatory No. 6 is in the affirmative, please provide the time, date, location, and identity of the individual with whom YOU spoke for each conversation YOU have had in the previous five years.

**RESPONSE TO INTERROGATORY NO. 7:**

Defendant has not answered Interrogatory No. 6 and furthermore objects to this interrogatory as it violates his right to privacy and seeks to chill his freedom of speech and association under the

First Amendment. Moreover, the interrogatory is overly broad, unduly burdensome, oppressive, designed to harass and annoy the defendant, vague and ambiguous, and is not calculated to lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 6:**

If you responded in the affirmative to Interrogatory No. 2, all DOCUMENTS that REFER OR RELATE to the religious belief system identified in Interrogatory No. 3.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Defendant objects to this request as it is overly broad, without reasonable particularity, oppressive, unduly burdensome, and on the basis to his right to privacy and his constitutional rights under the First Amendment. Moreover, this request is beyond the scope of permissible discovery as it encompasses potentially responsive documents that are not relevant to the parties' claims and defenses, nor likely to lead to the discovery of admissible evidence. Finally, the request is vague and ambiguous as to the phrases, "religious belief system" and "REFER OR RELATE to the religious belief system."

**REQUEST FOR PRODUCTION NO. 7:**

If you responded in the affirmative to Interrogatory No. 4, all DOCUMENTS that REFER OR RELATE to each service YOU have attended at a religious institution in the previous five years.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Defendant objects to this request as it is overly broad, without reasonable particularity, oppressive, unduly burdensome, and on the basis to his right to privacy and his constitutional rights under the First Amendment. Moreover, this request is beyond the scope of permissible discovery as it encompasses potentially responsive documents that are not relevant to the parties' claims and defenses, nor likely to lead to the discovery of admissible evidence. Finally, the request is vague and ambiguous as to the phrases, "each service YOU have attended at a religious institution" and "REFER OR RELATE to each service YOU have attended at a religious institution."

1.      **Plaintiff's Argument in Support of Production of the Requested Discovery**

The Federal Rules of Civil Procedure allow for broad discovery in civil actions of "any matter, not privileged that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). Relevant information need not be admissible at the trial if the discovery appears reasonably

calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1); *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005). The party opposing discovery has the burden of showing that any challenged discovery should not be allowed, and also has the burden of clarifying, explaining and supporting its objections. *DirecTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002).

While the constitutional right to privacy has been recognized to protect many areas of choice in individuals' lives, no such right has been recognized that would ensure the confidentiality of a litigant's religious beliefs or practices, particularly where those religious beliefs and practices are practiced in the public sphere.

Courts widely recognize that privacy concerns are not absolute and that one's right to privacy must be balanced against other important interests. *See, e.g., United States v. Aguilar,* 883 F.2d 662, 703 (9th Cir. 1989) (superseded by statute on other grounds). In *Aguilar*, the defendant argued that "privacy, trustworthiness, and confidentiality are at the very heart of many instances of free association and religious expression and communication." *Id.*, at 703. In denying the defendants' argument that the First Amendment protected them from the government's gathering of information regarding ((religious beliefs)) in the public sphere, the Ninth Circuit explained that the Supreme Court "unmistakably declared that persons have no expectation of privacy or confidentiality in their conversations and relations with other persons, no matter how secretive the setting." *Id.* (referencing *Hoffa v. United States,* 385 U.S. 293 (1966)).

Another example of the courts' unwillingness to allow individuals suspected of violating the law to hide behind a cloak of confidentiality can be found in the context of criminal cases in which the courts have granted approval of actual government surveillance of protected activities. In these cases, the courts have found that inquiry into, collection of information regarding, and introduction of evidence regarding a defendant's religious or political beliefs or practices are not prohibited by the First Amendment, particularly when such activities take place in the public sphere or when evidence regarding such activities is necessary to prove an element of a suspected offense.

In *United States v. Oaks*, the government conducted undercover surveillance on the defendant and others after the defendant refused to file a tax return. The defendant was a member of a tax rebellion group, and the government sent undercover agents to the meetings to conduct

surveillance on the participants. The Ninth Circuit held that the gathering of information by the government agents was not prohibited by the First Amendment, because "The meetings were open to the public and the participants were openly advocating the willful violation of Internal Revenue laws. The risk of surveillance of meetings of this type must be assumed." *United States v. Oaks,* 527 F.2d 937, 941 (9th Cir. 1975).

In *United States v. Rubio,* the Ninth Circuit dismissed an argument by members of the Hell's Angels Motorcycle Club that the First Amendment prohibited the collection of information regarding their activities in the club. The Court agreed that the First Amendment protected the motorcycle club members' rights to associate with another but "strongly disagreed" that a criminal investigation must be prohibited when the investigation "interferes with such First Amendment interests." *United States v. Rubio,* 727 F.2d 786, 791 (9th Cir. 1983). The court offered by way of example in support of its holding the case of conspiracy, where agreement – that is, motivation – between the alleged conspirators must be proved. In such cases, the Ninth Circuit has held that "items whose content is protected by the First Amendment may nevertheless be the proper subject of a search when those items tend to prove conspirators' associations with another." *Id.*

In each of these cases, the Ninth Circuit has not only held that evidence regarding one's associations and beliefs may be collected, it has done so in the face of a considerably more intrusive exercise of governmental power than that at issue in the civil discover process, as the defendants in these cases suffered an actual loss of freedom as a result of allowing the government's investigation into the defendants' beliefs and practices.

The courts have further recognized that disclosure of one's beliefs or associations imposes a "lesser burden" on First Amendment interests in the context of political practices and activities, which are equally protected by the First Amendment.

The Supreme Court has regularly upheld statutes requiring disclosures by individuals who are engaged in the political process. In *United States v. Harriss*, the Court upheld lobbying disclosure requirements of the Federal Regulations of Lobbying Act (FRLA) because the statute served a "vital national interest" in a "manner restricted to its appropriate end." *Harriss,* 347 U.S. 612, 626 (1954). The Court explained that the law did not prohibit political activity but instead "merely provided for a modicum of information." *Id.* at 625. Similarly, in *Buckley v. Valeo*, the

Court rejected a First Amendment challenge to campaign finance disclosure requirements of the Federal Election Campaign Act (FECA), holding that a disclosure requirement was a "reasonable and minimally restrictive method" of furthering the government's interest in maintaining an open election system. *Buckley,* 424 U.S. 1, 82 (1976). And in 2003, the Court upheld the expanded campaign finance disclosure provisions of the Bipartisan Campaign Reform Act (BCRA), including a provision that requires the disclosure of individuals who contribute to groups or individuals that spend money on political election communications. *McConnell v. FEC*, 540 U.S. 93, 195-99 (2003).

Like the statutes at issue in the Supreme Court's political participation cases, Plaintiff's requests for information regarding Defendant Pate's beliefs and practices do not prohibit the defendant from engaging in a protected activity, nor do they attempt to force him to profess a belief or engage in any activity. Instead, Plaintiff's inquiries are simply directed at obtaining a description of Defendant Pate's religious beliefs and practices as part of Plaintiff's inquiry into the motivation of the defendant when he terminated Plaintiff – an essential element of the case Plaintiff must prove at trial.

Also analogous to the required disclosures at issue in the above-cited cases, responses to Plaintiff's requests are mandated by the government's compelling interest in preventing religious discrimination in the workplace. *See University of Pennsylvania v. EEOC*, 493 U.S. 182, 193 (1990)(recognizing the substantial costs associated with discrimination and that "ferreting out this kind of invidious discrimination is a great if not compelling governmental interest"). Without inquiry into the defendants' beliefs and practices and whether those beliefs and practices advocate for the discrimination against followers of other faiths, Plaintiff's efforts to prove the defendant's motivation will be unfairly hobbled.

It is undisputed that Defendant Pate refused to allow Plaintiff to begin working only moments after Plaintiff reported to his first day of training; the dispute lies in Defendant Pate's motivation for doing so. Evidence regarding Defendant's religion is likely to lead to information that will allow Plaintiff to determine and independently verify such matters as the level of religious and even racial tolerance (or intolerance) Defendant Pate may harbor in an effort to shed light upon his motivation when carrying out the undisputed actions against Plaintiff.

As such, Plaintiff respectfully requests that the Court compel Defendant Pate's responses to Interrogatory Nos. 1 – 7 and Request for Production Nos. 6 and 7.

**2.      Defendants' Argument against Production of the Requested Discovery**

Guthrey is not entitled to any additional discovery responses from the defendants. As discussed by the defendants below in greater detail and incorporated here (*see* Part D.2 below for this argument), Guthrey has made sufficient admissions in his deposition testimony and in other discovery—in the face of manifestly legally-deficient claims—to require him to voluntarily dismiss his case under his Federal Rules of Civil Procedure, Rule 11 and Rule 26 obligations.

Regarding the specific discovery at issue here:  Despite testifying that he doesn't recall connecting his grooming to his religion for Pate and that he never asked for religious accommodation, Guthrey asks the Court here to compel Pate to respond to the following requests: (1) Does Pate believe that "human beings have souls?"; (2) Describe Pate's religious belief system; (3) What is the date, time, location, and name of each religious place of worship in which Pate has attended services in the past 5 years?; (4) What is the date, time, location, and identity of any individual with whom Pate has discussed his religious thoughts or beliefs in the past 5 years?; and (5) Provide copies of every document that "refers or relates" to Pate's religious belief system or attendance at any religious service.

