1  KAMALA D. HARRIS, State Bar No. 146672
   Attorney General of California
2  FIEL D. TIGNO, State Bar No. 161195
   Supervising Deputy Attorney General
3  MICHAEL D. GOWE, State Bar No. 226989
   Deputy Attorney General
4    1515 Clay Street, 20th Floor
     P.O. Box 70550
5    Oakland, CA  94612-0550
     Telephone:  (510) 622-2201
6    Fax:  (510) 622-2121
     E-mail:  Michael.Gowe@doj.ca.gov
7  *Attorneys for Defendants*

8                  IN THE UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10                          FRESNO DIVISION

11

12

| | |
|---|---|
| **RAYMOND GUTHREY,** | 1:10-cv-02177-AWI-BAM |
| Plaintiff, | |
| v. | **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR PROTECTIVE ORDER REGARDING PLAINTIFF'S AMENDED NOTICE OF DEPOSITION FOR FRCP 30(B)(6) PERSON(S) MOST KNOWLEDGEABLE** |
| **CALIFORNIA DEPARTMENT OF CORRECTIONS et al.,** | |
| Defendants. | Date:        July 20, 2012<br>Time:        9:00 a.m.<br>Dept:        8<br>Judge:       The Honorable Barbara A. McAuliffe<br>Trial Date:  June 17, 2013<br>Action Filed:  11/19/2010 |

**TO PLAINTIFF RAYMOND GUTHREY AND HIS COUNSEL OF RECORD**:

PLEASE TAKE NOTICE THAT on **July 20, 2012 at 9:00 a.m.** or a soon as thereafter as counsel may be heard in Courtroom 8 of United Stated District Court for the Eastern District of California, located at 2500 Tulare Street, Fresno, California 93721, defendants California Department of Corrections and Rehabilitation and Michael Pate, Jr. will move this Court for a protective order prohibiting or otherwise limiting the scope of Plaintiff's Amended Notice of

1

1    Deposition of Person(s) Most Knowledgeable of Defendant California Department of Corrections

2    and Rehabilitation and Request for Production Pursuant to FRCP 30(b)(6).

3         This motion is made pursuant to Federal Rules of Civil Procedure, Rule 26(c)(1)(A)

4    (forbidding the discovery) and (D) (limiting the scope of discovery to certain matters). As held by

5    the Ninth Circuit, "Rule 26(c), setting forth grounds for protective orders, was enacted as a

6    safeguard for the protection of parties and witnesses" and the rule "underscores the extensive

7    control that district courts have over the discovery process, authorizing courts to make any order

8    which justice requires to protect a party or person from annoyance, embarrassment, oppression, or

9    undue burden or expense." *United States v. CBS, Inc.,* 666 F.2d 364, 368-369 (9th Cir. 1982).

10   Given this extensive control that district courts have over discovery, the court "may be as

11   inventive as the necessities of a particular case require in order to achieve the benign purposes of

12   the rule"—to "conclude otherwise would contravene the policy that the Federal Rules should be

13   construed to secure the just, speedy and inexpensive determination of every action." *Id.*

14        This motion is made on the grounds that requested categories of information and documents

15   in the deposition notice and its attachments are overly broad and work to impose annoyance,

16   embarrassment, oppression, and undue burden on the defendants, and are neither relevant nor

17   designed to lead to the discovery of admissible evidence.

18        Moreover, any discovery—including everything encompassed in the deposition notice and

19   attachments—should be stayed pending the Court's resolution of the plaintiff's motion to compel,

20   set for hearing on June 22, 2012.  This is because there's overlap between areas of testimony and

21   documents requested in the plaintiff's deposition notice and the issues under dispute in the

22   plaintiff's motion to compel.  Not only does the plaintiff seek otherwise confidential and private

23   third-party personnel information in both his pending motion to compel and by way of his

24   deposition notice, but the defendants are seeking a prohibition against *any* further discovery by

25   the plaintiff in their opposition to his motion to compel. And the defendants likewise move here

26   to prohibit the discovery sought in the plaintiff's PMK deposition notice on the same grounds as

27   raised in the parties' joint statement regarding the plaintiff's motion to compel, as the plaintiff's

28   complaint and discovery—as he should realize now—is meritless and counter to Federal Rules of

2

Civil Procedure, Rules 11 and 26. In the event the Court grants the request by the defendants or otherwise imposes pertinent limits on further discovery, some or all of the areas for testimony or document production in his deposition notice may be moot.

