1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND GUTHREY, | 1: 10-cv-02177-AWI-BAM |
| Plaintiff, | |
| v. | ORDER ON PLAINTIFF'S MOTION TO COMPEL DISCOVERY; |
| CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, MICHAEL PATE, JR., | ORDER SETTING DEADLINE TO FILE JOINT STATEMENT ADDRESSING ADDITIONAL DISCOVERY; |
| Defendants. | ORDER AMENDING THE SCHEDULING ORDER (Non-Expert deadline: 9/15/2012) |

## I.   INTRODUCTION

Plaintiff Raymond Guthrey ("Plaintiff") brings this employment discrimination action against the California Department of Corrections and Rehabilitation ("CDCR") and Michael Pate, Jr. ("Pate") (CDCR and Pate are collectively referred to as the "Defendants"). (Doc. 2.)

On June 8, 2012, Plaintiff filed a motion to compel responses to Plaintiff's interrogatories and requests for production of documents ("Plaintiff's Motion to Compel"). (Doc. 46.) Pursuant to Local Rule 251, the parties filed a Joint Discovery Statement discussing their positions with respect to Plaintiff's Motion to Compel on June 8, 2012. (Doc. 47.) On June 22, 2012, the Court heard oral argument on Plaintiff's Motion. (Doc. 50.) Counsel Shannon Seibert appeared in person for Plaintiff. Counsel Michael Gowe appeared in person for Defendants. (Doc. 50.) Having considered the arguments presented in the Joint Statement, arguments presented at the June 22, 2012 hearing, as well as the Court's file, the Court issues the following Order.

## II.   FACTUAL BACKGROUND

Plaintiff is a 56-year-old Caucasian male who subscribes to the Ananda Marga faith, which is based on the Hindu religion.  (Pl.'s Second Amended Complaint ("SAC"), ¶ 9, Doc. 23.)  Followers of Ananda Marga believe in allowing the hair on their heads, faces and bodies to grow naturally.  *Id.*  In observance of his faith, Plaintiff maintains a full beard and long hair.  *Id.*

From 1984 until retirement in 2008, Plaintiff worked as a Correctional Counselor at the Sierra Conservation Center, a CDCR facility.  (SAC, ¶ 10.)  During that time, Plaintiff instituted a counseling program at the Sierra Conservation Center in which Ananda monks and nuns provided spiritual instruction to prisoners.  The monks invited by Plaintiff wore turbans upon their heads as they taught principles of yoga and meditation to the prisoners in workshops.  *Id.*

During his employment with Defendant CDCR, Plaintiff was subjected to offensive remarks by Defendant Pate.  (SAC, ¶ 11.)  For example, Plaintiff alleges Pate regularly called Plaintiff "Ragjeesh," and other slurs often directed towards persons of the Muslim faith or Middle Eastern/South Asian ancestry.  *Id.*

In early 2010, Plaintiff applied to participate in CDCR's Retired Annuitant Program as a Correctional Counselor on a contract basis.  (SAC, ¶ 12.)  On April 29, 2010, Pate contacted Plaintiff and stated that CDCR's personnel office had instructed him to extend an offer of employment to Plaintiff.  *Id.*  During the April 29, 2010 conversation, Pate and Plaintiff discussed CDCR's grooming standards.  (SAC, ¶ 14.) Plaintiff was offered employment with CDCR's Sierra Conservation Center for a period of six months, renewable upon expiration of the contract.  *Id.*  Plaintiff accepted the offer of employment and agreed to begin working for CDCR on May 3, 2010.  *Id.*

On May 3, 2010, Plaintiff arrived at the Sierra Conservation Center to begin his position as a Retired Annuitant with CDCR.  Plaintiff was scheduled to attend a week-long training session.  As Plaintiff was entering the training session classroom, Pate "began gesturing wildly and jabbing his finger toward the door behind [Plaintiff] while staring directly at [Plaintiff]."  Pate grabbed Plaintiff by the arm and forced him into the hallway.  Pate physically blocked Plaintiff from entering the classroom and told Plaintiff that "this" was not going to work, telling

2

1   Plaintiff to leave the grounds immediately.  (SAC, ¶¶ 16, 17.)

2       Plaintiff alleges that Pate's actions were motived by his dislike of Plaintiff's religion, as

3   well as his perception of Plaintiff's race and ancestry.  (SAC, ¶ 22.)  Plaintiff further alleges that

4   there exists a culture of discrimination against non-Christians at CDCR's Sierra Conservation

5   Center, and that Plaintiff was discriminated against because of his nonconformance with the

6   majority belief system.

7       Plaintiff's SAC presents eight causes of action: (1) violation of Plaintiff's First

8   Amendment Right to free exercise of religion (alleged against both Defendants); (2) violation of

9   Plaintiff's Fourteenth Amendment right to due process (alleged against both Defendants); (3)

10  violation of Plaintiff Fourteenth Amendment right to equal protection (alleged against both

11  Defendants); (4) religious discrimination pursuant to 42 U.S.C. § 1983 (against Defendant Pate);

12  (5) race discrimination pursuant to 42 U.S.C. § 1981 (against Defendant Pate); (6) religious

13  discrimination pursuant to Title VII, 42 U.S.C. §§ 2000e *et seq.,* (against both Defendants); (7)

14  race discrimination pursuant to Title VII, 42 U.S.C. §§ 2000e *et seq.,* (against both Defendants);

15  and (8) intentional infliction of emotional distress (against Defendant Pate).

16              **III.   SUMMARY OF DISCOVERY DISPUTE[1]**

17      The parties dispute the discoverability and extent of Defendants' production with respect

18  to several categories of information.  The first category consists of seven interrogatories and two

19  requests for production of documents concerning Pate's religious beliefs (hereinafter referred to

20  as "Plaintiff's Religious Discovery.")  The second category consists of four interrogatories and

21  four requests for production seeking information about complaints for religious or racial

22  discrimination filed against CDCR and other employees in the last 10 years (hereinafter referred

23  to as "Prior Discrimination Discovery").

24  _____

25      [1] Defendants, by in large, have failed to respond appropriately to Plaintiff's Motion to Compel in the
parties' Joint Statement. Defendants provide minimal argument and authority opposing the Motion to Compel under

26  relevant discovery principles. Defendants have focused primarily on the merits of Plaintiff's claims, arguing that
Plaintiff should not be entitled to discovery because Plaintiff's claims are frivolous.  The Court, however, does not

27  consider the underlying merits of Plaintiff's claims in evaluating a motion to compel.  *Angel v. North Coast
Couriers, Inc.,* No. 11-cv-01028 JSW (EDL), 2012 WL 380285, at *3 (N.D. Cal., Feb. 6, 2012) ("Defendants

28  believe that the case against Mr. Khalaf is patently frivolous, but have cited no authority that such a belief would
preclude otherwise appropriate discovery . . .")