Pate appropriately asserted his First Amendment and state privacy rights in objecting these requests. Pate's personal religious beliefs are irrelevant to any issues in this case and he has never put his own religious beliefs at issue—indeed, Guthrey admitted that he was only speculating when he accused Pate of religious bias.

As noted above, Pate reached out to Guthrey to hire him as a retired annuitant—after knowing each other for over 20 years. It defies logic that Pate would work with the plaintiff for over 20 years, allegedly know or perceive Guthrey's religious and racial traits, offer him a retired annuitant position, and then refuse him that position within days for those very same traits. "[W]here the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory action." *Bradley v. Harcourt Brace & Co.,* 104 F. 3d 267, 270-271 (9th Cir. 1996) (more than two years between hiring and firing, whereas here there is a mere 4-day span).

And critically, as discussed above, Guthrey has admitted that he misrepresented in his civil complaint the affirmative allegation that he had discussed a religious need to wear his beard and long hair with Pate. *See* Complaint, ¶ 14:1-3. Thus, merely paying court filing fees and accusing Pate of religious discrimination does not entitle Guthrey to subject Pate to an Inquisition-like interrogation of his religious beliefs; the Court, as a governmental body, cannot compel any citizen to publicly and involuntarily detail his or her personal religious beliefs. *See, e.g., Torcaso v. Watkins,* 367 U.S. 488, 493 (1961) (state and federal government cannot "force" anyone to "profess a belief or disbelief in any religion"). And to the extent information about Pate's religious beliefs is intended to undermine his credibility as a witness, discovery is absolutely barred under Federal Rules of Evidence, Rule 610.

**B.     Plaintiff's Requests for Information Regarding Discrimination Complaints Filed against and Requests for Accommodation Submitted to Defendant CDCR.**

Plaintiff requested information regarding complaints for religious or racial discrimination filed against Defendant CDCR and requests for religious accommodation submitted to Defendant CDCR through six (6) interrogatories and four (4) requests for production. The propounded discovery and objections to each are as follows:

**<u>INTERROGATORY NO. 13:</u>**

Has any formal or informal complaint of religious discrimination been made by any of YOUR current or former employees against YOU in the last 10 years?

**<u>RESPONSE TO INTERROGATORY NO. 13:</u>**

Yes.

**<u>INTERROGATORY NO. 14:</u>**

If the answer to Interrogatory No. 13 is in the affirmative, describe each such complaint in detail (including the dates of the complaint, the dates of the alleged incidents of race discrimination, a statement of the allegations, the names and job titles of the individuals accused, how the complaint was handled, and how the complaint was resolved).

**<u>RESPONSE TO INTERROGATORY NO. 14:</u>**

Defendant objects to this request as being overly broad, unduly burdensome, subject to the official information privilege, and protected by third-party privacy rights (e.g., Article 1, § of

California Constitution and Penal Code § 832.7); nor is the interrogatory designed to lead to admissible evidence. *See, e.g., Sanchez v. City Santa Ana*, 936 F.2d 1027, 1034 (9th Cir. 1990) ("While these files are not absolutely privileged, the confidential nature of the employee personnel files suggests that opening the files to the plaintiffs for a general search could reach well beyond the legitimate inquiries necessary to this litigation … .")

**INTERROGATORY NO. 15:**

Has any formal or informal complaint of race discrimination been made by any of YOUR current or former employees against YOU in the last 10 years?

**RESPONSE TO INTERROGATORY NO. 14:**

Yes.

**INTERROGATORY NO. 16:**

If the answer to Interrogatory No. 15 is in the affirmative, describe each such complaint in detail (including the dates of the complaint, the dates of the alleged incidents of race discrimination, a statement of the allegations, the names and job titles of the individuals accused, how the complaint was handled, and how the complaint was resolved).

**RESPONSE TO INTERROGATORY NO. 16:**

Defendant objects to this request as being overly broad, unduly burdensome, subject to the official information privilege, and protected by third-party privacy rights (e.g., Article 1, § of California Constitution and Penal Code § 832.7); nor is the interrogatory designed to lead to admissible evidence. *See, e.g., Sanchez v. City Santa Ana*, 936 F.2d 1027, 1034 (9th Cir. 1990) ("While these files are not absolutely privileged, the confidential nature of the employee personnel files suggests that opening the files to the plaintiffs for a general search could reach well beyond the legitimate inquiries necessary to this litigation … .")

**INTERROGATORY NO. 17:**

Please identify (by full name, job title, last-known address, and telephone number) every employee or independent contractor who has requested any accommodation from YOU in the past ten years based upon the employee's religious beliefs or practices.

////

////

For the purposes of this interrogatory, "employee or independent contractor" means only those employees or independent contractors who have been assigned to or have worked at the Sierra Conservation Center at any time in the previous ten years.

**RESPONSE TO INTERROGATORY NO. 17:**

Defendant objects to this request as being overly broad, unduly burdensome, oppressive, subject to the official information privilege, and protected by third-party privacy rights (e.g., Article 1, § of California Constitution and Penal Code § 832.7) and First Amendment rights; nor is the interrogatory designed to lead to admissible evidence. *See, e.g., Sanchez v. City Santa Ana,* 936 F.2d 1027, 1034 (9th Cir. 1990) ("While these files are not absolutely privileged, the confidential nature of the employee personnel files suggests that opening the files to the plaintiffs for a general search could reach well beyond the legitimate inquiries necessary to this litigation … .") Defendant also objects that the terms "-requested an accommodation" and "religious beliefs or practices" is vague and ambiguous.

**INTERROGATORY NO. 18:**

For each employee or independent contractor identified in Interrogatory No. 17, please describe the circumstances surrounding each such request for accommodation in detail (i.e., the date the request was made, the religious belief the request was based upon, the action or omission that was requested, and whether the request was granted or denied).

**RESPONSE TO INTERROGATORY NO. 18:**

Defendant did not identify any employees in response to Interrogatory No. 17. Defendant restates its objection to Interrogatory No. 17 for purposes of this interrogatory as well: Defendant objects to this request as being overly broad, unduly burdensome, oppressive, subject to the official information privilege, and protected by third-party privacy rights (e.g., Article 1, § of California Constitution and Penal Code § 832.7) and First Amendment rights; nor is the interrogatory designed to lead to admissible evidence. *See, e.g., Sanchez v. City Santa Ana,* 936 F.2d 1027, 1034 (9th Cir. 1990) ("While these files are not absolutely privileged, the confidential nature of the employee personnel files suggests that opening the files to the plaintiffs for a general search could reach well beyond the legitimate inquiries necessary to this litigation … .") Defendant also objects that the terms " requested an accommodation" and "religious beliefs or practices" is vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 16:**

To the extent not duplicative of other Requests, all DOCUMENTS that REFER OR RELATE to any allegation of discrimination or harassment made against the California Department of Corrections and Rehabilitation that was by any California Department of Corrections and Rehabilitation employee between January 1, 2000 and the present day.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Defendant objects to this request as being overly broad, unduly burdensome and oppressive, and vague and ambiguous as to the terms "refer or relate to any allegation…"  Defendant further objects to this request to the extent it seeks documents encompassed by the attorney-client privilege, the attorney work product doctrine protections, official information privilege, deliberative process privilege, and protected pursuant to third-party privacy rights (e.g., Article 1, § of California Constitution and Penal Code § 832.7). Moreover, this request is beyond the scope of permissible discovery as it encompasses potentially responsive documents that are not relevant to the parties' claims and defenses, unlikely to lead to the discovery of admissible evidence. Therefore, defendant will produce no documents in direct response to this request.

**REQUEST FOR PRODUCTION NO. 17:**

To the extent not duplicative of other Requests, all DOCUMENTS that REFER OR RELATE to any allegation of discrimination or harassment made between January 1, 2000 and the present day by any employee assigned to work at the Sierra Conservation against any other employee assigned to work at the Sierra Conservation Center.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Defendant objects to this request as being overly broad, unduly burdensome, subject to the official information privilege, vague and ambiguous as to the terms "refer or relate to any allegation…," and protected by third-party privacy rights (e.g., Article 1, § of California Constitution and Penal Code § 832.7); nor is the interrogatory designed to lead to admissible evidence. *See, e.g., Sanchez v. City Santa Ana,* 936 F.2d 1027, 1034 (9th Cir. 1990) ("While these files are not absolutely privileged, the confidential nature of the employee personnel files suggests that opening the files to the plaintiffs for a general search could reach well beyond the legitimate inquiries necessary to this litigation … ."). Defendant further objects to this request to the extent that it calls for the production

of documents protected by the attorney-client privilege and attorney work-product doctrine. Therefore, defendant will produce no documents in direct response to this request.