Additional and specific grounds for this motion are as follows:

## GENERALLY

The plaintiff's notice of deposition, including its attached document request, is defective in that it failed to be served 30 days in advance of the date set for deposition as otherwise required in Federal Rules of Civil Procedure, Rule 34. *See, e.g.,* Schwarzer et al., Fed. Civ. Proc. Before Trial § 11:1439 (The Rutter Group, Cal. & 9th Cir. ed. 2012) ("If the party noticing the deposition joins a request for production of documents, Rule 34 procedures apply. Under Rule 34, a minimum of 30 days' notice is required.")

## ATTACHMENT A

Attachment "A" to the deposition notice involves, "The matters on which the deponent will be examined." Attachment A, p. 1:2.

1. In **item 1** to Attachment A, the plaintiff seeks testimony on "the gathering of records, documents, and other information in response to Plaintiff's discovery requests and/or for purposes of Defendant CDCR's Rule 26 Initial Disclosures" for this case. The information requested here is barred from discovery by the attorney-client privilege and attorney's work product doctrine.

2. In **item 2** to Attachment A, the plaintiff seeks testimony on a variety of topics regarding "the Retired Annuitant Program at CDCR." This request is overbroad in encompassing policies and practices outside of the Sierra Conservation Center ("SCC") and therefore appears to be designed to impose annoyance, oppression, and undue burden on CDCR. The plaintiff's claims are premised on his April-May 2010 hiring and employment as a retired annuitant for a Correctional Counselor I position at SCC only—as such, any testimony should be limited to retired annuitant hiring or release at SCC for a Correctional Counselor I in April-May 2010.

3. In **item 3** to Attachment A, the plaintiff seeks testimony regarding memoranda of understanding relating to Correctional Counselor I positions from January 1, 2009 to the present. The basis for this lawsuit, however, is the plaintiff's release as a retired annuitant for the position

3

of Correctional Counselor I in May 2010. Because retired annuitants, as a matter of state law, are not subject to collective bargaining agreements, and the plaintiff's claims only encompass his hiring and release in April-May of 2010, this request is overly broad and seeks testimony regarding information that is neither relevant nor designed to lead to the discovery of admissible evidence. Moreover, memoranda of understanding are publicly available online.

4.    In **item 4** to Attachment A, the plaintiff seeks testimony regarding "CDCR Policies and Procedures for uniformed and non-uniformed staff." While the plaintiff illustrates examples of such policies and procedures, he does so with the caveat that the requested testimony includes but is not limited to those topics.  This request is overly broad, vague, ambiguous, and encompasses information that is neither relevant nor designed to lead to the discovery of admissible evidence—it further appears to be designed to impose annoyance, oppression, and undue burden on CDCR. Because the plaintiff's claims involve his release from a retired annuitant position as Correctional Counselor I at SCC, as well as the grooming standards applicable to male correctional officers regarding hair length and beards, any policies and procedures to be discussed should be limited to these areas.

5.    In **item 5** to Attachment A, the plaintiff seeks testimony regarding "classification of CDCR employees." This request is to include all supervisory and nonsupervisory classifications, those that are peace officer and those that are not, as well as those that involve uniforms and those that do not.  Essentially, the plaintiff seeks testimony regarding the "classification" of every single position at CDCR.  The term "classification" is vague and ambiguous to a degree that it's unintelligible for purposes of responding to this request. The request is also overly broad and encompasses information that is neither relevant nor designed to lead to the discovery of admissible evidence—it further appears to be designed to impose annoyance, oppression, and undue burden on CDCR.

6.    In **item 6** to Attachment A, the plaintiff seeks "CDCR's personnel policies, procedures, and practices at Sierra Conservation Center's Office of Personnel."  This request is sufficiently vague and ambiguous to be unintelligible. It is unclear what the request seeks— personnel policies, procedures, and "practices" used at SCC in general or as applies specifically

4

for employees within the "Office of Personnel" or something else. It is also overbroad; CDCR has already disclosed in discovery those written policies and procedures used at SCC that deal with the hiring and release of retired annuitants as well as grooming standards that applied to the plaintiff on May 3, 2010. If there are specific written policies and procedures that allegedly have bearing on this case otherwise, the plaintiff has failed to specify so in his requests. The request therefore encompasses information that is neither relevant nor designed to lead to the discovery of admissible evidence, and further appears to be designed to impose annoyance, oppression, and undue burden on CDCR.