As to Plaintiff's remaining discovery requests, the parties have failed to properly posture these issues in their Joint Statement, such that the Court could rule on these matters. Accordingly, discussed in greater detail below, the Court will afford the parties the opportunity to address these matters in a subsequent joint statement, and reserve judgment on those discovery requests until that time.

## IV.   DISCUSSION

### A.   Legal Standard

Rule 26(b) of the Federal Rules of Civil Procedure provides that any non-privileged material "that is relevant to any party's claim or defense" is within the scope of discovery. The court may allow discovery of any material "relevant to the subject matter involved in the action," not just the claims or defenses of each party, if there is good cause to do so.  Fed. R. Evid. 401 defines "relevant evidence" as "evidence having any tendency to make existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 402 provides that all relevant evidence is admissible except as otherwise provided by the U.S. Constitution, Act of Congress, or applicable rule of Federal Rules of Evidence.

Relevance requires only that the evidence have "any" tendency to prove or disprove "any" consequential fact.  This test incorporates two separate components: (1)  Logical relevance, meaning the evidence must have some tendency, however slight, to make any fact more or less probable; and (2) Legal Relevance, meaning the evidence must relate to a fact "of consequence" to the case, i.e., will the "fact" that the evidence is offered to establish help in determining some issue in the case?  *See,* Jones & Rosen, Federal Civil Trials and Evidence (2011) Evidence, para. 8:111, p. 8B-2.  If the inference to be drawn from the evidence is the result of speculation or conjecture, the underlying evidence is not relevant.  *See Engstrand v. Pioneer Hi-Bred Int'l*, 946 F.Supp. 1390, 1396 (S.D. Iowa 1996), *aff'd* 112 F.3d 513 (8th Cir. 1997).  "[T]he standard of relevancy is not so liberal as to allow a party to . . . explore matter which does not presently appear germane on the theory that it might conceivably become so." *Food Lion v. United Food & Comm'l Workers Union,* 103 F.3d 1007*,* 1012-1013 (D.C. Cir. 1997) (internal quotes omitted).

A responding party that objects to interrogatories or requests for production of documents is required to state objections with specificity. Fed. R. Civ. P. 33(b)(4), 34(b)(2)(B). If the party requesting discovery is dissatisfied with any of the responses, the party may move to compel further responses by informing the court "which discovery requests are the subject of [the] motion to compel, and, for each disputed response, inform the [c]ourt why the information sought is relevant and why [the opposing party's] objections are not justified." *Ellis v. Cambra*, No. 02-cv-5646 AWI (SMS), 2008 WL 860523, at *4 (E.D. Cal. Mar. 27, 2008); *Brooks v. Alameida*, No. 03-cv-2343 JAM (EFB), 2009 WL 331358 (E.D. Cal. Feb. 10, 2009).

The court must limit discovery if the burden of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2)(C)(iii). "In each instance [of discovery], the determination whether ... information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action." Fed. R. Civ. P. 26 Advisory Committee's note (2000 Amendment).

**B.    Plaintiff's Legal Claims**

Relevant information is ultimately defined by Plaintiff's claims. The Court sets out the proof requirements for each of Plaintiff's claims. In setting out these causes of action, the Court does not opine on the merits of any claim.

**1.    First Cause of Action - First Amendment Violations**

Plaintiff's first cause of action is a First Amendment violation of Plaintiff's right to free exercise of religion. "The Free Exercise Clause of the First Amendment, which has been made applicable to the States by incorporation into the Fourteenth Amendment, provides that 'Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof ....' " *Employment Div., Oregon Dep't of Human Resources v. Smith*, 494 U.S. 872, 876-77, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990) (citing U.S. Const. amend. 1) (internal citation omitted). To establish a violation, plaintiff must demonstrate "a substantial burden on the observation of a central religious belief or practice...." *Hernandez v. Commissioner of Internal Revenue*, 490 U.S. 680, 699, 109 S.Ct. 2136 , 104 L.Ed.2d 766 (1989). Any challenge under the free exercise clause requires plaintiff to demonstrate that the regulation impacts a

central religious belief or practice, one that is "mandated by his faith." *Freeman v. Arparo*, 125 F.3d 732, 736 (9th Cir. 1997).

### 2.   Second Cause of Action - Fourteenth Amendment Violation (Due Process)

Plaintiff's second cause of action is for a violation of Plaintiff's Fourteenth Amendment right to Due Process. The Due Process Clause of the Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1.  The Due Process Clause protects individuals from state action that either "shocks the conscience," *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952) or interferes with rights "implicit in the concept of ordered liberty." *Palko v. Connecticut*, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937).  In order to state a cause of action for deprivation of Due Process, Plaintiff must prove the existence of a liberty interest for which the protection is sought. *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).  The interest must be "the type of atypical, significant deprivation [that] might conceivably create a liberty interest." *Id.* at 486; *see also Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003)

### 3.   Third Cause of Action - Fourteenth Amendment Violation (Equal Protection)

Plaintiff's third cause of action is for a violation of Plaintiff's Fourteenth Amendment right to Equal Protection.  The Equal Protection Clause provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The central purpose of the Equal Protection Clause "is the prevention of official conduct discriminating on the basis of race." *Washington v. Davis*, 426 U.S. 229, 239, 96 S.Ct. 2040, 2047, 48 L.Ed.2d 597 (1976).  Therefore, "whenever the government treats any person unequally because of his or her race, that person has suffered an injury that falls squarely within the language and spirit of the Constitution's guarantee of equal protection." *Adarand Constructors v. Pena*, 515 U.S. 200, 230, 115 S.Ct. 2097, 2114, 132 L.Ed.2d 158 (1995).  A plaintiff asserting a denial of equal protection must allege facts establishing a prima facie case of discrimination. *See United States v. Estrada-Plata*, 57 F.3d 757, 760 (9th Cir.1995). To establish a prima facie case, the plaintiff must allege facts showing that the defendants acted with the intent to discriminate against him based on his membership in a protected class, *see Lee v. City of Los Angeles*, 250

F.3d 668, 686 (9th Cir. 2001), or that he was treated differently from persons similarly situated, *see Cleburne*, 473 U.S. at 439.