**REQUEST FOR PRODUCTION NO. 26:**

For each individual identified in Interrogatory No. 17, all DOCUMENTS that REFER OR RELATE to the request for religious accommodation that was made by the individual.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

Defendant did not identify any employees in response to Interrogatory No. 17. Defendant restates its objection to Interrogatory No. 17 for purposes of this interrogatory as well: Defendant objects to this request as being overly broad, unduly burdensome, oppressive, subject to the official information privilege, and protected by third-party privacy rights (e.g., Article 1, § of California Constitution and Penal Code § 832.7) and First Amendment rights; nor is the interrogatory designed to lead to admissible evidence. *See, e.g., Sanchez v. City Santa Ana,* 936 F.2d 1027, 1034 (9th Cir. 1990) ("While these files are not absolutely privileged, the confidential nature of the employee personnel files suggests that opening the files to the plaintiffs for a general search could reach well beyond the legitimate inquiries necessary to this litigation … .") Defendant also objects that the terms " requested an accommodation" and "religious beliefs or practices" is vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 27:**

For each individual identified in Interrogatory No. 17, all DOCUMENTS that REFER OR RELATE to the individual's employment history with YOU, including all employment applications and records of interviews, pay records, work performance and work evaluations, records of disciplinary action taken or requested, attendance records, assignments, promotions, demotions, grievances and disposition, and supervisors' remarks contained within the employee's personnel file.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

Defendant did not identify any employees in response to Interrogatory No. 17. Defendant objects to Request No. 27 because the following terms are vague and ambiguous: "work performance and work evaluations," "assignments," "grievances and disposition," and "supervisors' remarks."

Defendant restates its objection to Interrogatory No. 17 for purposes of this interrogatory as well: Defendant objects to this request as being overly broad, unduly burdensome, subject to the official information privilege, and protected by third-party privacy rights (e.g., Article 1, § of

California Constitution and Penal Code § 832.7); nor is the interrogatory designed to lead to admissible evidence. *See, e.g., Sanchez v. City Santa Ana*, 936 F.2d 1027, 1034 (9th Cir. 1990) ("While these files are not absolutely privileged, the confidential nature of the employee personnel files suggests that opening the files to the plaintiffs for a general search could reach well beyond the legitimate inquiries necessary to this litigation … .")

1.      **Plaintiff's Argument in Support of Production of the Requested Discovery**

Through these discovery requests, Plaintiff seeks information regarding complaints of racial or religious discrimination that have been made against Defendant CDCR and requests for religious accommodation submitted to Defendant CDCR in the previous ten (10) years.

As discussed above, the Federal Rules of Civil Procedure allow for broad discovery in civil actions, and relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1); *Survivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005).

The relevancy of the information Plaintiff seeks through these requests is clear, as Plaintiff has alleged that a culture of racial and religious discrimination exists within Defendant CDCR. In order to establish that such a culture exists, or that Defendant CDCR has engaged in a pattern and practice of discrimination, Plaintiff must present evidence regarding other instances of discrimination. *See, e.g., United States EEOC v. Global Horizons, Inc.*, 2012 U.S. Dist. LEXIS 35915 (D. Haw. 2012)(In order to establish a pattern or practice of discriminatory treatment, a plaintiff must show that the discrimination was part of the defendant's standard operating procedure rather than an anomaly.); *Obrey v. Johnson*, 400 F.3d 691, 698 (9th Cir. 2005)(Anecdotal evidence of past discrimination can be used to establish a general discriminatory pattern in an employer's practices).

In addition, evidence of discriminatory acts carried out by an employer against other employees is admissible to prove a defendant's discriminatory intent in carrying out the alleged acts against a plaintiff and for the purpose of casting doubt on an employer's stated reason for an adverse employment action. *See United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711 (1983) (holding that evidence of the employer's discriminatory attitude in general is relevant and admissible

to prove discrimination); *accord Heyne v. Caruso*, 69 F.3d 1475 (9th Cir. 1995). In *Heyne v. Caruso*, a waitress who was subjected to sexual harassment sought to introduce the testimony of other female employees who were sexually harassed in order to demonstrate that the employer's proffered reason for her termination was pretextual. *Id.*, at 1479. In holding that such evidence was indeed admissible, the court stated that it is clear that an employer's conduct tending to demonstrate hostility towards a certain group is both relevant and admissible where the employer's general hostility towards that group is the true reason behind firing an employee who is a member of that group." *Id.*

Evidence regarding complaints made against Defendant CDCR for racial or religious discrimination is likely to lead to the discovery of admissible evidence because evidence of such complaint is admissible in support of establishing a pattern and practice of discrimination within Defendant CDCR. Similarly, evidence regarding requests for religious accommodation submitted to Defendant CDCR is likely to lead to the discovery of admissible evidence because the requested information is likely to lead to evidence of Defendant's practices with regard to employees who subscribe to a religious faith.

Defendant's attempt to withhold the information requested is merely an improper attempt to thwart Plaintiff's right to obtain through the discovery process information that is not only relevant but necessary to prove his case. As such, Plaintiff respectfully requests that the Court grant his motion to compel responses to Interrogatory Nos. 12 – 18 and Request for Production Nos. 16 – 17.

**2.      Defendants' Argument against Production of the Requested Discovery**

Guthrey is not entitled to complaints of discrimination by other prison employees against supervisors other than Pate. The defendants have already disclosed to Guthrey that there have been no other complaints of discrimination against Pate—any complaints against other CDCR managers are completely irrelevant here. *See Schrand v. Fed. Pac. Elec. Co.,* 851 F.2d 152, 156 (6th Cir. 1988) ("me too" evidence regarding unrelated supervisor's alleged conduct towards other employees is irrelevant to plaintiff's claims); *Moore v. Donahoe,* 2011 WL 6000709 at *1 (9th Cir. Dec. 1, 2011) (affirming district court's determination that "me too" evidence is irrelevant where other employees, whose observations of alleged race discrimination were at issue, did not also report to the plaintiff's supervisors).

**C.      Plaintiff's Requests for Information that Defendant CDCR Initially Agreed but Subsequently Refused to Produce.**

Plaintiff requested documents regarding percipient witnesses and the personnel file of an individual similarly situated to Plaintiff through one (1) interrogatory and one (1) request for production. Defendants initially agreed to provide the requested information and documents. However, through subsequent discussions in which Plaintiff's counsel attempted to obtain the requested information and documents, Defendants' counsel informed Plaintiff's counsel that Defendants no longer agreed to provide the information. The propounded discovery and objections to each are as follows:

**INTERROGATORY NO. 12:**

Please identify (by name, job title, home address, and phone number) each and every person who was present in the In Service Training room at the Sierra Conservation Center on May 3, 2010.

**RESPONSE TO INTERROGATORY NO. 12:**

Defendant objects to this interrogatory to the extent that it calls for confidential and privileged information that is protected by third party privacy rights (e.g., Article 1, § of California Constitution and Penal Code § 832.7) and further objects on the grounds that the interrogatory is overly broad, unduly burdensome, and vague as to time of day. Subject to and without waiving the above objections, privileges, and protections, Defendant CDCR responds as follows: Please refer to item 7 of Part I to the defendants' Rule 26 disclosures. These individuals can be contacted through defense counsel. To the extent that there are additional names not reflected in the Rule 26 disclosures, Defendant CDCR will supplement. Please also refer to documents produced by CDCR, bates labeled "CDCR 00001-CDCR 000009."

**REQUEST FOR PRODUCTION NO. 28:**

All DOCUMENTS that constitute, make up, are a part of, or are incorporated into Rafael Mendoza's personnel file including, but not limited to, all employment applications and interviews, pay records, work history records, work performance and work evaluations, records of disciplinary action taken or requested, attendance records, promotions, supervisors' remarks, company benefits, retirement plans and pension programs pertaining to the employment of Rafael Mendoza, all grievances and dispositions, and all other information as is contained in Rafael Mendoza's personnel

file for Rafael Mendoza's entire employment tenure at the California Department of Corrections and Rehabilitation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

Defendant objects to this request as being overly broad and unduly burdensome and seeking the production of privileged and private documents which are irrelevant to this case (e.g., Mr. Mendoza's "retirement plans and pension" documents), including those protected by Mr. Mendoza's constitutional and statutory privacy rights (e.g., Article 1, § of California Constitution and Penal Code § 832.7). Defendant further objects to this request to the extent it calls for the production of documents protected by the attorney-client, attorney work-product, official information privileges. *See, e.g., Sanchez v. City Santa Ana*, 936 F.2d 1027, 1034 (9th Cir. 1990) ("While these files are not absolutely privileged, the confidential nature of the employee personnel files suggests that opening the files to the plaintiffs for a general search could reach well beyond the legitimate inquiries necessary to this litigation … .") Defendant also objects on the grounds that the terms "all…interviews," "work history records," "work performance and work evaluations," "supervisors' remarks," "retirement plans and pension pertaining to the employment of Rafael Mendoza," "all grievances and dispositions," "all other information" are vague and ambiguous.

1.     **Plaintiff's Argument in Support of Production of the Requested Discovery**

The Federal Rules of Civil Procedure allow for discovery in civil actions through service of interrogatories and requests for production of documents, among other discovery devices.

A party properly served with interrogatories must answer each interrogatory "separately and fully in writing under oath," and the grounds for objecting to an interrogatory must be stated with specificity. Fed. R. Civ. Proc. 33.

A party properly served with a request for production of documents "must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request. Fed. R. Civ. Proc. 34.