7. In **item 7** of Attachment A and its subparts, the plaintiff seeks testimony on a variety of topics involving "CDCR's anti-discrimination, anti-harassment, and anti-retaliation policies and procedures applicable to [SCC] for the period of January 2006 to the present." The time frame is overbroad: the alleged conduct giving rise to this lawsuit took place in an approximately 10-minute period on May 3, 2010. There is no basis for providing testimony for policies and procedures spanning more than a 6-year period, from January 2006 to the present; this request appears to be designed to impose annoyance, oppression, and undue burden on CDCR. To the extent any testimony should be given at all, it should be limited to the anti-discrimination and retaliation policies applicable to the plaintiff's employment in May 2010.

8. In **items 10, 11, and 12** (11 appears to be a typo; it duplicates 10) of Attachment A, the plaintiff seeks third-party personnel information—for Theresa Howell and Rafael Mendoza. This area of discovery is currently disputed by the parties and a motion is pending before the Court to be heard on June 22, 2012. Because neither Ms. Howell nor Mr. Mendoza were hired as a retired annuitant by Defendant Michael Pate, Jr. or supervised by him, there is no threshold basis for any testimony regarding their employment. Moreover, Ms. Howell would not be subject to the male grooming standards—it's therefore unclear what bearing her employment has on the case. These requests encompass information that is neither relevant nor designed to lead to the discovery of admissible evidence, and the requests are also overbroad and further encompass confidential and private personnel information that should not be subject to discovery.

9.     In **item 13** of Attachment A, the plaintiff seeks testimony regarding his job duties while employed from January 1, 1999 to December 29, 2008, including his performance reviews, his participation in substance-abuse programs at SCC "from January 1, 1999 through the present day." This request is unintelligible—the date ranges do not match up. The request is overbroad and encompasses information that is neither relevant nor designed to lead to the discovery of admissible evidence—the case is premised on alleged conduct related to his employment as a retired annuitant on May 3, 2010; his prior employment before his retirement is entirely irrelevant. This request appears to be designed to impose annoyance, oppression, and undue burden on CDCR.

10.     In **item 14** of Attachment A and its subparts, the plaintiff seeks testimony regarding his work performance and any discipline received (or contemplated) during his employment with CDCR from January 1, 1999 to December 29, 2008. The request is overbroad and encompasses information that is neither relevant nor designed to lead to the discovery of admissible evidence— the case is premised on alleged conduct related to his employment as a retired annuitant on May 3, 2010; his prior employment before his retirement is entirely irrelevant. This request appears to be designed to impose annoyance, oppression, and undue burden on CDCR and consists of vague and ambiguous terms.

11.     In **item 15** of Attachment A and its subparts, the plaintiff seeks testimony regarding the work performance and any discipline received (or contemplated) by defendant Michael Pate, Jr. The defendants have already disclosed that the only complaint against Mr. Pate during his employment is that by the plaintiff. Because the plaintiff's claims here are premised on allegations of religious, racial, and national origin bias by Mr. Pate against the plaintiff during an interaction on May 3, 2010, there is no basis to request testimony on Mr. Pate's work performance generally. As such, this request is overbroad, consists of vague and ambiguous terms, and encompasses information that is neither relevant nor designed to lead to the discovery of admissible evidence. Moreover, this request appears to be designed to impose annoyance, oppression, and undue burden on CDCR and embarrassment on Mr. Pate.

12.     In **items 16 and 17** of Attachment A and item 17's subparts, the plaintiff seeks testimony regarding complaints or "concerns" made about defendant Michael Pate, Jr. during his employment at CDCR. CDCR has already provided discovery responses to the plaintiff on this point, stating that the only complaint against Mr. Pate during his employment is that alleged against him by the plaintiff.  This request is further marred by vague and ambiguous terms and, particularly given its unnecessary redundancy, appears to be designed to annoy, harass, and embarrass Mr. Pate.