### 4.      Fourth Cause of Action - Religious Discrimination Under 42 U.S.C. § 1983

Plaintiff's fourth cause of action under 42 U.S.C. § 1983 is predicated on a deprivation of Plaintiff's right to free exercise of religion, due process and equal protection of the law.  In order to state a claim under 42 U.S.C. § 1983, a complaint must allege that (l) the conduct complained of was committed by a person acting under color of state law and that (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), overruled on other grounds, *Daniels v. Williams*, 474 U.S. 327 (1986).  Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present. *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985), cert. denied, 478 U.S. 1020 (1986).

### 5.      Fifth Cause of Action - Race Discrimination Under 42 U.S.C. § 1981

Plaintiff's fifth cause of action is one for race discrimination under 42 U.S.C. § 1981. Federal law prohibits certain types of discrimination in employment. 42 U.S.C. § 1981.  It further provides a claim to those who are exposed to discrimination in employment.  In order to state a claim under 42 U.S.C. 1981, a plaintiff must show intentional or purposeful discrimination based on race in the workplace. *General Building Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 387-91, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982).

### 6.      Sixth Cause of Action - Religious Discrimination Under Title VII

Plaintiff's sixth cause of action is for religious discrimination pursuant to Title VII, 42 U.S.C. §§ 2000e *et seq.*  Title VII makes it unlawful for an employer "to discharge any individual ... because of such individual's ... religion[.]" 42 U.S.C. § 2000e-2(a)(1). "The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's ... religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j);  *Peterson v. Hewlett-Packard Co.*  358 F.3d 599, 602 -603 (9th Cir. 2004).

A claim for religious discrimination under Title VII can be asserted under several different theories, including disparate treatment and failure to accommodate. *Peterson v. Hewlett-Packard Co.* 358 F.3d 599, 603 (9th Cir. 2004). Under disparate treatment, plaintiff has the burden of establishing a prima facie case by showing that (1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. *Id.; Lyons v. England*, 307 F.3d 1092, 1112-14 (9th Cir. 2002).

To establish religious discrimination on the basis of a failure-to-accommodate theory, Plaintiff must first set forth a prima facie case that (1) he had a bona fide religious belief, the practice of which conflicts with an employment duty; (2) he informed his employer of the belief and conflict; and (3) the employer discharged, threatened, or otherwise subjected him to an adverse employment action because of his inability to fulfill the job requirement. *Peterson v. Hewlett-Packard Co.* 358 F.3d 599, 603 (9th Cir. 2004); *Heller v. EBB Auto. Co.*, 8 F.3d 1433, 1438 (9th Cir.1993). If Plaintiff makes out a prima facie failure-to-accommodate case, the burden then shifts to the defendant to show that it "initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." *Peterson v. Hewlett-Packard Co.* 358 F.3d 599, 603 (9th Cir. 2004).

### 7.   Seventh Cause of Action - Race Discrimination Under Title VII

Plaintiff's seventh cause of action is for race discrimination pursuant to Title VII, 42 U.S.C. §§ 2000e *et seq*.[2]   Title VII makes it "an unlawful employment practice for an employer ...

---

[2] Plaintiff's Title VII claims for race discrimination are based on a "perception of race" theory. Plaintiff acknowledges he is a Caucasian, and therefore, he is not a member of a protected class.  Plaintiff's race discrimination theory, i.e., discrimination based on the erroneous perception that Plaintiff was of middle eastern ancestry, is not a cognizable theory under Title VII. *See, e.g., Burrage v. FedEx*, No. 10-cv-2755 SL, 2012 WL 1068794 at *5-8 (N.D. Ohio, Mar. 29, 2012) (Title VII protects only those who are actually in a protected class, and not those who are perceived to be in a protected class. . . . [I]n contradistinction to the Americans with Disabilities Act ("ADA") or the Rehabilitation Act, Title VII contains no provision for those wrongly perceived to be of a certain national origin. . . . [I]f Congress had intended Title VII to protect persons from discrimination based on perceived characteristics, it would have explicitly done so by using language similar to that found in the ADA or the

to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *see also* Cal. Gov't Code § 12940(a) ("It is an unlawful employment practice . . . [f]or an employer, because of the race . . . of any person . . . to discriminate against the person in compensation or in terms, conditions, or privileges of employment.")  A plaintiff may show violation of Title VII by proving disparate treatment or disparate impact, or by proving the existence of a hostile work environment.  *Sischo-Nownejah v. Merced Community College Dist.*, 934 F.2d 1104, 1109 (9th Cir. 1991).

A plaintiff may establish a prima facie case of discrimination by introducing evidence that "give[s] rise to an inference of unlawful discrimination."  *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1094 (1981); *Sischo-Nownejah*, 934 F.2d at 1109.  The evidence may be either direct or circumstantial, and the amount that must be produced to create a prima facie case is "very little."  To make out a prima facie case of intentional discrimination based on indirect or circumstantial evidence, the plaintiff bears the initial burden of showing that (1) he is a member of a protected class; (2) he was qualified for the position in question; (3) he was denied the position despite his qualifications; and (4) the position continued to exist, or a similarly situated employee was hired or promoted into the position. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817.

**8.      Eighth Cause of Action - Intentional Infliction of Emotional Distress**

Plaintiff's eighth and final cause of action is for intentional infliction of emotional distress. "The elements of a prima facie case of intentional infliction of emotional distress consist

---

Rehabilitation Act.); *Butler v. Potter,* 345 F.Supp. 2d 844, 850 (E.D. Tenn. 2004) (noting Title VII says nothing about protection of persons perceived as belonging to a protected class); *El v. Max Daetwyler Corp.*, No. 09-cv-415 MOC, 2011 WL 1769805 *at 6 (W.D. N.C. 2011) ("Congress has not enacted laws that would make adverse employment actions based on someone being perceived as having a religious affiliation, be it Catholic, Muslim, or any other religion, actionable under Title VII"); *Adler v. Evanston Nw. Healthcare Corp.*, No. 07-cv-4203 MFK, 2008 WL 5272455, at *3 (N.D. Ill. Dec.16, 2008) ("Title VII contains no provision for those wrongly perceived to be of a certain national origin."); *Lewis v. N. Gen. Hosp.*, 502 F. Supp.2d 390, 401 (S.D.N.Y.2007) ("[T]he protections of Title VII do not extend to persons who are merely 'perceived' to belong to a protected class.").  The Court also notes that, at oral argument, Plaintiff did not argue he was mistakenly perceived as middle-eastern, but rather, that Plaintiff was mistakenly perceived as Muslim.  "Muslim," however, does not represent race, ancestry or national origin.  Rather, a Muslim is an individual who is a believer in or adherent of the Islamic faith.

of: (1) extreme and outrageous conduct by the defendant with the intent to cause, or reckless disregard for the probability of causing, emotional distress; (2)[the] suffering of severe or extreme emotional distress by plaintiff; and (3) [a finding that] plaintiff's emotional distress is actually and proximately the result of defendant's outrageous conduct." *See Wilkens v. National Broadcasting Co.*, 71 Cal.App.4th 1066, 1087, 84 Cal.Rptr.2d 329 (1999); *Symonds v. Mercury Savings and Loan Ass'n.,* 225 Cal.App.3d 1458, 1468, 275 Cal.Rptr. 871 (1990) (same).  The defendant's conduct "must ... be directed at the plaintiff or [take place] in the presence of the plaintiff." *Smith v. Pust*, 19 Cal.App.4th 263, 274, 23 Cal.Rptr.2d 364 (1993).