In response to Interrogatory No. 12, Defendant CDCR provided six documents which comprised what appears to be the group of sign-in sheets of the individuals in attendance at the In-Service Training room when Plaintiff was ordered from the premises on May 3, 2010. The sign-in
////

sheets contain approximately 30 names; many of which are illegible, and many of which provide only a last name and first initial.

Plaintiff's counsel informed Defendants' counsel of her need for the full names and contact information for each of the listed individuals, as requested in Interrogatory No. 12. Plaintiff requested this information because each listed individual is likely a percipient witness to the events that occurred on May 3, 2010, which underlie the present action. Defendants' counsel voiced his concern regarding the privacy interests of the listed individuals as well as the possibility that one or more of the listed individuals may be a "represented party" within the meaning of the California Rules of Professional Responsibility.

Though Plaintiff's counsel did not agree that the individuals – who are low-level employees of Defendant CDCR – fell within the definition of a "represented party," Plaintiff's counsel agreed to incur the considerable expense of deposing each witness through a series of short depositions scheduled over the course of three or four consecutive days if Defendants' counsel were willing to stipulate to holding in excess of 10 depositions. Defendants' counsel initially agreed to request the stipulation from Defendants. After a delay of more than three (3) weeks, counsel for the defendants informed Plaintiff's counsel that Defendants would not stipulate to the additional depositions and confirmed that contact information would not be provided.

Defendants' counsel adopted a similar approach to Plaintiff's request for Rafael Mendoza's personnel file through Request for Production No. 28. Mr. Mendoza is a former Retired Annuitant, who held the position of Correctional Counselor I – the same position to which Plaintiff was hired. Like Plaintiff, Mr. Mendoza maintains facial hair and a ponytail that extends beyond the top of his shirt collar. Unlike Plaintiff, however, Mr. Mendoza adheres to the Christian faith and is known to be non-Muslim. And unlike Plaintiff, Mr. Mendoza was permitted to remain working as a retired annuitant despite being out of compliance with Defendant CDCR's dress code.

Based on this explanation from Plaintiff's counsel, Defendant's counsel initially agreed to provide the requested file subject to a protective order. After considerable delay by Defendants' counsel in filing the protective order, the Court entered the parties' stipulated protective order in this matter on February 23, 2012.

////

On March 16, 2012, Defendants produced additional documents subject to the protective order. Mr. Mendoza's personnel file was not included in the production. Each time Plaintiff's counsel inquired into the status of the production over the following weeks, she was assured that production would be forthcoming. However, on April 16, 2012, Defendants' counsel informed Plaintiff's counsel that Mr. Mendoza's personnel file would not be produced due to counsel's belief that the requested documents were not relevant to Plaintiff's claims.

Because contact information for percipient witnesses is necessary to acquire information from percipient witnesses to the events of May 3, 2010, and because information contained within the personnel file of Mr. Mendoza, an individual similarly situated to Plaintiff, is likely to lead to the discovery of relevant and admissible evidence, Plaintiff respectfully requests the Court grant Plaintiff's motion to compel responses to Interrogatory No. 12 and Request for Production No. 28.

**2.      Defendants' Argument against Production of the Requested Discovery**

First, Guthrey failed to identify Interrogatory No. 12 in his notice and motion, filed on May 18, 2012—the defendants lack adequate time to respond to Guthrey's reference to Interrogatory No. 12 as an item in contention and can at this time only stand by the initial objections, in addition to Rule 2-100 of the California Rules of Professional Conduct. Should Guthrey file a subsequent notice and motion referencing Interrogatory No. 12, the defendants will respond accordingly.

Second, Guthrey asserts that the defendants made an agreement regarding Interrogatory No. 12 and then retreated from that agreement.  This is not true. Counsel for the parties discussed different options surrounding Guthrey's demand to directly contact the individuals present at the training on May 3, 2010.  Defense counsel objected to such direct contact but discussed the potential for depositions instead; given the number of people potentially involved, however, the cap on depositions per side arose.  Defense counsel agreed to *consider* stipulating to additional depositions in consultation with his client, nothing more.

It should also be noted that the names of the individuals present at the training were identified by the defendants in their initial disclosures served on June 1, 2011—had Guthrey sought to depose any of these individuals more promptly he could have. In fact, in his deposition testimony, Guthrey identified multiple individuals he claims were percipient witnesses to his interaction with Pate at the May 3, 2010 training session (i.e., Sarkisian, Cowley). He therefore has been aware of

23

these individuals since the inception of this litigation, yet has chosen not to conduct any discovery with respect to them at all, let alone notice their respective depositions. It's telling that Guthrey has avoided doing so.

Similarly, regarding Request for Production No. 28 and Mendoza's personnel file—it is not quite as Guthrey describes here. First, CDCR never agreed to produce Mendoza's personnel file—it objected that the requested information was wholly irrelevant and subject to Mendoza's privacy rights. In the meet and confer process, Guthrey agreed to limit the scope of the requested items; defense counsel agreed to consider this limited scope once he obtained a copy of the records.

Not having yet received them, Guthrey chose to raise the issue of such third-party personnel records to the Court in the informal telephone conference identified above. In that informal hearing, the Court agreed with CDCR that such personnel information has no relevance to Guthrey's specific claims. CDCR therefore has no cause to disclose such information now; the sole question in this litigation is whether Pate, after reaching out to Guthrey to hire him as his subordinate suddenly discovered religious or racial bias towards Guthrey within a span of a few days—after having known the man for around 20 years previously. That is, on May 3, 2010, whether Pate acted in the manner alleged by Guthrey due to unlawful religious or racial bias. Pate didn't hire Mendoza—why, then, is Mendoza's alleged appearance relevant to whether Pate acted with bias towards Guthrey? There is no relevance—which is why the Court agreed that such third-party information is off-limits. CDCR requests that the Court deny Guthrey's request here and as to all third-party personnel records.

Moreover, the defendants request that the Court deny Guthrey any further discovery. As discussed further below and incorporated here (*see* Part D.2 below for this argument), Guthrey has made sufficient admissions in the face of manifestly defective legal claims to warrant voluntary dismissal given his obligations under Federal Rules of Civil Procedure, Rules 11 and 26.

**D.**     **Plaintiff's Requests for Information that Defendant CDCR Agreed to Produce but Has Not Yet Produced.**

Plaintiff requested documents regarding Plaintiff's employment with and separation from Defendant CDCR, Plaintiff's discrimination charge against Defendants, and Defendant Pate's work history and job descriptions, through six (6) requests for production. Defendants have agreed to produce the requested documents. However, despite numerous meet and confer discussions in which

Plaintiff's counsel attempted to obtain the documents, Defendants have yet to produce them. The propounded discovery and objections to each are as follows:

**REQUEST FOR PRODUCTION NO. 6:**

All DOCUMENTS that constitute, make up, are a part of, or are incorporated into Michael Pate, Jr.'s personnel file including, but not limited to, all employment applications and interviews, pay records, work history records, work performance and work evaluations, records of disciplinary action taken or requested, attendance records, promotions, supervisors' remarks, company benefits, retirement plans and pension programs pertaining to the employment of Michael Pate, Jr., all grievances and dispositions, and all other information as is contained in Michael Pate, Jr.'s personnel file for Michael Pate, Jr.'s entire employment tenure at the California Department of Corrections and Rehabilitation.

**DEFENDANT'S RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Defendant objects to this request as being overly broad and unduly burdensome and seeking production of privileged and private documents which are irrelevant to this case, including those protected by Mr. Pate's constitutional and statutory privacy rights. Defendant further objects to this request to the extent it calls for the production of documents protected by the attorney-client, attorney work-product, official information, and deliberative process privileges. Subject to and without waiving these objections, privileges, and protections, Defendant CDCR responds as follows: Defendant will produce any existing responsive, non-privileged or protected documents that are connected to the nature of the claims at issue here (i.e., discrimination) subject to protective order.

**REQUEST FOR PRODUCTION NO. 7:**

To the extent not repetitive of other Requests, all DOCUMENTS that REFER OR RELATE to PLAINTIFF's employment with the California Department of Corrections and Rehabilitation.

**DEFENDANT'S RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Defendant objects to this request as being overly broad, unduly burdensome and oppressive, vague and ambiguous as to the terms "refer or relate to plaintiff's employment," and—given the lack of specificity in the request—possibly encompass information subject to the attorney-client privilege, the attorney work product doctrine protections, official information privilege, and protected pursuant to third-party privacy rights (e.g., Article 1, § of California Constitution and Penal Code § 832.7).

Defendant further objects to this request to the extent that it calls for the production of documents protected by the attorney-client, attorney work-product, official information, and deliberative process privileges.

**REQUEST FOR PRODUCTION NO. 8:**

All DOCUMENTS that REFER OR RELATE to any Substance Abuse Programs provided to inmates at the Sierra Conservation Center between January 1, 2000 and the present day.

**DEFENDANT'S RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Defendant objects to this request as being overly broad, unduly burdensome and oppressive, vague and ambiguous as to the terms "refer or relate to any Substance Abuse Programs provided to inmates at the Sierra Conservation Center." The breadth of the request encompasses information that is, on its face, outside the scope of this litigation and implicates the privacy of inmates in substance abuse programs. Thus the request calls for the production of materials subject to third-party privacy protections, such as those protected under Article 1, § 1 of the California Constitution and other applicable statutory protections. Defendant further objects to this request to the extent that it calls for the production of documents protected by the attorney-client, attorney work-product, official information, and deliberative process privileges. Subject to and without waiving these objections, privileges, and protections, Defendant CDCR responds as follows: The Substance Abuse Programs referenced by this request were conducted by a third-party agency and Defendant CDCR does not maintain those records.