13.     In **item 18** to Attachment A, the plaintiff seeks testimony regarding In-Service Training programs held at SCC from January 1, 2010 to the present "including but not limited to administration and/or supervision of the program, content and teaching of classes, and testing and requirements of Block Training attendees." There is nothing in the plaintiff's complaint that implicates any of this information. That the alleged 10-minute interaction between the plaintiff and Mr. Pate took place at the time both men were scheduled to attend such training on May 3, 2010 doesn't mean that "the administration and/or supervision of the program, content and teaching of classes, and testing and requirements of Block Training attendees" or any other such information has any bearing whatsoever on this case—especially given that this request encompasses the such training *over the last two and a half years*.  Accordingly, this request is overbroad, vague and ambiguous, and encompasses information that is neither relevant nor designed to lead to the discovery of admissible evidence. Moreover, this request appears to be designed to impose annoyance, oppression, and undue burden on CDCR.

14.     In **items 19 and 20** to Attachment A, the plaintiff seeks testimony regarding all substance-abuse programs and religious programs at SCC from January 1, 1999 to the present. The plaintiff's claims in this case are premised on an approximately 10-minute interaction between him and Mr. Pate on May 3, 2010.  Neither the plaintiff nor Mr. Pate was involved in substance-abuse or religious programs at that time.  There is no basis then for testimony regarding such programs *predating* the alleged interaction and *spanning a 13-year period*.  Accordingly, this request is overbroad, vague and ambiguous, and encompasses information that is neither

relevant nor designed to lead to the discovery of admissible evidence. Moreover, this request appears to be designed to impose annoyance, oppression, and undue burden on CDCR.

15.     In **items 21 and 22** to Attachment A, the plaintiff seeks testimony regarding a variety of topics regarding electronic and physical record retention policies over an unspecified period of time and for all of CDCR regarding all of its "records." Moreover, the physical record retention policies are not limited to personnel information but, by way of illustration, also encompass religious programs and inmate substance-abuse programs. Given that this case is premised on allegations involving one particular employment decision on May 3, 2010 by defendant Michael Pate, Jr. regarding the plaintiff, to the extent that any testimony is given, it should be limited to personnel record retention related to the plaintiff's claims. Accordingly, this request is overbroad, vague and ambiguous, and encompasses information that is neither relevant nor designed to lead to the discovery of admissible evidence. Moreover, this request appears to be designed to impose annoyance, oppression, and undue burden on CDCR.

### ATTACHMENT B

Attachment "B" to the deposition notice requires the deponent "to produce the following documents, records or other material at said deposition." Attachment B, p. 1:2-3.

Attachment B consists of twenty-one document requests, some with subparts. These requests mirror all of the above items for testimony listed in Attachment A other than the first, regarding Rule 26 initial disclosures, and are simply prefaced with the phrase, "any and all documents that refer, pertain, or relate" to the item in question.  As such, the defendants' motion for protective order regarding the document requests are based on the grounds identified above generally and regarding the specific items in Attachment A. Moreover, given that the phrase "refer, pertain, or relate" can transform a discovery request into one that encompasses virtually anything, the defendants seek a protective order on the grounds that the requests, by virtue of this phrase, are further overly broad, vague, ambiguous, encompass information that is neither relevant nor designed to lead to the discovery of admissible evidence, and imposes annoyance, oppression, and undue burden on CDCR.

This motion will be based on this notice of motion and motion, the deposition notice in question that is attached hereto as **Exhibit 1**, a joint statement by the parties, the pleadings, records, and other material on file with the Court and on its docket in this case, as well as any oral argument by the parties on the hearing of this motion.

Dated: June 20, 2012

Respectfully Submitted,

KAMALA D. HARRIS
Attorney General of California
FIEL D. TIGNO
Supervising Deputy Attorney General

/s/ Michael D. Gowe

MICHAEL D. GOWE
Deputy Attorney General
*Attorneys for Defendants*

SA2010103304
90251108.doc

# EXHIBIT 1

SEIBERT & BAUTISTA
Shannon Seibert (State Bar No. 240317)
Joe Bautista (State Bar No. 255708)
18711 Tiffeni Drive #17-129
Twain Harte, California 95383
Telephone: 209.586.2890
Facsimile: 888.874.8107

Attorneys for Plaintiff RAYMOND GUTHREY

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND GUTHREY, | 1:10-cv-02177-AWI-BAM |
| Plaintiff, | **AMENDED NOTICE OF DEPOSITION OF PERSON(S) MOST KNOWLEDGEABLE OF DEFENDANT CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION AND REQUEST FOR PRODUCTION OF DOCUMENTS PURSUANT TO FRCP 30(b)(6)** |
| vs. | |
| CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, MICHAEL PATE, JR., and DOES 1 THROUGH 25, Inclusive, | |
| Defendants. | |

TO EACH PARTY AND THEIR ATTORNEY OF RECORD:

PLEASE TAKE NOTICE THAT Plaintiff RAYMOND GUTHREY will take the deposition of the **PERSON(S) MOST KNOWLEDGEABLE** of Defendant CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION 22922 Twain Harte Drive, Twain Harte, California 95383, commencing at 9:30 a.m. on June 26, 2012.