## C.   Plaintiff's Religious Discovery

Plaintiff propounded the following discovery concerning Defendant Pate's religious beliefs:

**INTERROGATORY NO. 1:**
Do you believe that human beings have souls?

**INTERROGATORY NO. 2:**
Do you subscribe to a religious belief system?
For the purposes of this interrogatory, "subscribe" means believe in, adhere to, follow, believe to be the truth, think to be the truth, and/or consider to be legitimate; "religious belief system" means any formal or informal, traditional or nontraditional organization that teaches, believes in, supports, or otherwise advocates the existence of a supernatural entity.

**INTERROGATORY NO. 3:**
If YOUR answer to Interrogatory No. 2 is in the affirmative, please describe the religious belief system to which you subscribe.
For the purposes of this interrogatory, "subscribe" means believe in, adhere to, follow, believe to be the truth, think to be the truth, and/or consider to be legitimate; "religious belief system" means any formal or informal, traditional or nontraditional organization that teaches, believes in, supports, or otherwise advocates the existence of a supernatural entity.

**INTERROGATORY NO. 4:**
Have YOU attended any service at any religious institution in the previous five years?
For the purposes of this interrogatory, the definition of "service" includes, but is not limited to, an event held or attended for the purpose of demonstrating, pledging, exhibiting, feeling, expressing, and/or commemorating YOUR belief in, commitment to, desire for understanding of,   and/or adherence to the principles of a religious belief system; "religious belief system" means any formal or informal, traditional or nontraditional organization that teaches, believes in, supports, or otherwise advocates the existence of a supernatural entity; "religious institution" includes, but is not limited to, a church, synagogue, mosque, temple, house, office, or any other physical place where YOU have been present for the purpose of worshiping, expressing belief in, understanding, discussing, or celebrating any

entity that is not part of our physical world.

**INTERROGATORY NO. 5:**
If YOUR answer to Interrogatory No. 4 is in the affirmative, please provide the time, date, and location, and facility name of each service that YOU have attended in the previous five years.

**INTERROGATORY NO. 6:**
Have YOU discussed YOUR thoughts or beliefs about religion or spirituality with any other natural person in the previous five years?
For the purposes of this interrogatory, "religion or spirituality" means any formal or informal, traditional or nontraditional belief system that accepts as truth, teaches, or otherwise advocates the existence of a supernatural entity.

**INTERROGATORY NO. 7:**
If the answer to Interrogatory No. 6 is in the affirmative, please provide the time, date, location, and identity of the individual with whom YOU spoke for each conversation YOU have had in the previous five years.

**REQUEST FOR PRODUCTION NO. 6:**
If you responded in the affirmative to Interrogatory No. 2, all DOCUMENTS that REFER OR RELATE to the religious belief system identified in Interrogatory No. 3.

**REQUEST FOR PRODUCTION NO. 7:**
If you responded in the affirmative to Interrogatory No. 4, all DOCUMENTS that REFER OR RELATE to each service YOU have attended at a religious institution in the previous five years.

Defendants objected on various grounds, primarily that the information requested is not relevant, the information is protected by Pate's First Amendment rights, and that the inquiries are overly broad, vague, and ambiguous.

**1.     Relevance Analysis**

Plaintiff argues that the information is relevant because "[e]vidence regarding Defendant's religion is likely to lead to information that will allow Plaintiff to determine and independently verify such matters as the level of religious and even racial intolerance (or intolerance) Defendant Pate may harbor in an effort to shed light upon his motivation when carrying out the undisputed actions against Plaintiff."

The Court addresses the relevance and over-breadth of Plaintiff's Religious Discovery together. In the case at hand, Plaintiff has not provided convincing support that the requested documents and information are relevant, i.e. will prove or disprove a disputed fact or will help determine an issue in the case. *See Anderson v. Nationwide Security, Inc.,* No. 203547, 2000 WL

1   33406758, at *2 (Mich. Ct. App., Sept. 29, 2000) ("In any event, we discern no abuse of the trial

2   court's discretion because [defendant's] religious beliefs are not relevant to plaintiff's claim of

3   religious discrimination.")  While Pate's and CDCR's motivation for preventing Plaintiff from

4   working is relevant, Plaintiff has failed to demonstrate how inquiries into Pate's religious beliefs

5   are reasonably calculated to lead to admissible evidence concerning these motivations.  Plaintiff

6   has not presented the Court with any argument or authority indicating that subscribing to any

7   religion or religious beliefs necessarily indicates that person may foster animosity or contempt

8   for other religions or cultures.  Rather, Plaintiff offers the bald assertion that information

9   regarding Pate's faith - which, based on Plaintiff's SAC, is some version of Christianity - will

10  somehow lead to evidence that Pate's discriminatory treatment of Plaintiff was a result of his

11  own religious views.  The Court declines to find that membership or belief in a religion is

12  relevant to prove or disprove religious intolerance.

13      Moreover, to the extent that *any* inquiry into Defendant Pate's religious beliefs meets

14  even a liberal threshold of relevance, Plaintiff's Religious Discovery is impermissibly

15  overbroad.[3]  Membership in any religion entails a vast array of beliefs, values, practices and

16  ideas.  *See Africa v. Pennsylvania*, 662 F.2d 1025 (3rd Cir. 1981), ("a religion addresses

17  fundamental and ultimate questions having to do with deep and imponderable matters. . . a

18  religion is comprehensive in nature.")  Moreover, people of virtually any faith will adhere to

19  certain tenants of their faiths in varying degrees, depending on their own personal take on

20  morality and the human existence.