**REQUEST FOR PRODUCTION NO. 12:**

All DOCUMENTS that REFER OR RELATE to the termination of PLAINTIFF in 2010 from the position of Retired Annuitant and/or Correctional Counselor I with CDCR.

**DEFENDANT'S RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

Defendant objects to this request as being overly broad and vague and ambiguous as to the terms "refer or relate to the termination…" Defendant further objects to this request to the extent that it calls for the production of documents protected by the attorney-client, attorney work-product, and official information privileges. However, subject to and without waiving the aforesaid objections or the general objections above (which are incorporated herein by this reference), defendant responds: Defendant will produce existing responsive, non-privileged documents connected to any role by the

plaintiff as a retired annuitant at Sierra Conservation Center in 2010—subject to protective order where appropriate.

**REQUEST FOR PRODUCTION NO. 14:**

All job descriptions, including all revisions and updates, for each position Michael Pate, Jr. held during his employment with CDCR.

**DEFENDANT'S RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Defendant objects to this request on the grounds that it is overly broad and unduly burdensome as the plaintiff only disputes circumstances surrounding his hiring as a retired annuitant and nothing to do with Mr. Pate's variety of positions held at the CDCR. Nonetheless, subject to the objections herein, defendant will produce copies of the most recent job descriptions for the positions of Correctional Officer and Correctional Counselor.

**REQUEST FOR PRODUCTION NO. 23:**

All DOCUMENTS that REFER OR RELATE to any COMMUNICATIONS between any employee of the CDCR and any other person regarding PLAINTIFF's charge of race discrimination.

**DEFENDANT'S RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

Defendant objects to this request on the grounds that it is vague and ambiguous as to the terms "refer or relate to" and "charge of discrimination," and because it is overly broad, unduly burdensome and oppressive. Defendant further objects to this request to the extent that it calls for the production of documents protected by the attorney-client privilege, attorney work-product doctrine, official information privilege, and deliberative process privilege. Defendant also objects to the extent that the information requested is protected by third-party privacy rights (e.g., Article 1, § of California Constitution and Penal Code § 832.7).

**REQUEST FOR PRODUCTION NO. 24:**

All DOCUMENTS that REFER OR RELATE to any COMMUNICATIONS between any employee of the CDCR and any other person regarding PLAINTIFF's charge of religious discrimination.

**DEFENDANT'S RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

Defendant objects to this request on the grounds that it is vague and ambiguous as to the terms "refer or relate to" and "charge of discrimination," and because it is overly broad, unduly burdensome

and oppressive. Defendant further objects to this request to the extent that it calls for the production of documents protected by the attorney-client privilege, attorney work-product doctrine, official information privilege, and deliberative process privilege. Defendant also objects to the extent that the information requested is protected by third-party privacy rights (e.g., Article 1, § of California Constitution and Penal Code § 832.7).

1.      **Plaintiff's Argument in Support of Production of the Requested Discovery**

Plaintiff propounded his first round of discovery requests to Defendant CDCR on August 24, 2011 and a second round on October 4, 2011. Following multiple extensions granted by Plaintiff, Defendants responded on November 21, 2011.

Despite the comprehensive nature of Plaintiff's document requests, Defendants provided only 161 documents, nearly half of which were documents from Plaintiff's personnel file, in response. Plaintiff's efforts to meet and confer regarding the dearth of information provided led to the production of an additional 250 documents by Defendants on March 16, 2012.

Over the course of seven (7) months since Defendants served their initial responses, Plaintiff's counsel and Defendants' counsel have engaged in numerous meet and confer and status update conversations. In a good faith effort to compromise, Plaintiff has agreed to limit many of the requests and has offered to work with Defendant's counsel to locate responsive documents stored in the Defendants' electronic files and archives. Despite these efforts, and despite Defendants' counsel's repeated assurances that the documents would be forthcoming, it is clear that Defendants will not produce the requested documents absent Court intervention.

Therefore, Plaintiff respectfully requests that the Court compel Defendants to provide the following documents:

  a.      In response to Request for Production No. 6, all documents that are contained in Michael Pate's personnel file subject to the limitations agreed to by counsel on December 17, 2011.

  b.      In response to Request for Production No. 7, all documents that refer or relate to Plaintiff's employment with the California Department of Corrections and Rehabilitation including all electronically stored information.

    c.        In response to Request for Production No. 8, all documents that refer to any Substance Abuse Programs provided to inmates at the Sierra Conservation Center between January 1, 2000 and the present day, including all documents referencing third-party contractors who maintained or supervised such programs.[1]

    d.        In response to Request for Production No. 12, all documents that refer to the termination or discontinuation of Plaintiff from the position of Retired Annuitant, Correctional Counselor I with Defendant CDCR, including all electronically stored information.

    e.        In response to Request for Production No. 23, all documents that refer to any communications between any employee of the CDCR and any other person regarding Plaintiff's charge of race discrimination, including all electronically stored information.

    f.        In response to Request for Production No. 24, all documents that refer to any communications between any employee of the CDCR and any other person regarding Plaintiff's charge of religious discrimination, including all electronically stored information.

**2.     Defendants' Argument against Production of the Requested Discovery**

As indicated above, the defendants request that the Court bar any further discovery by Guthrey, including the requests at issue here in this motion:

## INTRODUCTION

Plaintiff Raymond Guthrey moves here to compel discovery responses by defendants California Department of Corrections & Rehabilitation and Michael Pate, Jr. In response, the defendants ask the Court to deny Guthrey's request in its entirety. As shown below, Guthrey is in possession of sufficient discovery to make clear that he has no factual or legal basis to continue the

---

[1] Plaintiff was responsible for the administration of the Substance Abuse Program at the Sierra Conservation Center from 2000 through 2006. During this time, Plaintiff regularly invited Ananda Marga leaders to provide yoga and spiritual lessons to inmates in the program. Plaintiff's colleagues mocked Plaintiff for his association with the Ananda Marga teachers, who wear turbans, and for his desire to teach Ananda Marga principles to inmates.

action any further, and CDCR should not be required to provide any additional discovery in the litigation.

Guthrey now stands at a juncture that he's faced in prior litigation against CDCR—in that prior litigation he chose the wrong path by continuing to prosecute his case even though discovery had clearly shown that it was without merit and would ineluctably fail. Guthrey paid a price for that choice: the California Court of Appeal concluded that, "After plaintiff gave his deposition, it should have been clear to his counsel that he had no case of arguable merit." *Guthrey v. State of Cal.,* 63 Cal. App. 4th 1108, 1126 (5th Dist. 1998). In so concluding, the Court of Appeal not only affirmed the trial court's ruling that Guthrey pay CDCR's attorney's fees in the underlying action, it went even further and ordered that he pay the agency's fees for its appellate defense. *Id.* ("As just concluded, the record establishes *plaintiff's claims were frivolous*, thereby entitling defendants to attorney fees"). (Emphasis added.)

All of this is relevant here because, once again, Guthrey should by now have concluded that, after his own deposition and after obtaining discovery from the defendants, he has no factual or legal basis to maintain this action. As shown below, Guthrey began this litigation in search of a reason for his failure to be retained as a retired annuitant at Sierra Conservation Center—after refusing to accept the stated reason, that wearing a beard and long hair violated CDCR's grooming standards for male correctional peace officers, he chose to launch a federal case to find out whether it was instead because his supervisor disliked Guthrey's gender, age, race, religion, or national origin. This much he's admitted to in his deposition testimony.

These admissions mean that his case is founded on nothing at all. What's more, Guthrey has further admitted to lying under oath as to the material facts giving rise to his claims of discrimination. Having *nothing* behind his claims, Guthrey now asks the defendants to supply him with discovery responses and deposition testimony encompassing areas well beyond his claims in the hopes of finding something—*anything*—to propel his case forward. Nothing in the discovery rules permit the federal courts to be used in this manner, however, and the Court should deny Guthrey any additional discovery.

## I.  BACKGROUND.

On May 3, 2010, Guthrey arrived for training at Sierra Conservation Center ("SCC") to begin work as a retired annuitant in the position of Correctional Counselor I ("CCI")—a correctional peace officer position. Second Amended Complaint ("SAC") ¶ 16:12-13; *see also* CDCR-0287, 0290 (SPB's CCI classification specification identifying CCI as a peace officer classification). When he entered a training room at the prison, he was spotted by defendant Michael Pate, Jr., who was also in the training room. SAC ¶ 16:13-15.