YOU ARE FURTHER NOTIFIED THAT the deponent is not a natural person. The deposition will proceed in accordance with Rule 30(b)(6) of the Federal Rules of Civil Procedure and will be taken on oral examination before a certified stenographic reporter authorized to administer oaths. The deposition will continue from day to day, weekends and holidays excepted, until completed.

1

The matters on which the deponent will be examined are described in Attachment "A" to this Notice of Deposition. The documents hereby demanded to be produced by deponent at the deposition are described in Attachment "B" to this Notice of Deposition.

Dated: June 13, 2012

SEIBERT & BAUTISTA

By: _____

Shannon Seibert
Attorneys for Plaintiff Raymond Guthrey

2

## Attachment "A"

The matters on which the deponent will be examined are as follows:

1. The gathering of records, documents, and other information in response to Plaintiff's discovery requests and/or for purposes of Defendant CDCR's Rule 26 Initial Disclosures in the matter of *Guthrey v. California Department of Corrections and Rehabilitation, et al.* (1:10-cv-02177)

2. The Retired Annuitant program at CDCR, including but not limited to the application process, screening and selection of Retired Annuitants, requirements and/or prerequisites for becoming a Retired Annuitant, supervision and management of Retired Annuitants, audit of the Retired Annuitant program and/or hiring practices, retention of Retired Annuitants, and termination or discontinuation of Retired Annuitants.

3. Any and all Memorandums of Understanding that related, pertained, or applied to individuals employed as full-time or Retired Annuitants in the position of Correctional Counselor I from January 1, 2009 through the present day.

4. CDCR Policies and Procedures for uniformed and non-uniformed staff, including but not limited to the existence and enforcement of policies and procedures regarding grooming requirements and exceptions to said requirements for full-time employees and/or Retired Annuitants in the position of Correctional Counselor I, Correctional Counselor II, and Correctional Officer.

5. Classification of CDCR employees, including but not limited to "Peace Officer" and "Non-Peace Officer," supervisory and non-supervisory positions, and uniformed and non-uniformed positions.

6. Defendant CDCR's personnel policies, procedures, and practices at the Sierra Conservation Center's Office of Personnel.

7. Defendant CDCR's anti-discrimination, anti-harassment, and anti-retaliation policies and procedures applicable to the Sierra Conservation Center, including all camps and divisions, for the period January 2006 through the present including, but not limited to:

1

a. the substance of CDCR's anti-discrimination, anti-harassment, and anti-retaliation policies and procedures;

b. training provided to CDCR's employees regarding the substance of its anti-discrimination, anti-harassment, and anti-retaliation policies and procedures;

c. policies and procedures regarding investigation of complaints of discrimination, harassment, and/or retaliation; and

d. training provided to CDCR's employees regarding the manner in which said investigations are to be conducted.

8. The application, screening, selection and hiring of Plaintiff Raymond Guthrey to Position No. 099-222-9904-005 in 2010.

9. Any and all circumstances under which Plaintiff Raymond Guthrey was terminated from or failed to fill Position No. 099-222-9904-005 in 2010, including but not limited to the refusal to allow Plaintiff to begin block training on May 3, 2010, any and all documentation of the termination of Plaintiff's employment or failure to hire Plaintiff, and any and all internal communications regarding the termination of and/or failure to hire Plaintiff including but not limited to department approval of the action.

10. The application, screening, selection and hiring of Theresa Howell to Position No. 099-222-9904-007 in 2010.

11. The application, screening, selection and hiring of Theresa Howell to Position No. 099-222-9904-005 in 2010.

12. The application, screening, selection, hiring and/or firing of Rafael Mendoza to, for, or from the position of Correctional Counselor I as a Retired Annuitant in 2010 and/or 2011.