21      Plaintiff has not limited his requests to aspects of Pate's faith that may influence his

22  views on other cultures or religions.[4]  Rather, Plaintiff has requested information and documents

23

24      [3] The Court notes that on April 16, 2012, the Court held an informal telephonic conference to discuss these

25  exact discovery requests. (Doc. 42.)  The Court informed Plaintiff that while these Religious discovery requests did
    not appear to be relevant, to the extent they were, they were clearly overbroad, and instructed Plaintiff to narrowly

26  tailor these requests in subsequent meet and confer efforts.  Plaintiff, apparently, has not narrowed the scope of these
    requests to seek information that would realistically apply to his claims.

27      [4] The Court makes no opinion on whether the Court would compel this hypothetically narrower inquiry into

28  Pate's religious beliefs, i.e., had Plaintiff limited his inquiries into Pate's religious views to those that may influence
    his views on other cultures or religions.  This sentiment is expressed simply to point out that Plaintiff made no effort

concerning every conceivable practice, belief, thought, view and even conversation Plaintiff has

had in the last five years that arguably concern his faith.  Considering the cornucopia of ideas an

individual may derive from their faith, it is too overbroad to request the entire universe of Pate's

religious views, merely in the hope that a single relevant thought may be plucked from what is

essentially a limitless chiasm of intimate thoughts and beliefs.  Therefore, the Court denies

Plaintiff's Motion to Compel responses to interrogatories and requests for production of

documents seeking information concerning Pate's religion as irrelevant and overbroad.

### 2.      Defendant's Right to Privacy and First Amendment Objections

Even if the Court found Plaintiff's Religious Discovery to be relevant and not overbroad,

the Court would decline to compel this information and would sustain Defendant's privacy

objections under Pate's right to privacy and the First Amendment.  Federal Courts ordinarily

recognize a constitutionally-based right of privacy that can be raised in response to discovery

requests. *See Breed v. United States Dist. Ct. for Northern District*, 542 F.2d 1114, 1116 (9th

Cir.1976) (balancing the invasion of minor's privacy rights against the court's need for ward

files); *Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1497 (10th Cir.1992), cert. den. 507

U.S. 910, 113 S.Ct. 1255, 122 L.Ed.2d 654 (1993) (denying discovery of names of participants in

a medical study due to privacy interests of the individual participants).

Unlike a privilege, the right of privacy is not an absolute bar to discovery.  Rather, courts

balance the need for the information against the claimed privacy right.  *Ragge v. MCA/Universal

Studios,* 165 F.R.D 601, 604 (C.D. Cal. 1995) (right of privacy may be invaded for litigation

purposes); *see also, Cook v. Yellow Freight System, Inc.,* 132 F.R.D. 548 (E.D. Cal. 1990),

overruled on other grounds by *Jaffee v. Redmond,* 518 U.S. 1, 116 S. Ct. 1923 (1996) ("the

initiation of a law suit does not, by itself, grant plaintiffs the right to rummage unnecessarily and

unchecked through the private affairs of anyone they choose.  A balance must be struck.")  "To

evaluate privacy objections under either federal or state law, the Court must balance the party's

need for the information against the individual's privacy right in [the information]." *Tierno v.*

---

to tailor his requests to information that could remotely be relevant to his claims.

1  *Rite Aid Corp.*, No. 05-cv-02520 THE, 2008 WL 3287035, *3 (N.D. Cal. July 31, 2008); *see also*

2  *Verma v. American Express*, No.  08-cv-2702 SI, 2009 WL 1468720, at *1 (N.D. Cal. May 26,

3  2009) (stating that "[a] plaintiff's right to privacy under California and federal law ... must be

4  balanced against the right of civil litigants to discover relevant facts").

5       Furthermore, an individual has First Amendment protection in his religious beliefs, as

6  well as his religious associations*. See Roberts v. U.S. Jaycees*, 468 U.S. 609, 622, 104 S.Ct.

7  3244, 82 L.Ed.2d 462 (1984) ("An individual's freedom to speak, *to worship,* and to petition the

8  government for the redress of grievances could not be vigorously protected from interference by

9  the State unless a correlative freedom to engage in group effort toward those ends were not also

10  guaranteed.") (emphasis added); *Buckley v. Valeo*, 424 U.S. 1, 64, 96 S.Ct. 612 (1976) ("[W]e

11  have repeatedly found that compelled disclosure, in itself, can seriously infringe on privacy of

12  association and belief guaranteed by the First Amendment").  "A party who objects to a

13  discovery request as an infringement of the party's First Amendment rights is in essence asserting

14  a First Amendment privilege." *Perry v. Schwarzenegger*, 591 F3d 1126, 1140 (9th Cir. 2009);

15  *See also, Black Panther Party v. Smith,* 661 F.2d 1243, 1264 (D.C. Cir.1981), cert. granted and

16  vacated as moot, 458 U.S. 1118, 102 S.Ct. 3505, 73 L.Ed.2d 1381 (1982); *see also* Fed. R. Civ.

17  P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to

18  any party's claim or defense[.]") (emphasis added).

19       A party asserting the First Amendment privilege must make a prima facie showing that

20  enforcement of the discovery requested will result in consequences which objectively suggest a

21  "chilling" impact on free speech or associational rights.  *Perry v. Schwarzenegger*, 591 F.3d

22  1126, 1140 (9th Cir. 2009).  The burden then shifts to the party seeking discovery to demonstrate

23  an interest in obtaining the disclosures sufficient to outweigh the deterrent effect on the First

24  Amendment right.  *Perry v. Schwarzenegger*, 591 F.3d at1140.  "Importantly, the party seeking

25  the discovery must show that the information sought is highly relevant to the claims or defenses

26  in the litigation—a more demanding standard of relevance than that under FRCP 26(b)(1)."  *Id.*

27  at 1140-41 ("The request must also be carefully tailored to avoid unnecessary interference with

28  protected activities, and the information must be otherwise unavailable.")

Plaintiff argues that "[w]ithout inquiry into the defendants' beliefs and practices and whether those beliefs and practices advocate for the discrimination against followers of other faiths, Plaintiff's efforts to prove the defendant's motivation will be unfairly hobbled." At oral argument, Plaintiff argued this information is needed as circumstantial evidence of Pate's discriminatory intent. In other words, Plaintiff suggests Pate's membership to a particular place of worship or adherence to a particular faith, where its members, leaders or dogmatic teachings may advance animosity towards other cultures, is circumstantial evidence of Pate's discriminatory treatment of Plaintiff.