Pate, a Correctional Counselor II, had contacted Guthrey to work under his supervision in the CCI position. SAC ¶ 3 (Pate's position); ¶ 12:20-22. Pate had never been Guthrey's supervisor or in Guthrey's chain of command before. When, on May 3, 2010 (their first in-person meeting since Pate contacted Guthrey), Pate saw that Guthrey had long hair (although bound, it was cut so as to fall beyond his shirt collar) and wore a beard, he approached Guthrey and they went into the hallway. *See* Uncontested Fact No. vii in Joint Scheduling Report, p. 4 (filed on May 11, 2011). There, Pate allegedly told Guthrey something to the effect that "this isn't going to work" in reference to Guthrey's hair and beard. After additional discussion lacking any reference to religion, race, or national origin—let alone any indication of a need for religious accommodation—Guthrey left the training room and didn't return to SCC.  This May 3, 2010 interaction is the sole basis for Guthrey's case here, as he contends that Pate's reference to Guthrey's hair and beard as "not going to work" was because of some sort of discriminatory animus as opposed to the stated reason—that Guthrey's hair length and beard were in violation of CDCR's grooming policy.

## II.  GUTHREY'S LAWSUIT IS BASED ON HIS MISAPPREHENSION OF FACTS AND LAW.

The defendants should not be required to respond to discovery propounded by Guthrey when the facts underlying his claims clearly show that there is no basis for those claims. The wide and varied expanse of discovery he seeks here is inversely proportionate to the dearth of facts or legal bases for his action. Because this should be apparent to Guthrey now, the Court should deny his motion and permit the defendants to proceed with summary judgment proceedings if he fails to voluntary dismiss the action.

**A. Guthrey Erroneously Believes that the Grooming Policy Against Beards and Long Hair for Peace Officer Didn't Apply to Him or That He Complied with Those Standards.**

Guthrey continues to erroneously believe that the grooming standards regarding his hair and beard either didn't apply to him as a retired annuitant or that his long hair and beard were somehow in compliance with the grooming standards. *See* Transcript of Guthrey's Deposition, September 20, 2011 ("depo") 58:6-9, 22-25; 59:1-17; *see also* depo 60:19-24 ("Q. Let me ask you this. Could you have trimmed your beard to make sure it complied with the grooming standards? A. I did. Q. How about your hair? A. I did."); depo 61:9-11 ("Q. You felt that you didn't need to cut your hair to comply with the grooming standards; is that correct? A. Right.")  But this belief, he admits, is based exclusively on his "conjecture" and "assumption" (depo 58:25-59:1-10). In fact, in his deposition, Guthrey conceded that CCI in general *are required* to fully shave their beards under CDCR's grooming standards (depo 52:25-53:1-3), but he apparently believes that retired annuitants are somehow treated differently. *Compare* depo 58:6-9 ("I mentioned [to Pate] that I also had no responsibility to adhere to any negotiated grooming standards. However, *I would comply* and be neat and professional when I came to work.") Guthrey believes, then, that Pate was wrong about the grooming policy as it applies to Guthrey and that he must have instead acted on the basis of unlawful discrimination:

> Since I couldn't get any definitive answer back from the institution, my conjecture was from past experience with [Pate] it could have been anything. I was trying to find out what it was.
>
> I knew that it had to be prejudicial.  I didn't know if it was my age, my hair, my religion. After time and dust settled, I honed it down to my spirituality and who I am as a person, so it could have been my age. I was 56.

Depo 93:7-15.

But Pate was not wrong about the grooming policy or that Guthrey's hair and beard were in violation of that policy. The grooming standards, available online to all, undisputedly required correctional peace officers, such as CCI employees, to have their hair *cut* so as not to extend below the top of the shirt collar and so it won't cover any portion of the ear:

> Male employee's hair shall be cut so as to not extend below the tip of the shirt collar while sitting or standing in an erect position and shall not cover any part of the outside portion of the hair.

CDCR-0313 (DOM § 33020.6—publicly available at

http://www.cdcr.ca.gov/Regulations/Adult_Operations/DOM_TOC.html).

Male correctional peace officers are also prohibited from wearing beards at all, absent a

doctor's note:

> Neatly trimmed sideburns and/or mustaches are permitted as follows:
>
> *Sideburns shall not extend below the bottom of the ear and shall end with a clean-shaven horizontal line. The maximum width at the bottom of the sideburns shall not exceed 1 ½ inches.
>
> *Mustaches shall not extend more than ½ inch below the corners of the mouth, nor below the vermillion border of the upper lip, or extend more than ¾ inch above the corner of the mouth. Waxed ends or points shall not be allowed.
>
> *Upon the employee's personal physician verification of a skin irritation or disorder, a beard, not to exceed one inch in length, may be permitted. Goatees are not authorized.

CDCR-0313 (DOM § 33020.6).

There is no exception to these rules for retired annuitants—such an exception wouldn't make

sense in any case as retired annuitants in the role of a CCI or other correction peace officer positions

perform the same duties as non-retired annuitants in those positions. *See* CDCR-0312 (DOM §

33020.6.1 ["The following minimum guidelines are adopted for *all* Correctional Peace Officers"]

emphasis added); CDCR-0313 (DOM § 33202.6.2 [regarding the limited, inapplicable exceptions to

grooming standards]).

Because it cannot be reasonably disputed that (1) Guthrey's hair and beard were in violation of

the applicable grooming policy when he arrived for training on May 3, 2010, (2) Pate made reference

only to Guthrey's hair and beard in allegedly telling him "this isn't going to work," or (3) religion

and race never were discussed during that interaction, Guthrey cannot dispute that Pate acted in

accordance with his own supervisorial obligations to enforce CDCR employment policies in

identifying to Guthrey—his direct report—that Guthrey was in violation of those policies.

////

////

### B. Guthrey Erroneously Believes That, as a Retired Annuitant, He Was Not Subject to Summary Dismissal at Any Time.

Compounding his mistaken belief that the grooming standards didn't apply to him or that he was in compliance with those standards, Guthrey further takes issue with Pate's authority as Guthrey's direct supervisor. In his deposition, for example, Guthrey claims that he was hired as a retired annuitant under "private contract" with CDCR. *See* depo 58:3-4 ("We discussed that I was a privately contracted employee.") In pending document requests, Guthrey seeks the Memorandum of Understanding for retired annuitants hired for the CCI position. *See* Notice of Deposition of Person(s) Most Knowledgeable, May 21, 2012, Attachment B ¶ 2. Yet Guthrey also claimed in his deposition that, as a retired annuitant, he would not be subject to "negotiated grooming standards." *See* depo 58:6-7 ("I mentioned that I also had no responsibility to adhere to any negotiated grooming standards.") These collectively demonstrate that Guthrey is confused about the employment of retired annuitants, as he appears to believe that he is both free from restrictions applicable to CCI employees hired through the civil service system and protected under collective bargaining, but—like a civil service employee—is also immune from being summarily dismissed at any time due to collective bargaining and state law.

As a matter of state statute, retired annuitants are essentially "at will" employees, whose employment relationship can be terminated at any time for any non-unlawful reason. *See* Gov't Code § 21224 (retired annuitants are hired on temporary basis); *see also* CDCR-0298 (retired annuitants are hired "on a temporary basis, subject to termination at any time); 0397 (temporary basis); 0398 ("… subject to termination at any time").

Guthrey now knows all of this, both through his own admissions during deposition as well as from the discovery he's already obtained from the defendants. The citations above demonstrate that this material is in Guthrey's hands at this juncture of the litigation and that he continues to prosecute the action despite having before him information that dispels any misapprehensions that he may have once had in believing that the grooming policy didn't apply to him or that his services as a retired annuitant couldn't be discontinued at any time.

In sum, there is no dispute that Guthrey was hired on a temporary basis under Pate's supervision—pending completion of training—and that he was subject to termination at any time. There is no dispute he arrived at the training in violation of CDCR's employment policies. There is no dispute that the interaction between Pate and Guthrey lacked any discussion or reference to Guthrey's religious beliefs. And there is no dispute that Guthrey failed to ever request a religious accommodation from SCC, to wear his hair and beard in the manner that he did when he arrived for training on May 3, 2010 or otherwise. *See* depo 61:12-15 ("Q. So you never requested any sort of religious accommodation in order to go to work as a retired annuitant; is that right? A. That's right.")

There is no dispute, then, that Guthrey was correctly told by his direct supervisor, Pate, that his hair and beard "won't work" in the position as Correctional Counselor I. With this legitimate, non-discriminatory basis for Pate and Guthrey's interaction undisputed, Guthrey is left with nothing but speculation and misrepresentations to support this litigation—and neither of those bases support *any* additional discovery from the defendants. As shown below, compounding the lack of any factual bases for his claims, Guthrey's discrimination claims are undisputedly defective as a matter of law.

## III. GUTHREY'S DISCRIMINATION CLAIMS ARE DEFECTIVE AS A MATTER OF LAW.

### A. Guthrey Should Now Recognize that His Claims Are Defective Because They Exclusively Consist of Speculation and Misapprehensions.

In the course of the lawsuit, Guthrey has used a blunderbuss to flush out an actionable basis for his claims—he's asserted allegations of CDCR misconduct against a wide range of protected categories to see if any of them hit their mark:  Gender, age, race, religion, and national origin. Allegations against the former two have missed, and, left with the latter three as targets, Guthrey continues the litigation despite unmistakable defects in the legal bases for his claims. As these defects are otherwise undisputable, the defendants should not be forced to expend time and money—especially during an ongoing state fiscal emergency that includes position, pay, and agency-budget reductions—to comply with a burdensome swath of discovery requests founded on a clearly frivolous lawsuit.