13. Plaintiff's job duties while he was employed by Defendant CDCR from January 1, 1999 through December 29, 2008, including but not limited to the nature and description of Plaintiff's job duties and assignments, Plaintiff's performance reviews, and Plaintiff's participation in substance-abuse programs held, administered, provided, or allowed by

2

Defendant CDCR at the Sierra Conservation Center, including all camps and divisions, from January 1, 1999 through the present day.

14. Plaintiff's work performance while employed by Defendant CDCR from January 1, 1999 through December 29, 2008 including, but not limited to:

    e.  any disciplinary action taken against or contemplated for Plaintiff at any time during her employment, including, but not limited to, written warnings, verbal counseling and/or reprimands;

    f.  the details of any and all criticism and/or negative evaluation or assessment(s) of Plaintiff's work performance and/or attitude including the source(s) thereof (including complaints originating outside of the company as well as within) and all facts upon which the criticism and negative evaluations and/or assessment(s) were based;

    g.  any praise and/or positive evaluation or assessment of Plaintiff's work performance and/or attitude including the source(s) thereof and all facts upon which the praise and positive evaluations and/or assessment(s) were based;

    h.  the extent to which, during the course of Plaintiff's employment, Plaintiff met Defendant's expectations with respect to her job duties;

    i.  all criteria, standards, or other performance metrics used to evaluate Plaintiff's performance.

15. Defendant MICHAEL PATE JR.'s work performance while employed by Defendant CDCR including, but not limited to:

    j.  any disciplinary action taken against or contemplated for him at any time during his employment, including, but not limited to, written warnings, verbal counseling, reprimands and/or termination and the reasons therefore;

    k.  any and all criticism and/or negative evaluation or assessment(s) of his work performance and/or attitude including the source(s) thereof (including complaints originating outside of the company as well as within) and all facts upon which the criticism and negative evaluations and/or assessment(s) were based;

3

l.  any praise and/or positive evaluation or assessment of his work performance and/or
            attitude including the source(s) thereof and all facts upon which the praise and
            positive evaluations and/or assessment(s) were based;

        m.  whether and to what extent, he met Defendant CDCR's expectations with respect to
            his job duties;

        n.  criteria, standards, or other performance metrics used to evaluate his performance.

16. Any and all complaints or concerns (oral or written) made about Defendant MICHAEL
    PATE, JR. by any employee, inmate, and/or third party from the beginning of his
    employment with Defendant CDCR to the present, including, but not limited to complaints
    or concerns about PATE having subjected any employees or inmates to harassment,
    discrimination, and/or retaliation.

17. To the extent any complaints or concerns (oral or written) were ever made about MICHAEL
    PATE, JR, any and all investigation of said complaints or concerns, including, but not
    limited to:

        o.  the identity of all persons who registered said complaints and/or concerns;

        p.  all persons interviewed in connection with said investigation;

        q.  the nature and substance of any and all such interviews;

        r.  the outcome and/or conclusions reached with respect to any such investigation, and
            any and all reasons therefore;

        s.  any discipline received by Defendant PATE or any other employee of defendant as a
            result of any such complaints or concerns.

18. In-Service Training ("Block Training") programs held at the Sierra Conservation Center,
    including all camps and divisions, from January 1, 2010 through the present day, including
    but not limited to administration and/or supervision of the program, content and teaching of
    classes, and testing and requirements of Block Training attendees.

4

19. Any and all substance-abuse programs conducted, held, administered, provided, or allowed by Defendant CDCR at the Sierra Conservation Center, including all camps and divisions, from January 1, 1999 through the present day.

20. Any and all religious programs conducted, held, administered, provided, or allowed by Defendant CDCR at the Sierra Conservation Center, including all camps and divisions, from January 1, 1999 the present day.

21. Defendant CDCR's electronic records retention and management policies, procedures, and practices, including but not limited to electronically stored information, e-mail storage and backup systems, and voicemail recording and retention systems.

22. Defendant CDCR's physical records retention and management policies, procedures, and practices, including but not limited to records that reflect personnel files and documentation, policies and procedures manuals, employee and/or Retired Annuitant schedules, religious programs conducted by CDCR personnel or third-party contractors, and inmate substance-abuse programs conducted by CDCR personnel or third-party contractors.

5

The deponent, who is a party to this action, is required to produce the following documents, records or other materials at said deposition.

1. Any and all documents that refer, pertain, or relate to the Retired Annuitant program at CDCR, including but not limited to the application process, screening and selection of Retired Annuitants, requirements and/or prerequisites for becoming a Retired Annuitant; supervision and management of Retired Annuitants, audit of the Retired Annuitant program and/or hiring practices, retention of Retired Annuitants, and termination or discontinuation of Retired Annuitants.