Plaintiff cites several cases for the proposition that religious beliefs may be discovered. Each case, however, is irrelevant to the issue of whether a defendant in a religious discrimination action can be compelled to disclose all of his religious views. Further, these cases do not address the scope of discovery, where here, a five year history of every event, conversation or document arguably associated with his religion is sought. For example, Plaintiff cites *United States v. Aguilar,* 883 F.2d 662, 703 (9th Cir. 1989), which is a criminal case holding that a defendant's First Amendment freedom of religious associations rights were not violated when government informants infiltrated a scheme to smuggle illegal immigrants into the United States using churches as sanctuaries. *See also, United States v. Oaks,* 527 F.2d 937, 941 (9th Cir. 1975) (criminal case where the court held that surveillance of a "tax rebellion group" did not violate the First Amendment because "the meetings were open to the public"); *United States v. Harris,* 347 U.S. 612, 626 (1954) (upholding statute requiring lobbying disclosures); *Buckley v. Valeo,* 424 U.S. 1, 82 (1976) (upholding campaign finance disclosures); *University of Pennsylvania v. EEOC,* 493 U.S. 182, 193 (1990) (requiring disclosure of peer review materials in a race and gender discrimination lawsuit). Each of these cases involved inquiries into objective, publically observable information and activities having nothing to do with undisclosed religious beliefs or privately held religious associations.

Defendant's First Amendment rights and his right to privacy in his religious beliefs and practices over the past five years preclude the discovery sought by Plaintiff. Even if not outright precluded, the Court, in balancing the need against the right, finds Pate's rights in his religious beliefs, views and practices substantially outweigh any need Plaintiff may have for the information. Stated above, the Court rejects Plaintiff's argument that by virtue of Pate's membership in a particular religion, Pate is predisposed to discriminate against people of other faiths or cultures. Generic information concerning Pate's religion and his place of worship, and drawing stereotypical inferences therefrom, is not relevant evidence tending to prove Plaintiff's discrimination claims.

At oral argument, Plaintiff argued that Defendant's "objective, publically observable" activities, such as the church he attended and dates of attendance, are discoverable. To the contrary, Pate has a substantial privacy interest in his subjective religious views, as well as the identity of the individuals he shares those views with - whether in a place of worship or in casual conservation. *See, e.g., NAACP*, 357 U.S. at 461-64, 78 S.Ct. 1163 (prohibiting the compelled disclosure of the NAACP membership lists); *Bates v. City of Little Rock*, 361 U.S. 516, 525-27, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960) (same); *DeGregory v. Attorney Gen*., 383 U.S. 825, 828-30, 86 S.Ct. 1148, 16 L.Ed.2d 292 (1966) (prohibiting the state from compelling defendant to discuss his association with the Communist Party). Unlike Plaintiff, Pate has not put his religious views at issue in this case. Neither Plaintiff, nor this Court, has located a single case stating that under similar circumstances, Plaintiff would be entitled to Pate's intimate religious views and practices.

Moreover, if this Court were to become a "sword" of Title VII plaintiffs used to gain access to unfettered inquisitions into an individual's most private and intimate religious views, a "chilling" impact on religious associational rights would result. Plaintiff asks this Court to compel disclosure so that the information may be used to attain monetary damages for such religious beliefs. Such circumstances would substantially burden both the individual's and the group's ability and inclination to freely pursue their religious beliefs and practices. "Fundamental to the conception of religious liberty protected by the Religion Clauses is the idea that religious beliefs are a matter of voluntary choice by individuals and their associations, and that each sect is

entitled to flourish according to the zeal of its adherents and the appeal of its dogma." *McDaniel v. Paty,* 435 U.S. 618, 98 S. Ct. 1322 (1978), citing *Zorach v. Clauson*, 343 U.S. 306, 313, 72 S.Ct. 679, 684, 96 L.Ed. 954 (1952).  If Title VII defendants could be compelled to disclose their subjective religious beliefs and religious associations, a chilling impact on an individual's ability to freely worship in public would result.  "Government may not interfere with efforts to proselyte or worship in public places." *Kunz v. New York*, 340 U.S. 290, 71 S.Ct. 312, 95 L.Ed. 280 (1951)

As discussed above, *supra* Section IV.C.1, the broad scope of requests such as Pate's religious beliefs, the location of Pate's place of worship and individuals with which Pate discussed his faith, and whether Defendant Pate believes "human beings have souls," are irrelevant to Plaintiff's discrimination claims.  Accordingly, the Court finds that balancing Pate's privacy interest and First Amendment protection in his religious beliefs with Plaintiff's need for this information weighs heavily in favor of protecting Pate's interests.

Accordingly, Court rules on Plaintiff's Religious Discovery Requests as follows:

**INTERROGATORY NO. 1:** Denied.

**INTERROGATORY NO. 2:** Denied.

**INTERROGATORY NO. 3:** Denied.

**INTERROGATORY NO. 4:** Denied.

**INTERROGATORY NO. 5:** Denied.

**INTERROGATORY NO. 6:** Denied.

**INTERROGATORY NO. 7:** Denied.

**REQUEST FOR PRODUCTION NO. 6:** Denied.

**REQUEST FOR PRODUCTION NO. 7:** Denied.

**D.     Prior Discrimination Discovery**

Plaintiff seeks to compel responses to the following interrogatories and requests for production of documents:

**INTERROGATORY NO. 13:**
Has any formal or informal complaint of religious discrimination been made by any of YOUR current or former employees against YOU in the last 10 years?

**INTERROGATORY NO. 14:**
If the answer to Interrogatory No. 13 is in the affirmative, describe each such complaint in detail (including the dates of the complaint, the dates of the alleged incidents of race discrimination, a statement of the allegations, the names and job titles of the individuals accused, how the complaint was handled, and how the complaint was resolved).

**INTERROGATORY NO. 15:**
Has any formal or informal complaint of race discrimination been made by any of YOUR current or former employees against YOU in the last 10 years?

**INTERROGATORY NO. 16:**
If the answer to Interrogatory No. 15 is in the affirmative, describe each such complaint in detail (including the dates of the complaint, the dates of the alleged incidents of race discrimination, a statement of the allegations, the names and job titles of the individuals accused, how the complaint was handled, and how the complaint was resolved).

**INTERROGATORY NO. 17:**
Please identify (by full name, job title, last-known address, and telephone number) every employee or independent contractor who has requested any accommodation from YOU in the past ten years based upon the employee's religious beliefs or practices.

**INTERROGATORY NO. 18:**
For each employee or independent contractor identified in Interrogatory No. 17, please describe the circumstances surrounding each such request for accommodation in detail (i.e., the date the request was made, the religious belief the request was based upon, the action or omission that was requested, and whether the request was granted or denied).