As noted above, Guthrey admits initiating this lawsuit in a bad faith effort to find out whether there is any traction to a discrimination claim against Pate:

Q. In your first complaint when you contacted the DFEH on May 18th, you don't mention religion?

A. Like I said, I was looking for what it could be.

Q. But at that point in time, you didn't think it was religion?

A. I considered that. I mean, I considered that it was my world view. I didn't know what to think. I just knew I needed to get protected and protected quickly.

Depo 95:15-24.

Religion is one of several angles Guthrey has experimented with to state a claim; as quoted above, "Since I couldn't get any definitive answer back from the institution, *my conjecture* was from past experience with [Pate] it could have been anything. *I was trying to find out what it was.*" Depo 93:7-10.

And for the approximately ten-minute encounter that gives rise to this lawsuit—his interaction with Pate on May 3, 2010—Guthrey has only this to say:

Q. But you left that conversation not understanding what he didn't approve of, right?

A. Right.

Q. So it could have been your hair? It could have been something different?

[Objection]

A. I don't know. I don't know what his problem was.

Depo 126:20-25, 127:1-3.

In sum, Guthrey initiated this lawsuit despite "not knowing what to think" or what Pate's purported "problem was"—Guthrey began these proceedings only "conjecturing" that it "could have been anything" so he "was trying to find out what it was."

It's an abuse of the judicial and discovery process to initiate and maintain lawsuits on empty speculation, however. Federal Rules of Civil Procedure, Rule 11 prohibits complaints from being filed based on speculation and conclusory allegations. *See Mendez-Aponte v. Bonilla,* 645 F.3d 60, 68-69 (1st Cir. 2011) (upholding district court's issuance of Rule 11 sanctions after litigant forced

36

court to "endure" a "wild-goose chase" for supporting evidence in face of speculative and conclusory allegations). Rule 11 also imposes an obligation on plaintiffs to forego their lawsuits when, after investigation and discovery, it is manifest that their material contentions are unfounded. *See* Committee Notes on Amendments to Federal Rules of Civil Procedure (1993), 146 F.R.D. 401, 585-586 ("Moreover, if evidentiary support is not obtained after a reasonable opportunity for further investigation or discovery, the party has a duty under the rule not to persist with that contention.") A pleading is not "license to join parties, make claims, or present defenses without any factual basis or justification." *Id.* at 585. As noted by the Third Circuit, "A shot in the dark is a sanctionable event, even if it somehow hits the mark." *Garr v. U.S. Healthcare, Inc.,* 22 F.3d 1274, 1279 (3d Cir. 1994) And, with respect to discovery, "Rule 26(g) imposes an affirmative duty on attorneys to utilize discovery in a responsible manner and to avoid discovery abuses. It prevents seemingly proper discovery *that is grossly disproportionate to the case, unduly burdensome, or intended to harass the opposing party*." Rutter Group, Fed. Civ. Proc. Before Trial, Cal. and Ninth Circuit Ed., § 11:1217 (2012) (emphasis added).

Founded on empty speculation and wishful thinking, Guthrey's complaint cannot hit its mark. His complaint—and the discovery requests arising from it—is further confounded by manifest legal defects in his discrimination claims.

### B. Guthrey's Religious, Race, and National Origin Discrimination Claims are Defective as a Matter of Law.

Guthrey is charged with knowing the applicable law to his claims—yet he continues to prosecute this action, and seek expansive discovery, despite manifestly failing to state a claim for religious discrimination. The Ninth Circuit has held that:

> In order to establish a prima facie case of religious discrimination, a plaintiff must meet a three-part test … The employee must establish that "(1) he had a bona fide religious belief, the practice of which conflicted with an employment duty; (2) he informed his employer of the belief and conflict; and (3) the employer threatened him or subjected him to discriminatory treatment ... because of his inability to fulfill the job requirements.

*Opuku-Boateng v. State of Cal.,* 95 F.3d 1461, 1467 n. 9 (9th Cir. 1997).

Here, given his own testimony, Guthrey knows that he fails all three parts. First, he never informed Pate or CDCR of a religious conflict with the grooming standards regarding the length of his hair and his beard. As noted above, Guthrey admits that he never asked for a religious accommodation. Depo 61:12-15. And despite affirmatively alleging in his operative complaint that, "During the April 29, 2010 conversation with Defendant PATE, Mr. GUTHREY informed Defendant PATE that he had maintained his long hair and facial beard in observance of his faith," Guthrey subsequently testified at deposition that he actually cannot recall discussing his religion in connection with his hair or beard in speaking with Pate about returning to work as a retired annuitant. *See* SAC ¶ 14; depo 51:6-8. Nor does Guthrey allege that he ever spoke with Pate about his religious beliefs and their connection to his hair and beard. In fact, in his prior litigation against CDCR, Guthrey's sole argument in favor of wearing a beard was due to alleged medical needs—no mention was made of any religious justification for wearing his beard. Depo 56:4-13.

If he never informed his employer of religious beliefs that conflicted with the applicable grooming standards, Guthrey cannot state a claim of discrimination against those beliefs. Moreover, Guthrey has made clear during the meet and confer process underlying his pending motion to compel that he is basing his religious discrimination claim not on his actual religion—i.e. "a bona fide religious belief," but on religious beliefs that Pate allegedly mistakenly attributed to him.

In discovery, Guthrey has requested any documents from Pate dealing with the September 11 terrorist attacks or having at all to do with Muslims. In connecting these documents to his claims, Guthrey (through counsel) stated that: "Mr. Guthrey's suspicion [is] that Mr. Pate's treatment of Mr. Guthrey resulted from Mr. Pate's mistaken belief that Mr. Guthrey was Muslim" and Guthrey questions "whether Mr. Pate is among those individuals that harbor negative feelings toward Muslims, particularly in response to the events of September 11, 2001." In defining "Muslim," Guthrey stated that a Muslim is "an adherent of Islam." *See* Dec. 17, 2011 letter from plaintiff's counsel to the undersigned, p. 21.

But Guthrey isn't Muslim. It's undisputed that Guthrey professes to be an adherent a Hindu-based religion, Ananda Magna. SAC ¶ 9. Title VII discrimination claims on the basis of *perceived*

38

membership in a protected class, however, are not actionable. District courts throughout the country have rejected Title VII claims for alleged conduct based on perceived protected categories concerning the plaintiff. *See, e.g., Burrage v. FedEx,* 2012 WL 1068794 at *8 (N.D. Ohio March 29, 2012); *Butler v. Potter,* 345 F.Supp. 2d 844, 850 (E.D. Tenn. 2004) (noting Title VII says nothing about protection of persons perceived as belonging to a protected class).

And this defect in his religious discrimination claim undercuts his race and national origin claims as well. In his complaint, Guthrey claims that he "was discriminated against because of Defendant PATE's mistaken belief that Mr. [Guthrey] was of Middle Eastern or South Asian descent." SAC ¶ 24. And, in asserting his Title VII national origin and race claim, Guthrey states:

> This cause of action is brought pursuant to 42 U.S.C. §§ 2000e, et seq. to obtain relief for Mr. GUTHREY for discrimination in employment because of his *perceived* national origin or ancestry.

> … In committing the acts and omissions alleged herein, Defendants discriminated against Mr. GUTHREY because of his *perceived* race.

SAC ¶¶ 54, 56 (emphasis added).

As acknowledged by Guthrey here, he is not of Arab, Middle Eastern, or South Asian descent—rather, Guthrey is Caucasian. SAC ¶ 9 ("Mr. Guthrey is a 56-year old Caucasian male ….") Because Title VII does not provide a cause of action for persons *perceived* as belonging to a protected class, Guthrey's race and national origin are facially defective.

Moreover, Guthrey admits to committing perjury in initiating this litigation, by alleging under oath in his DFEH complaint that Pate "verbally directed racial and religious comments towards me letting me know his hate for Arabs and their religious beliefs." *See* Exhibit 15 to depo ("I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge …."). When asked at his deposition if this statement was accurate, however, Guthrey backtracked and responded: "No." He then admitted that he could not recall Pate ever saying anything to him specifically about those of Arab descent. Depo 131:2-13.

Founded on lies and speculation, and defective as a matter of law, Guthrey's claims are not actionable and any discovery propounded on the basis of his complaint is in bad faith, contrary to

both Rule 11 and Rule 26 to the Federal Rules of Civil Procedure. Accordingly, the Court should deny Guthrey's motion in its entirety.

## IV. SPECIFIC DISCOVERY AT ISSUE IN GUTHREY'S MOTION TO COMPEL.

The primary discovery issues before the Court here concern Guthrey's highly invasive and irrelevant discovery requests falling within three categories: (1) factual details and documents with any bearing on the personal religious beliefs of Pate ; (2) 10 years of information relating to every instance where there has been a "complaint" by prison (i.e., Sierra Conservation Center) employees alleging religion, race, or national origin discrimination; and (3) details regarding any request by prison employees or independent contractors for religious accommodations. *See* Motion, pp. 2:14-27; 3:7-21.