2. Any and all documents that refer, pertain, or relate to any and all Memorandums of Understanding that related, pertained, or applied to individuals employed as full-time or Retired Annuitants in the position of Correctional Counselor I from January 1, 2009 through the present day.

3. Any and all documents that refer, pertain, or relate to CDCR Policies and Procedures for uniformed and non-uniformed staff, including but not limited to the existence and enforcement of policies and procedures regarding grooming requirements and exceptions to said requirements for full-time employees and/or Retired Annuitants in the position of Correctional Counselor I, Correctional Counselor II, and Correctional Officer.

4. Any and all documents that refer, pertain, or relate to Classification of CDCR employees, including but not limited to "Peace Officer" and "Non-Peace Officer," supervisory and non-supervisory positions, and uniformed and non-uniformed positions.

5. Any and all documents that refer, pertain, or relate to Defendant CDCR's personnel policies, procedures, and practices at the Sierra Conservation Center's Office of Personnel.

6. Any and all documents that refer, pertain, or relate to Defendant CDCR's anti-discrimination, anti-harassment, and anti-retaliation policies and procedures applicable to the Sierra Conservation Center, including all camps and divisions, for the period January 2006 through the present including, but not limited to:

1

    a.  the substance of CDCR's anti-discrimination, anti-harassment, and anti-retaliation policies and procedures;

    b.  training provided to CDCR's employees regarding the substance of its anti-discrimination, anti-harassment, and anti-retaliation policies and procedures;

    c.  policies and procedures regarding investigation of complaints of discrimination, harassment, and/or retaliation; and

    d.  training provided to CDCR's employees regarding the manner in which said investigations are to be conducted.

7. Any and all documents that refer, pertain, or relate to The application, screening, selection and hiring of Plaintiff Raymond Guthrey to Position No. 099-222-9904-005 in 2010.

8. Any and all documents that refer, pertain, or relate to the circumstances under which Plaintiff Raymond Guthrey was terminated from or failed to fill Position No. 099-222-9904-005 in 2010, including but not limited to the refusal to allow Plaintiff to begin block training on May 3, 2010, any and all documentation of the termination of Plaintiff's employment or failure to hire Plaintiff, and any and all internal communications regarding the termination of and/or failure to hire Plaintiff including but not limited to department approval of the action.

9. Any and all documents that refer, pertain, or relate to the application, screening, selection and hiring of Theresa Howell to Position No. 099-222-9904-007 in 2010.

10. Any and all documents that refer, pertain, or relate to the application, screening, selection and hiring of Theresa Howell to Position No. 099-222-9904-005 in 2010.

11. Any and all documents that refer, pertain, or relate to the application, screening, selection, hiring and/or firing of Rafael Mendoza to, for, or from the position of Correctional Counselor I as a Retired Annuitant in 2010 and/or 2011.

12. Any and all documents that refer, pertain, or relate to Plaintiff's job duties while he was employed by Defendant CDCR from January 1, 1999 through December 29, 2008, including but not limited to the nature and description of Plaintiff's job duties and assignments,

2

Plaintiff's performance reviews, and Plaintiff's participation in substance-abuse programs held, administered, provided, or allowed by Defendant CDCR at the Sierra Conservation Center, including all camps and divisions, from January 1, 1999 through the present day.

13. Any and all documents that refer, pertain, or relate to Plaintiff's work performance while employed by Defendant CDCR from January 1, 1999 through December 29, 2008 including, but not limited to:

    a. any disciplinary action taken against or contemplated for Plaintiff at any time during her employment, including, but not limited to, written warnings, verbal counseling and/or reprimands;

    b. the details of any and all criticism and/or negative evaluation or assessment(s) of Plaintiff's work performance and/or attitude including the source(s) thereof (including complaints originating outside of the company as well as within) and all facts upon which the criticism and negative evaluations and/or assessment(s) were based;

    c. any praise and/or positive evaluation or assessment of Plaintiff's work performance and/or attitude including the source(s) thereof and all facts upon which the praise and positive evaluations and/or assessment(s) were based;

    d. the extent to which, during the course of Plaintiff's employment, Plaintiff met Defendant's expectations with respect to her job duties;

    e. all criteria, standards, or other performance metrics used to evaluate Plaintiff's performance.