**REQUEST FOR PRODUCTION NO. 16:**
To the extent not duplicative of other Requests, all DOCUMENTS that REFER OR RELATE to any allegation of discrimination or harassment made against the California Department of Corrections and Rehabilitation that was by any California Department of Corrections and Rehabilitation employee between January 1, 2000 and the present day.

**REQUEST FOR PRODUCTION NO. 17:**
To the extent not duplicative of other Requests, all DOCUMENTS that REFER OR RELATE to any allegation of discrimination or harassment made between January 1, 2000 and the present day by any employee assigned to work at the Sierra Conservation against any other employee assigned to work at the Sierra Conservation Center.

**REQUEST FOR PRODUCTION NO. 26:**
For each individual identified in Interrogatory No. 17, all DOCUMENTS that REFER OR RELATE to the request for religious accommodation that was made by the individual.

**REQUEST FOR PRODUCTION NO. 27:**
For each individual identified in Interrogatory No. 17, all DOCUMENTS that REFER OR RELATE to the individual's employment history with YOU, including all employment applications and records of interviews, pay records,

work performance and work evaluations, records of disciplinary action taken or requested, attendance records, assignments, promotions, demotions, grievances and disposition, and supervisors' remarks contained within the employee's personnel file.

Defendant has generally objected to this discovery as overbroad, unduly burdensome, subject to the official information privilege, protected by third party privacy rights, and irrelevant. Plaintiff argues that the information is relevant because Plaintiff has alleged a culture of racial and religious discrimination at CDCR and that, in order to establish that culture exists, Plaintiff requires evidence of pattern or practice discrimination.

As a preliminary matter, while Plaintiff's discovery asks for an array of racial and religious discrimination complaints filed through CDCR, Plaintiff's Complaint only alleges a pattern and/or practice of discrimination at the Sierra Conservation location. *See,* Pl.'s SAC ¶¶ 23-25.  For this reason, alone, Plaintiff's requests are overbroad.[5]

Generally, the information Plaintiff seeks is relevant under Rule 26.  It is in Plaintiff's "demonstration of pretext that other complaints of discrimination become relevant."  *Heyne v. Caruso*, 69 F.3d 1475, 1480 (9th Cir.1995) (evidence of sexual harassment of other employees was relevant to rebut employer's proffered reason for terminating plaintiff); *Estes v. Dick Smith Ford Inc.*, 856 F.2d 1097, 1103 (8th Cir.1988) ("It is difficult to say that a background of discrimination is not relevant to proving a particular instance."); *Lyoch v. Anheuser–Busch Companies, Inc.*, 164 F.R.D. 62, 70 (E.D.Mo.1995) (evidence of a pattern and practice of discrimination is relevant to an individual claim).  Accordingly, discovery of prior complaints of discrimination is permitted in order to prove that the reasons articulated for an adverse employment action are a pretext for discrimination. *See Zahorik v. Cornell University,* 98 F.R.D. 27, 31 (N.D.N.Y.1983) (in a Title VII case, plaintiffs were entitled to discovery of prior instances of sex discrimination); *Kresefky v. Panasonic Communications and Systems Co.,* 169 F.R.D. 54, 67 (D.N.J.1996) (Magistrate Judge did not abuse discretion in permitting limited discovery regarding prior complaints of discrimination).

---

[5] At oral argument, the parties informed the Court they narrowed the requests to the Sierra Conservation Center.

The Eighth Circuit's rationale on this issue is persuasive. *Estes*, 856 F.2d at 1103. In *Estes*, the court acknowledged that Title VII plaintiffs will often experience difficulty in rebutting with direct evidence an employer's account of its own motives for terminating or rejecting an employee, because "[d]efendants of even minimal sophistication will neither admit discriminatory animus nor leave a paper trial demonstrating it...." *Id*. (quoting *Riordan v. Kempiners*, 831 F.2d 690, 697–698 (7th Cir.1987)). Therefore, the court concluded that because there is no direct evidence available to prove discrimination, circumstantial proof may be critical for the jury's assessment of whether a given employer was more likely than not to have acted from an unlawful motive. *Id.; Hollander v. American Cyanamid Co.*, 895 F.2d 80, 85 (2nd Cir.1990) ("[D]isparate treatment plaintiffs often must build their cases from pieces of circumstantial evidence which cumulatively undercut the credibility of the various explanations offered by the employer.").

Defendants argue that past discrimination claims against different supervisors are not relevant, citing *Moore v. Donahoe,* No. 10-35976, 2011 WL 600709 (9th Cir., Dec. 1, 2011) (*Moore II*). *Moore II* found that "the district court did not abuse its discretion by excluding evidence [at trial] of other USPS employees' observations regarding race discrimination [because]. . . the USPS employees were not similarly situated individuals." *Moore II,* however, is distinguishable from the facts of this case. Notably, *Moore* dealt with exclusion of evidence at trial under Fed. R. Evid. 401. Whether evidence of past discrimination against different supervisors is admissible at trial is a different standard of decision than whether evidence is relevant under Fed. R. Civ. P. 26.

Furthermore, the lower court in *Moore* noted the Supreme Court's opinion in *Sprint/United Mgmt. Co. v. Mendelsohn,* 522 U.S. 379, 387 (2008), stating that "[i]n the context of an employment discrimination case in which the plaintiff offered testimony from other employees about discriminatory behavior engaged in by supervisors who played no part in the adverse employment action challenged by the plaintiff, the Supreme Court recently held that the application of a per se rule excluding such evidence by a trial court constitutes an abuse of discretion." *Moore v. Potter,* 09-cv-746-AC, 2010 WL 3945221 (D. Or. Oct. 6, 2010) (*Moore I*).

*Moore I* continued:

> *Mendelsohn* makes clear that district courts faced with other-supervisor discrimination evidence must in each instance consider the type of discrimination, the proximity of the discrimination to the events of the case at hand, and the similarity—or lack thereof—between the proffered evidence and the allegations under review.

*Id.* Accordingly, *Moore* does not preclude discovery of past instances of discrimination against different supervisors. Rather, *Moore* demonstrates that the admissibility of this type of evidence at trial will depend on various factors pertaining to relevance under Fed. R. Evid. 401. Neither *Moore I*, nor *Moore II*, however, precludes the discoverability of this information under Rule 26.