### A. Pate's Religious Beliefs Are Not Discoverable

Despite testifying that he doesn't recall connecting his grooming to his religion for Pate and that he never asked for religious accommodation, Guthrey asks the Court here to compel Pate to respond to the following requests: (1) Does Pate believe that "human beings have souls?"; (2) Describe Pate's religious belief system; (3) What is the date, time, location, and name of each religious place of worship in which Pate has attended services in the past 5 years?; (4) What is the date, time, location, and identity of any individual with whom Pate has discussed his religious thoughts or beliefs in the past 5 years?; and (5) Provide copies of every document that "refers or relates" to Pate's religious belief system or attendance at any religious service.

Pate appropriately asserted his First Amendment and state privacy rights in objecting these requests. Pate's personal religious beliefs are irrelevant to any issues in this case and he has never put his own religious beliefs at issue—indeed, Guthrey admitted that he was only speculating when he accused Pate of religious bias.

As noted above, Pate reached out to Guthrey to hire him as a retired annuitant—after knowing each other for over 20 years. It defies logic that Pate would work with the plaintiff for over 20 years, allegedly know or perceive Guthrey's religious and racial traits, offer him a retired annuitant position, and then refuse him that position *within days* for those very same traits. "[W]here the same actor is

40

responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory action." *Bradley v. Harcourt Brace & Co.,* 104 F. 3d 267, 270-271 (9th Cir. 1996) (more than two years between hiring and firing, whereas here there is a mere 4-day span).

And critically, as discussed above, Guthrey has admitted that he misrepresented in his civil complaint the affirmative allegation that he had discussed a religious need to wear his beard and long hair with Pate. *See* Complaint, ¶ 14:1-3. Thus, merely paying court filing fees and accusing Pate of religious discrimination does not entitle Guthrey to subject Pate to an Inquisition-like interrogation of his religious beliefs; the Court, as a governmental body, cannot compel any citizen to publicly and involuntarily detail his or her personal religious beliefs. *See, e.g., Torcaso v. Watkins, 367 U.S. 488, 493* (1961) (state and federal government cannot "force" anyone to "profess a belief or disbelief in any religion"). And to the extent information about Pate's religious beliefs is intended to undermine his credibility as a witness, discovery is absolutely barred under Federal Rules of Evidence, Rule 610.

### B. Other Employees' Complaints and Accommodation Requests

Guthrey is not entitled to complaints of discrimination by other prison employees against supervisors other than Pate. The defendants have already disclosed to Guthrey that there have been no other complaints of discrimination against Pate—any complaints against other CDCR managers are completely irrelevant here. *See Schrand v. Fed. Pac. Elec. Co.,* 851 F.2d 152, 156 (6th Cir. 1988) ("me too" evidence regarding unrelated supervisor's alleged conduct towards other employees is irrelevant to plaintiff's claims); *Moore v. Donahoe,* 2011 WL 6000709 at *1 (9th Cir. Dec. 1, 2011) (affirming district court's determination that "me too" evidence is irrelevant where other employees, whose observations of alleged race discrimination were at issue, did not also report to the plaintiff's supervisors).

### C. Remaining and Future Discovery Requests.

In light of the above, the discovery requests at issue here are overbroad, unduly burdensome, oppressive, and not designed to lead to admissible evidence. While the defendants will provide

Guthrey with verifications to their discovery responses, Guthrey should be barred from any further discovery—the stage is set for voluntary dismissal or, failing that, summary judgment.

Guthrey's overly expansive demands for discovery are demonstrated not only by his paper-Inquisition into all facets of Pate's religious beliefs and his demand for 10-years worth of religious accommodation requests and outcomes for other SCC employees outside of Pate's supervision—the threat posed by his misuse of the discovery process is further illustrated by his recent notice for a June 11th deposition of CDCR's "person(s) most knowledgeable." In that notice, there are two attachments, the first is five-pages long and identifies *twenty-two* primary categories of examination, as well as *nineteen* subcategories to these. The second is also five-pages long, and identifies *twenty-one* categories of documents demanded of the PMK deponent, as well as *twenty* subcategories to these. All this in order to litigate over a roughly 10-minute interaction where no mention of religion or race was made, where Guthrey was indeed in violation of the applicable grooming standards, and by way of a complaint that is fueled wholly by speculation and legally-defective claims. The Court should deny Guthrey's motion to compel.

**E.      Plaintiff's Request That Defendant CDCR Provide Unredacted Copies and Original Electronic Versions of Produced Documents.**

Of the documents that Defendant CDCR has produced, it redacted employee names from three documents: CDCR 000010, CDCR 000011, and CDCR 000132, and produced paper versions of approximately eight (8) emails and attachments, including CDCR 000068.

In April 2012, Plaintiff requested that Defendant provide unredacted versions of CDCR 000010, CDCR 000011, and CDCR 000132 and the original electronic version of CDCR 000068. Though Defendant agreed to provide the requested items, it has failed to do so as of the date of this filing.

**1.      Plaintiff's Argument in Support of Production of the Requested Discovery**

CDCR 000010 and 000011 provide information regarding individuals hired to the position of Correctional Counselor I, the position to which Plaintiff was hired as a Retired Annuitant before being terminated by Defendant Pate in May 2010. Defendant has redacted the names of all employees holding the position of Correctional Counselor I, except that of Plaintiff. Defendant did not provide a privilege log stating the basis for its withholding of this information.

CDCR 000132 is entitled "Approved Chapel and Religious Yard Schedule" and lists religious programs offered by Defendant CDCR to inmates. From this list, 12 entries are indecipherable, either because they have been redacted with a dark pen or possibly due to highlighting in the original document.

CDCR 000068 is a Memorandum purportedly written by Defendant Pate on May 3, 2010 stating that he told Plaintiff "his services were not needed as a Correctional Counselor I…" Defendants produced this document in paper form only.

Plaintiff has requested unredacted copies of CDCR 000010, 000011, and 000132, and the original electronic format of CDCR 000068. Though Defendant's counsel has agreed to provide the requested documents, he has, as of the date of this filing, failed to do so. Because Defendant appears unwilling to provide these items without the Court's intervention, Plaintiff respectfully requests that the Court order Defendants to provide the documents as requested by Plaintiff.

    **2.**       **Defendants' Argument against Production of the Requested Discovery**

The defendants incorporate the above request to bar any further discovery by Guthrey here (*see* Part D.2 above for this argument), and, based on Local Rule 251, will not repeat it.

Additionally, the defendants never agreed to produce unredacted discovery—defense counsel, again, agreed only to *consider* that request made by plaintiff's counsel. Given that the redactions in question involve third-parties, who Guthrey has made clear he may seek to depose or obtain personnel regarding, CDCR again has no cause to disclose this information as it has no bearing to his employment at CDCR.

First, as for CDCR 00132, there are no redactions; CDCR agrees to provide a clearer copy to the extent possible prior to the June 15, 2012 hearing on this motion.

As for CDCR 00010-11 are two typewritten lists of individuals holding the position of Correctional Counselor I. The document begins by listing an individual apparently hired into that position on January 1, *1982*. The second item lists a second individual holding the position from March 1, *1982* to June 30, *1983*. And so on. What possible bearing could the identity of these individuals have on whether, on May 3, *2010*, Pate's side of the interaction with Guthrey was based on religious or racial bias? There can be no relevance and Guthrey's insistence on obtaining this information demonstrates again that he seeks to obtain a vast amount of information irrelevant to

this lawsuit in order to build his case anew in the face of his self-destructive admissions and defective legal claims. The Court should deny Guthrey any further discovery, including pointlessly unredacted material.

**F.      Plaintiff's Request That Defendants Verify Their Responses to Plaintiff's Interrogatories.**

Defendants CDCR and Pate served unverified responses to Plaintiff's discovery requests on November 21, 2011. Defendant Pate served supplemental responses to Plaintiff's Interrogatories (Set One) on March 14, 2012. Defendant CDCR served supplemental responses to Plaintiff's Interrogatories (Sets One and Two) on March 19, 2012. To date, neither of the Defendants have provided verifications as requested by Plaintiff.

**1.      Plaintiff's Argument in Support of Production of the Requested Discovery**

A party properly served with interrogatories must answer each interrogatory "separately and fully in writing under oath." Fed. R. Civ. Proc. 33(b)(1). In addition, "the person who makes the answers must sign them, and the attorney who objects must sign any objections." Fed. R. Civ. Proc. 33(b)(5).

As with the discovery requests discussed in Sections D and E, above, Defendants have agreed to provide the required verifications but have failed to do so. This is indicative of Defendants' continued attempt to thwart Plaintiff's efforts to obtain discovery responses to which Plaintiff is entitled. As such, Plaintiff respectfully requests that the Court order Defendants to provide verification for all responses submitted by Defendants in response to Plaintiff's Interrogatories.

**2.      Defendants' Argument against Production of the Requested Discovery**

The defendants will provide the verifications requested.

////
////
////
////
////
////

Respectfully submitted,

DATED: June 8, 2012                     SEIBERT & BAUTISTA


BY: ___/s/ Shannon Seibert_____
Shannon Seibert
*Attorneys for Plaintiff*

DATED: June 8, 2012                     KAMALA HARRIS
Attorney General of California
FIEL D. TIGNO
Supervising Deputy Attorney General


BY: ___/s/ Michael Gowe_____
MICHAEL GOWE
Deputy Attorney General
*Attorneys for Defendants*