14. Any and all documents that refer, pertain, or relate to Defendant MICHAEL PATE JR.'s work performance while employed by Defendant CDCR including, but not limited to:

    f. any disciplinary action taken against or contemplated for him at any time during his employment, including, but not limited to, written warnings, verbal counseling, reprimands and/or termination and the reasons therefore;

    g. any and all criticism and/or negative evaluation or assessment(s) of his work performance and/or attitude including the source(s) thereof (including complaints

3

originating outside of the company as well as within) and all facts upon which the criticism and negative evaluations and/or assessment(s) were based;

h. any praise and/or positive evaluation or assessment of his work performance and/or attitude including the source(s) thereof and all facts upon which the praise and positive evaluations and/or assessment(s) were based;

i. whether and to what extent, he met Defendant CDCR's expectations with respect to his job duties;

j. criteria, standards, or other performance metrics used to evaluate his performance.

15. Any and all documents that refer, pertain, or relate to any complaints or concerns (oral or written) made about Defendant MICHAEL PATE, JR. by any employee, inmate, and/or third party from the beginning of his employment with Defendant CDCR to the present, including, but not limited to complaints or concerns about PATE having subjected any employees or inmates to harassment, discrimination, and/or retaliation.

16. Any and all documents that refer, pertain, or relate to the extent any investigations of complaints or concerns (oral or written) that were ever made about MICHAEL PATE, JR., including, but not limited to:

a. the identity of all persons who registered said complaints and/or concerns;

b. all persons interviewed in connection with said investigation;

c. the nature and substance of any and all such interviews;

d. the outcome and/or conclusions reached with respect to any such investigation, and any and all reasons therefore;

e. any discipline received by Defendant PATE or any other employee of defendant as a result of any such complaints or concerns.

17. Any and all documents that refer, pertain, or relate to In-Service Training ("Block Training") programs held at the Sierra Conservation Center, including all camps and divisions, from January 1, 2010 through the present day, including but not limited to

4

administration and/or supervision of the program, content and teaching of classes, and testing and requirements of Block Training attendees.

18. Any and all documents that refer, pertain, or relate to any substance-abuse programs conducted, held, administered, provided, or allowed by Defendant CDCR at the Sierra Conservation Center, including all camps and divisions, from January 1, 1999 through the present day.

19. Any and all documents that refer, pertain, or relate to any religious programs conducted, held, administered, provided, or allowed by Defendant CDCR at the Sierra Conservation Center, including all camps and divisions, from January 1, 1999 the present day.

20. Any and all documents that refer, pertain, or relate to Defendant CDCR's electronic records retention and management policies, procedures, and practices, including but not limited to electronically stored information, e-mail storage and backup systems, and voicemail recording and retention systems.

21. Any and all documents that refer, pertain, or relate to Defendant CDCR's physical records retention and management policies, procedures, and practices, including but not limited to records that reflect personnel files and documentation, policies and procedures manuals, employee and/or Retired Annuitant schedules, religious programs conducted by CDCR personnel or third-party contractors, and inmate substance-abuse programs conducted by CDCR personnel or third-party contractors.

5

# PROOF OF SERVICE BY MAIL

I, TUMARA STOCKEY, declare as follows:

I am over the age of eighteen, not a party to the within cause, and am employed in the City and County of San Francisco. My business address is 351 California Street, Suite 550, San Francisco, California 94104. On June 13, 2012, I served the within documents:

**PLAINTIFF'S FOURTH AMENDED NOTICE OF DEPOSITION OF MICHAEL PATE, JR.**

**AMENDED NOTICE OF DEPOSITION OF PERSON(S) MOST KNOWLEDGEABLE OF DEFENDANT CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION AND REQUEST FOR PRODUCTION OF DOCUMENTS PURSUANT TO FRCP 30(b)(6)**

on the parties in said cause by sending one copy via facsimile to the following number and depositing true copies thereof in a sealed envelope with postage thereon fully prepaid, in the United States mail in San Francisco, California addressed as follows:

> Calif. Attorney General's Office
> Attn: Michael Gowe
> 1515 Clay Street, 20th Floor
> Oakland, CA 94612
> *Fax: 510.622.2121*

I declare under the penalty of perjury of the laws of the State of California that the foregoing is true and correct.

Dated: June 13, 2012

By: _____
TUMARA STOCKEY