Defendant's privacy concerns regarding the identify of the individuals involved in the complaints, however, are well-taken. Federal Courts ordinarily recognize a constitutionally-based right of privacy that can be raised in response to discovery requests.[6] *See Breed v. United States Dist. Ct. for Northern District*, 542 F.2d 1114, 1116 (9th Cir.1976) (balancing the invasion of minor's privacy rights against the court's need for ward files); *Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1497 (10th Cir.1992), cert. den. 507 U.S. 910, 113 S.Ct. 1255, 122 L.Ed.2d 654 (1993) (denying discovery of names of participants in a medical study due to privacy interests of the individual participants). "To evaluate privacy objections under either federal or state law, the Court must balance the party's need for the information against the individual's privacy right in [the information]." *Tierno v. Rite Aid Corp*., No. 05-cv-02520 THE, 2008 WL 3287035, *3 (N.D. Cal. July 31, 2008); *Ragge v. MCA/Universal Studios,* 165 F.R.D

---

[6] Even where a protective order is in place - as is the case here (Doc. 42) - protecting the identities of third parties is often warranted. In cases involving employee complaints or information implicating a third party's privacy rights, redaction is necessary  *See, e.g., Delanda v. County of Fresno,* 2012 WL 201727 (E.D. Cal. 2012) ("Redaction of the names of any complaining third party is appropriate. To the extent that the identity of the complaining party can be nevertheless ascertained through details of the report, the stipulated protective order provides adequate protection of the privacy interests involved by limiting disclosure of the information "to the parties, their counsel of record and their legal staff, and the finder of fact at the time of trial subject to the Court's ruling on in limine motions and objections of counsel." The Court finds that production under these circumstances strikes a balance between the privacy rights implicated and Plaintiff's interest in a fair resolution of the lawsuit."); *Hernandez v. City of Napa,* 2010 WL 3001369 (N.D. Cal. 2010) ("To the extent that the privacy interests of third parties are implicated, the County of Napa shall take care to redact all identifying information of third parties from the documents and the documents will be governed by a protective order."); *Keith H. V. Long Beach Unified School Dist.,* 228 F.R.D. 652 (C.D. Cal. 2005) ("Coupled with a protective order, it is sufficient for defendants to redact each student's name, Social Security number, date of birth, address, and telephone number, as well as the student's parent's or guardian's name, address, telephone number, and Social Security number.")

601, 604 (C.D. Cal. 1995) (courts balance the need for the information against the claimed privacy right.)

Balancing Plaintiff's need for information relating to past instances of discrimination at the Sierra Conservation Center with the privacy interests of those individuals involved in the complaints, the Court finds that Plaintiff is entitled to information concerning the existence of these complaints, however, not identifying information for the parties involved. Requiring identification of the complainants could have a chilling effect on future complaints, because this information would reveal confidential religious information of complaining employees, in addition to other potentially sensitive information of complaining employees. Accordingly, the Court will compel information concerning the existence of previous religious discrimination complaints, however, the Court will instruct Defendants to omit identifying information.

The Court will further limit Plaintiff's Past Discrimination Complaint Discovery in the following ways: (1) the Court will not compel past discrimination concerning past instances of race discrimination. As Plaintiff is not a member of a protected class, can not identify a comparable "race," and can not assert a "perceived race discrimination" claim, the Court will not compel discovery concerning these claims; (2) the Court finds that the ten-year time frame for which Plaintiff seeks this information is irrelevant, overbroad and unduly burdensome. To the extent to Court grants Plaintiff's Motion to Compel, the Court is limiting the scope of this information to the five years prior to the date of the filing of Plaintiff's complaint (November 19, 2010).

Accordingly, Court rules on Plaintiff's Prior Discrimination Discovery as follows:

**INTERROGATORY NO. 13:** Answered.

**INTERROGATORY NO. 14:** Granted in part; denied in part. Defendants shall respond to Plaintiff's Interrogatory No. 14. In so responding, Defendants shall provide the following information: For each previous complaint of religious discrimination at CDCR's Sierra Conservation Center, since November 19, 2005, Defendant shall provide a description of the complaint (including the dates of the complaint, the dates of the alleged incidents of religious discrimination, the job

titles of the individuals involved, a statement of the allegations, how the complaint was handled, and how the complaint was resolved).  Defendant shall not provide the names of the individuals involved.

**INTERROGATORY NO. 15:** Answered.

**INTERROGATORY NO. 16:** Denied.

**INTERROGATORY NO. 17:** Denied.

**INTERROGATORY NO. 18:** Granted in part; denied in part.  Defendants shall respond to Plaintiff's Interrogatory No. 18.  In so responding, Defendants shall provide the following information: For each previous employee or independent contractor who made a religious accommodation request at CDCR's Sierra Conservation Center, since November 19, 2005, Defendant shall provide a description of the accommodation request including the titles of the individuals involved, the date the request was made, the religious belief the request was based upon, the action or omission that was requested, and whether the request was granted or denied.  Defendant shall not provide the names or contact information of the individuals involved.

**REQUEST FOR PRODUCTION NO. 16:** Denied.

**REQUEST FOR PRODUCTION NO. 17:** Granted in part; denied in part. To the extent not duplicative of other Requests, Defendants shall produce all documents relating to previous allegations of religious discrimination since November 19, 2005, by any employee assigned to work at the Sierra Conservation Center against any other employee assigned to work at the Sierra Conservation Center.  Defendants shall redact the names and personal information of the individuals involved, however, will not redact the titles of the individuals involved.

**REQUEST FOR PRODUCTION NO. 26:** Denied.

**REQUEST FOR PRODUCTION NO. 27:** Denied.

**D.      Plaintiff's Remaining Discovery Requests**

The parties have failed to properly posture the following discovery requests in their Joint

Statement such that the Court could rule on these matters:

- Plaintiff's Interrogatory No. 12;

- Plaintiff's Request For Production No. 6;

- Plaintiff's Request For Production No. 7;

- Plaintiff's Request For Production No. 8;

- Plaintiff's Request For Production No. 12;

- Plaintiff's Request For Production No. 14;

- Plaintiff's Request For Production No. 23;

- Plaintiff's Request For Production No. 24; and

- Plaintiff's Request For Production No. 28.

With respect to these discovery requests, the Court rules as follows: the parties shall

continue to meet and confer on these requests, and attempt to reach a mutually agreeable

resolution.  The Court sets a deadline of July 13, 2012 for the parties to file a Joint Statement

concerning these discovery requests.  If the parties are able to resolve this discovery dispute

without the Court's assistance, they shall notify the undersigned's chambers, and the Court will

vacate this deadline.

Additionally, for good cause shown, the Court modifies the Scheduling Order entered in

this action (Doc. 22, 40) as follows: the non-expert discovery deadline is extended to September

15, 2012.

IT IS SO ORDERED.

**Dated:    June 27, 2012          _____/s/ Barbara A. McAuliffe_____**
                                              UNITED STATES MAGISTRATE JUDGE