1  KAMALA D. HARRIS, State Bar No. 146672
   Attorney General of California
2  FIEL D. TIGNO, State Bar No. 161195
   Supervising Deputy Attorney General
3  MICHAEL D. GOWE, State Bar No. 226989
   Deputy Attorney General
4    1515 Clay Street, 20th Floor
     P.O. Box 70550
5    Oakland, CA  94612-0550
     Telephone:  (510) 622-2201
6    Fax:  (510) 622-2121
     E-mail:  Michael.Gowe@doj.ca.gov
7  *Attorneys for Defendants*

8  Shannon Seibert (State Bar No. 240317)
   Joe Bautista (State Bar No. 255708)
9  SEIBERT & BAUTISTA
10 18711 Tiffeni Drive #17-129
   Twain Harte, California 95383
11 Telephone: 209.586.2890
   Facsimile:  888.874.8107
12 *Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA – FRESNO DIVISION

| | |
|---|---|
| **RAYMOND GUTHREY,**<br><br>Plaintiff,<br><br>v.<br><br>**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION** et al.<br><br>Defendants. | 1:10-cv-02177-AWI-BAM<br><br>**JOINT STATEMENT RE MOTIONS TO COMPEL AND PROTECTIVE ORDER**<br><br>Date:  August 3, 2012<br>Time:  9:30 a.m.<br>Courtroom:  8<br>Judge:  Hon. Barbara A. McAullife |

## MEET & CONFER EFFORTS

Since the hearing on the plaintiff's motion to compel on June 22, 2012, the parties have met

and conferred on four occasions: June 28, July 11, July 25, and July 26. The parties have resolved

1

many of the disputes at issue in the plaintiff's motion to compel and the defendant's motion for protective order, and the following areas of dispute remain.

## NATURE OF THE ACTION & ITS FACTUAL DISPUTES

This is an action for discrimination against Plaintiff Raymond Guthrey by Defendants CDCR and Michael Pate, Jr. based on Plaintiff's religion, perceived race, and/or perceived national origin in violation of the federal Constitution, Section 1983, and Title VII. Plaintiff Raymond Guthrey is an adherent of the Ananda Marga faith, which he alleges advocates the maintenance of naturally grown hair on men's heads as well as the maintenance of a full beard by men.

Plaintiff retired from Defendant CDCR in December 2008 as a Correctional Counselor I at Sierra Conservation Center ("SCC"). Plaintiff contends that he was regularly subjected to verbal taunting due to his alternative religious beliefs (Ananda Marga) and his perceived race/national origin (Middle Eastern) during this period of employment and prior to his retirement in 2008. Plaintiff never filed a complaint with CDCR for this alleged conduct at any time during his employment.

In February 2010, Plaintiff applied to CDCR to work as a retired annuitant at SCC. On or about April 29, 2010, Pate, who holds the position of Correctional Counselor II, contacted plaintiff about returning to SCC to work under his supervision in a Correctional Counselor I position. Guthrey agreed. During this conversation, Guthrey's hair length and beard came up, as his photograph had recently been in the local newspaper. The parties disagree about the substance of the conversation. Pate instructed Plaintiff to report to work on May 3, 2010, when Plaintiff would begin one week of block training. Plaintiff testified that he told Pate that he would arrive for the training looking "professional."

Upon entering the facility to begin the training program at approximately 6:15 a.m. on May 3, 2010, Plaintiff encountered Pate. Plaintiff alleges that, upon seeing Plaintiff, Pate ordered Plaintiff from the room and into the hallway. Pate told Plaintiff that "this isn't going to work" with reference to Plaintiff's hair and beard. Plaintiff alleges that Pate told him that Pate would return to the training room but that Plaintiff would not.

2

Plaintiff contends that Pate's conduct during their encounter on May 3, 2010 was motivated by religious and/or racial bias against Plaintiff. Plaintiff contends that Pate knew that Plaintiff maintained long hair and a beard in observance of his faith and that Pate's conduct on May 3, 2010 was intended to embarrass, humiliate, and harass Plaintiff.

The defendants deny that Plaintiff connected his hair and beard with his religious beliefs for Pate's understanding. Plaintiff has testified that he cannot recall discussing anything of that nature during his conversations with Pate prior to the May 3, 2010 interaction and with respect to his hiring as a retired annuitant. And Plaintiff has testified that he never has requested a workplace accommodation from CDCR to wear his hair and beard in violation of the applicable grooming standards due to his religious beliefs.

Defendants deny that Pate acted with any unlawful bias against Plaintiff's religion, race, or national origin (perceived or otherwise). Defendants contend that Plaintiff was in violation of CDCR's grooming standards when he arrived for training on May 3, 2010, and that Pate acted in a lawful manner that is consistent with the applicable grooming policies as well as his own obligations as a supervisor.

## PARTY CONTENTIONS

### I. REMAINING DISPUTES REGARDING DISCOVERY AT ISSUE IN THE PLAINTIFF'S MOTION TO COMPEL.[1]

Pursuant to the Court's June 27, 2012 order following the hearing on the plaintiff's motion to compel, the parties met and conferred regarding the following discovery propounded by the plaintiff to defendant CDCR: Request for Production Nos. 6-8, 12, 14, 23-24, and 28; Interrogatory No. 12. Of these discovery requests, the parties remain in dispute about the following three document requests and one interrogatory:

### A. Interrogatory No. 12.

_____

[1] Plaintiff has withdrawn without prejudice the motion to compel responses to Request for Production Nos. 7, 12, 23, and 24 to the CDCR. CDCR has withdrawn without prejudice the motion for protective order regarding Item No. 21 of the noticed PMK deposition. The parties have agreed instead that CDCR will attempt to obtain the information sought through the requests and notice through an electronic data search according to narrowly defined terms agreed to by the parties.

3

Interrogatory No. 12:

Please identify (by name, job title, home address, and phone number) each and every person who was present in the In Service Training Room at the Sierra Conservation Center on May 3, 2010.

Response To Interrogatory No. 12:

Defendant objects to this interrogatory to the extent it calls for confidential and privileged information that is protected by third party privacy rights (e.g., Article 1, § of California Constitution and Penal Code § 832.7) and further objects on the grounds that the interrogatory is overly broad, unduly burdensome, and vague as to time of day. Subject to and without waiving the above objections, privileges, and protections, Defendant CDCR responds as follows: Please refer to item 7 of Part I to the defendants' Rule 26 disclosures. These individuals can be contacted through defense counsel. To the extent that there are additional names not reflected in the Rule 26 disclosures, Defendant CDCR will supplement. Please also refer to documents produced by CDCR, bates labeled "CDCR 00001-CDCR 00009."

NOTE: Through the meet and confer process, the dispute regarding this interrogatory has narrowed to home addresses and telephone numbers for each individual.

Plaintiff's Arguments to Compel Interrogatory No. 12:

Each of the individuals present in the In Service Training (IST) Room at the Sierra Conservation Center on May 3, 2010 are potential witnesses to the events that occurred between Mr. Guthrey and Mr. Pate. Both have testified at deposition that Mr. Guthrey entered the IST room that morning, and both have testified that a discussion ensued in which Mr. Pate ordered Plaintiff to leave the grounds. Disputed is whether Pate physically grabbed and pushed Plaintiff from the room, as Plaintiff has testified, or whether he politely asked him to exit the room and speak in the hallway, as Pate has testified.

Defendant does not challenge the relevancy of the witnesses; instead, it insists that the witnesses cannot be contacted directly by Plaintiff's counsel due to all potential witnesses being "represented parties" under California Rules of Professional Responsibility 2-100.

4

Of the 19 potential witnesses in the IST room on May 3, 2010, nine are correctional officers (non-supervisory), five are sergeants (supervisory), one is a lieutenant (supervisory), and four are unidentified.

California Rule of Professional Responsibility Rule 2-100 states:

(A) While representing a client, a member shall not communicate directly or indirectly about the subject of the representation with a party the member knows to be represented by another lawyer in the matter, unless the member has the consent of the other lawyer.

(B) For purposes of this rule, a "party" includes:

(1) An officer, director, or managing agent of a corporation or association, and a partner or managing agent of a partnership; or

(2) An association member or an employee of an association, corporation, or partnership, if the subject of the communication is any act or omission of such person in connection with the matter which may be binding upon or imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization.

(C) This rule shall not prohibit:

(1) Communications with a public officer, board, committee, or body; or

(2) Communications initiated by a party seeking advice or representation from an independent lawyer of the party's choice; or

(3) Communications otherwise authorized by law.

Cal. R. Prof. Resp. 2-100.

As employees of the State of California, each of the potential witnesses in the IST Training room on May 3, 2010 are "public officers" excluded from the prohibitions of Rule 2-100. *See Lebbos v. Schuette (In re Lebbos)*, 2007 Bankr. LEXIS 4826 (B.A.P. 9th Cir. 2007)("a probation officer is, of course, a public officer")(internal citations omitted).

Furthermore, even if public officers were not excluded from Rule 2-100, the individuals present in the IST training room clearly are not covered "parties" under the rule. The drafters of Rule 2-100 clearly intended that the number of employees considered represented "parties" be limited in scope. *Snider v. Superior Court*, 113 Cal. App. 4th 1187, 1209 (2003). With this intent in mind, courts have narrowly defined "managing agent" under Rule 2-100(B)(1) as one who

5

"exercises substantial authority over organizational policy making." *Id.* Similarly, Rule 2-100(B)(2) has been interpreted to extend only to management-level employees who have "actual authority…sufficient to give them the right to speak for, and bind, the corporation." *Id.*

Correctional officers, sergeants, and lieutenants clearly do not fall within the category of "officers, directors, or managing agents" of the California Department of Corrections, and Defendants have presented no evidence that any of them have at any time had actual authority to speak on behalf of the Department of Corrections.

However, in an attempt to reach resolution of this matter, Plaintiff has proposed numerous creative approaches to obtaining the information from the witnesses, each of which has been refused by Defendants' counsel. Among the options proposed by Plaintiff's counsel are:

- Scheduling informal interviews at the Sierra Conservation Center with each witness in the presence of defense counsel to allay his concerns regarding Plaintiff's counsel speaking with a represented party.
- Scheduling a series of short depositions scheduled over the course of three or four consecutive days at considerable expense to the Plaintiff if Defendants' counsel were willing to stipulate to exceeding the 10-deposition limit.
- Submitting a short questionnaire to each of the witnesses to determine whether the person was present in the IST training room at the time of the exchange between Mr. Pate and Mr. Guthrey and whether the person witnessed the exchange, in order to allow Plaintiff's counsel to avoid incurring the unnecessary expense of deposing individuals who may not have been present at the moment of the exchange.

To each of these suggestions, Defendants' counsel responded with initial agreement in principle before ultimately refusing to compromise. Through his actions, Defendants' counsel is preventing Plaintiff's counsel from obtaining information from potentially critical witnesses in this matter.

Plaintiff therefore requests that the Court find the 19 potential witnesses to be unrepresented under Rule 2-100 and 1) order Defendant to provide Plaintiff's counsel with

6

1  personal contact information for each of them in response to Interrogatory No. 12., or 2) in the

2  interests of maintaining the privacy of peace officers, order Defendant to arrange for each to be

3  interviewed by Plaintiff's counsel at the Sierra Conservation Center outside the presence of

4  Defendants' counsel.

5      Defendant's Arguments in Objection to Interrogatory No. 12:

6      The plaintiff isn't entitled to know the home addresses and phone numbers of correctional

7  peace officers.  CDCR will not release this information because such disclosures to individuals

8  outside of the CDCR put these men and women, as well as their families, at risk of serious

9  physical injury or death at the hands of current and former inmates who somehow obtain this

10 information.

11     Instead, a less dangerous means, and one that is consistent with the federal discovery rules,

12 exists:  Mr. Guthrey is free to *depose* any person listed in response to Interrogatory No. 12.  It is

13 his burden to establish the need for any deposition beyond the limited number allowed.  And this

14 he cannot do.  Both he and Mr. Pate have testified that their interaction took place in a hallway

15 not only separate from the training room, but out of sight and around a corner away from those in

16 the training room. *See e.g.,* Guthrey deposition, p. 78:1-14. And the only person Mr. Guthrey

17 claims he saw in the hallway during that interaction is Steve Cowley—someone who Mr. Guthrey

18 has never noticed for deposition. *See* Guthrey deposition, pp. 72:16-18; 82:13-24. Nor has Mr.

19 Guthrey noticed the deposition of Bill Sarkisian, who he claims was present in the training room

20 at the time Mr. Pate first approached him. *See* Guthrey deposition, pp. 72:8-14; 75:15-20. That he

21 avoids doing so suggests that he seeks to avoid depositions entirely in order to test the responses

22 of potential witnesses without their statements being committed to a deposition transcript—after

23 all, if no one who was allegedly present at the time can recall seeing anything alleged by Mr.

24 Guthrey in his complaint and their statements can be used as evidence by way of deposition

25 transcripts, Mr. Guthrey's version of events is significantly undermined.  So he seeks ex parte

26 access to these individuals instead.

27     California Rule of Professional Responsibility, Rule 2-100, however, prohibits ex parte

28 communications between Mr. Guthrey's counsel and the individuals in question.  To the extent

7

that some individuals present are management-level employees, the rule flatly prohibits such

contact. *See* Rule 2-100(B)(1).[2] Even rank-and-file employees are off-limits here, however.

Mr. Guthrey's stated theory is that SCC is so rife with animus towards religions such as his

own that there is an alleged culture of discrimination there that warrants CDCR's liability. And if

he is correct that Mr. Pate engaged in discriminatory conduct towards him in a manner that could

be witnessed by those present at the training on May 3rd, and these individuals did nothing to

report it (as is otherwise required under the CDCR's anti-discrimination and harassment policies),

then this deliberate omission on their part would only support Mr. Guthrey's theory of CDCR

liability here.  Rule 2-100 prohibits ex parte communications where the rank-and-file employee

may testify as act or omission of his or her own that could result in the liability of the employer or

whose testimony could otherwise constitute an admission of the employer—and, as noted above,

that's Mr. Guthrey's precise theory of liability here.

The Court has already examined this general issue in 2011 and ruled in favor of the position

taken by CDCR here:  *United States v. Sierra Pacific Industries,* --- F.Supp.2d ----, 2011 WL

5828017 (E.D. Cal. 2011). As the Court noted in *Sierra Pacific*, the issue is analyzed through

both the state ethical rules and federal rules of evidence. *Id.* at *5 ("But [the California Court of

Appeal's decision in] *Snider* is not persuasive here because that case applied California evidence

law, whereas federal evidence law applies here.") And the key distinction identified by the Court

between the state and federal rules of evidence is that an admission under the federal rules may be

made by *any* employee of an entity, not just high-ranking management. *See id.* ("Fed.R.Evid.

801(d)(2) defines a party admission as 'a statement made by the party's agent or servant

---

[2] Relevant portions of Rule 2-100 are: "(A) While representing a client, a member shall
not communicate directly or indirectly about the subject of the representation with a party the
member knows to be represented by another lawyer in the matter, unless the member has the
consent of the other lawyer.
  (B) For purposes of this rule, a "party" includes:
    (1) An officer, director, or managing agent of a corporation or association, and a partner
or managing agent of a partnership; or
    (2) An association member or an employee of an association, corporation, or partnership,
if the subject of the communication is any act or omission of such person in connection with the
matter which may be binding upon or imputed to the organization for purposes of civil or
criminal liability or whose statement may constitute an admission on the part of the organization."

concerning a matter within the scope of the agency or employment, made during the existence of the relationship.'") And like Sierra Pacific Industries, Mr. Guthrey seeks access to the individuals in question matters so that he may elicit statements concerning the very "subject of representation." *See id.* at *6 ("Sierra Pacific also argues that Rule 2–100 does not apply because Carman [an expert and agent on behalf of Sierra Pacific's attorneys] did not communicate with the agents 'about the subject of the representation.' … But, indeed, the very purpose of the contact was to do just that … According to Sierra Pacific, the agents 'were just two government employees who happened to have information interesting to Sierra Pacific.' … But obviously, Carman attempted to elicit information from the agents for the purpose of using it in this litigation. Sierra Pacific sought information regarding McNeil in order to gather evidence to bolster its theory that McNeil set the Moonlight Fire.") Just as it ruled in *Sierra Pacific*, the Court should prohibit Mr. Guthrey's counsel from ex parte access to CDCR employees of any rank. As noted already, Mr. Guthrey is able to obtain such testimony by way of deposition.

**B.    Request For Production No. 6.**

Request for Production No. 6:

All DOCUMENTS that constitute, make up, are a part of, or are incorporated into Michael Pate, Jr.'s personnel file including, but not limited to, all employment applications and interviews, pay records, work history records, work performance and work evaluations, records of disciplinary action taken or requested, attendance records, promotions, supervisors' remarks, company benefits, retirement plans and pension programs pertaining to the employment of Michael Pate, Jr., all grievances and dispositions, and all other information as is contained in Michael Pate, Jr.'s personnel file for Michael Pate, Jr.'s entire employment tenure at the California Department of Corrections and Rehabilitation.

Response to Request for Production No. 6:

Defendant objects to this request as being overly broad and unduly burdensome and seeking the production of privileged and private documents which are irrelevant to this case, including those protected by Mr. Pate's constitutional and statutory privacy rights. Defendant further objects to this request to the extent that it calls for the production of documents protected by the

9

attorney-client, attorney work-product, official information, and deliberative process privileges.
Subject to and without waiving these objections, privileges, and protections, Defendant CDCR
responds as follows: Defendant will produce any existing responsive, non-privileged or protected
documents that are connected to the nature of the claims at issue here (i.e., discrimination) subject
to protective order.

NOTE: Through the meet and confer process, the dispute regarding this request has
narrowed to the following categories of documents in Mr. Pate's personnel file:

- Mr. Pate's application and resume;
- performance reviews or work evaluations conducted of Mr. Pate during his tenure at
  CDCR;
- records of Mr. Pate's work performance, including attendance records and
  supervisor's remarks; and
- records of commendation or promotion conferred on Mr. Pate during his tenure at
  CDCR.

Plaintiff's Arguments to Compel RFP No. 6:

In cases in which a plaintiff who was terminated from his or her employment has filed suit
for discrimination, courts have regularly recognized that the personnel file of the individuals
involved in the decision to terminate the plaintiff contain potentially relevant information and that
the plaintiff is entitled to documents contained therein. *See, e.g., Wesley v. Gates,* 2009 U.S. Dist.
LEXIS 66477 (N.D. Cal. 2009) (compelling production of personnel files "because these
supervisors were the individuals directly involved in the decision to terminate plaintiff"); *Ragge
v. MCA/Universal*, 165 F.R.D. 601, 604 (C.D. Cal. 1995) (holding that "[c]learly there may be
information in the named defendants' personnel files which is relevant to the subject matter of the
pending action, whether a claim or defense, or to the credibility of a witness").

It is undisputed that Defendant Pate was directly involved in the decision to terminate
Plaintiff from his position as a Retired Annuitant with Defendant CDCR. In fact, Defendant Pate
has repeatedly admitted not only direct involvement but has claimed *sole* responsibility for the
decision to terminate Plaintiff.

Defendant Pate also has provided testimony regarding his work history prior to joining the CDCR and his work performance and history while employed by Defendant CDCR. Information contained within his personnel file regarding his pre-CDCR employment and work performance is therefore relevant to assessing the credibility of Defendant Pate.

Because the information sought is relevant, and because the parties have entered into a protective order to ensure the privacy of the documents produced, Plaintiff requests that the Court order Defendants to produce all outstanding documents responsive to the narrowed request.

Defendant's Arguments in Objection to RFP No. 6:

Mr. Pate's deposition has been taken in full by the plaintiff and it has already been disclosed by CDCR that there have been no other complaints of discrimination against Mr. Pate by any coworker other than that by the plaintiff. The dispute here begins and ends with the approximately 10-minute interaction between Mr. Guthrey and Mr. Pate outside an in-service training room at Sierra Conservation Center on May 3, 2010. More narrowly, the dispute is over Mr. Pate's alleged statements to Mr. Guthrey during this interval that "this isn't going to work" with reference to Mr. Guthrey's long hair and beard, and something to the effect that Mr. Pate would return for the in-service training whereas Mr. Guthrey would not.

It is undisputed that Mr. Guthrey's hair was cut, and of sufficient length, to fall past his shirt collar and that this was in violation of the applicable CDCR grooming standards. It is also undisputed that Mr. Guthrey had a full beard and that this too was in violation of the applicable CDCR grooming standards. Nor is it disputed that Mr. Guthery failed to ever seek a workplace accommodation for religious beliefs regarding his hair and beard or that he failed to connect this hair and beard to his religion for Mr. Pate's understanding.

Mr. Pate's application and resume from more than two decades prior is therefore irrelevant and any demand for such material is overbroad; nor is there any relevance to the case regarding Mr. Pate's positive or negative performance evaluations at any point in his career. As noted, there have been no complaints against Mr. Pate other than by Mr. Guthrey; nor has there been any discipline against Mr. Pate for allegedly discriminatory conduct towards anyone. Nothing in his

personnel record regarding his work performance, then, has any bearing on the claims at issue here.

Because Mr. Pate is a peace officer, moreover, in addition to his privacy rights under the California Constitution, the Court should deny the motion as to this request because Mr. Pate's privacy rights outweigh any purported interest by Mr. Guthrey in obtaining this information. *See e.g.,* California Penal Code § 832.7 (although a state statue, it embodies the public policy of this state that peace officers' confidential personnel information warrants special protections and should not be disclosed absent a demonstrable need by the requesting party that surpasses the officer's special privacy rights). Government personnel files a considered official information subject to the qualified official information privilege. *Sanchez v. City Santa Ana,* 936 F.2d 1027, 1033 (9th Cir. 1990). Similar to the balancing of interests required under Penal Code section 832.7, under the official information privilege federal courts "must weigh the potential benefits of disclosure against the potential disadvantages. If the latter is greater, the privilege bars discovery." *Id.* at 1033-1034. As described above, the requested information is too remote from the dispute at issue here. Had there been any performance evaluation material, for example, in Mr. Pate's file that is related to alleged civil rights violations of a coworker, CDCR would have disclosed that information pursuant to the existing protective order. Accordingly, it is unnecessary to require CDCR to disclose the requested material.

### C.   Request For Production No. 8.

Request For Production No. 8:

All DOCUMENTS that REFER OR RELATE to any Substance Abuse Programs provided to inmates at the Sierra Conservation Center between January 1, 2000 and the present day.

Response To Request For Production No. 8:

Defendant objects to this request as being overly broad, unduly burdensome and oppressive, and vague and ambiguous as to the terms "refer or relate to any Substance Abuse Programs provided to inmates at the Sierra Conservation Center." The breadth of the request encompasses information that is, on its face, outside the scope of this litigation and implicates the privacy of inmates involved in substance abuse programs. Thus the request calls for the production of

12

materials subject to third-party privacy protections, such as those protected under Article 1, § 1 of the California Constitution and other applicable statutory protections. Defendant further objects to this request to the extent that it calls for the production of documents protected by the attorney-client, attorney work-product, official information, and deliberative process privileges. Subject to and without waiving these objections, privileges, and protections, Defendant CDCR responds as follows: The Substance Abuse Programs referenced by this request were conducted by a third-party agency and Defendant CDCR does not maintain those records.

NOTE: Through the meet and confer process, the dispute regarding this request has narrowed to responsive documents from between 2000 to 2003 (and with inmate names redacted, if any), which reflects the time period that Plaintiff administered a meditation and yoga class as part of the substance abuse program at SCC.

Plaintiff's Arguments to Compel RFP No. 8:

Under the federal rules, a party is entitled to "obtain discovery regarding any non privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. It is well established that these rules allow for liberal discovery, *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984), and that the party resisting discovery has the burden of establishing lack of relevance or undue burden. *See Fosselman v. Caropreso*, 2011 U.S. Dist. LEXIS 28816, 10-11 (N.D. Cal. 2011)

The sole argument raised by Defendants in support of refusing to produce records relating to Substance Abuse Programs from January 1, 2000 through December 31, 2003 is relevance. However, the information sought by Plaintiff through this request is not only calculated to lead to the discovery of admissible evidence but is directly relevant to Plaintiff's claim for religious discrimination.

While working as a Correctional Counselor I for Defendant CDCR, Plaintiff instituted a class within the Sierra Conservation Center's Substance Abuse Program called the "Spiritual Awareness Program," which was administered from approximately 2000 through 2003. As part of this class, Plaintiff and guest margis (leaders of the Ananda Marga faith) taught inmates

13

principles of yoga and meditation as a method of obtaining spiritual awareness to overcome their substance abuse issues.

During this time, Plaintiff was subjected to harassment from his colleagues, including Defendant Pate, at the Sierra Conservation Center. Plaintiff has alleged that Defendant Pate began derogatorily calling him "Ragjeesh" after he instituted the program and that Plaintiff's adherence to the Ananda Marga faith was widely known among Sierra Conservation Center employees as a result of the program. Defendant denies any knowledge of Plaintiff's faith. Also during this time, Plaintiff was falsely accused by CDCR employees, possibly including Defendant Pate, of engaging in improper activities with guest teachers of the program in retaliation for having instituted an Ananda Marga-based program at the prison. In addition, Plaintiff alleges that the program was cancelled in 2003 as a result of his supervisor's disapproval of Plaintiff's religion; Plaintiff's supervisor was and is a colleague if not friend of Defendant Pate's.

Plaintiff has narrowed the request to encompass only the time during which Plaintiff was involved in the program and during which he alleges the Spiritual Awareness Program was cancelled by the institution. Though actions outside of the statutory period cannot and do not form the basis of Plaintiff's complaint in the present action, evidence of discriminatory conduct toward a Plaintiff outside of the statutory period is admissible to demonstrate a defendant's discriminatory intent with regard to actions within the statutory period. *See, e.g., Morgan v. Napolitano,* 2011 U.S. Dist. LEXIS 64610 (E.D. Cal. 2011)(comments that occurred outside of the statutory period are "evidence of [Defendant's] animus").

Because the information is relevant and likely to lead to evidence in support of Plaintiff's claim for religious discrimination, Plaintiff requests that the Court order Defendant to produce all documents responsive to Request for Production No. 8.

Defendant's Arguments in Objection to RFP No. 8:

To the extent that any documents regarding these programs from nine to twelve years ago still exist, they are beyond the scope of this litigation—this request is overbroad and it seeks irrelevant information. The applicable limitations periods for any allegedly discriminatory conduct towards Mr. Guthrey in relation to the substance abuse programs conducted between

14

1  2000 and 2003 have long since elapsed. Further, Mr. Guthrey has testified that he was the SCC's

2  Equal Employment Counselor immediately prior to beginning his volunteer work in the substance

3  abuse program. *See* Deposition of Raymond Guthrey, September 20, 2011, p. 27:5-21. That is, he

4  took complaints from SCC staff regarding other staff under CDCR policy and federal civil rights

5  laws, and further informed complainants of their rights under the law. *See* Guthrey deposition, p.

6  26:1-11. Yet, despite his intimate familiarity with SCC's equal employment complaint processes

7  as well as the relevant laws regarding civil rights complaints by staff, it is undisputed that Mr.

8  Guthrey never complained of any discriminatory conduct to CDCR related to his religion, race, or

9  national origin stemming from his work in the substance abuse programs. Instead, he raises it here

10  for the first time, *about a decade after the fact*.

11      Moreover, there is no dispute that Mr. Pate lacked any involvement in or connection with

12  the substance abuse programs in question. Given that this case is premised on claims that *Mr.*

13  *Pate* was unlawfully biased against Mr. Guthrey's religious beliefs at the time of their interaction

14  on May 3, 2010, CDCR should not be compelled to locate and compile all documents related to

15  these programs from a four year period.

16      The request is further overbroad because Mr. Guthrey was involved in only one of multiple

17  components of the overall substance abuse program encompassed by this request.  Why, for

18  example, are documents related to a Wiccan inmate substance-abuse support group, or those

19  regarding inmates of Native American religious beliefs or Latino inmates holding ancient Mayan

20  religious beliefs, relevant to the May 3, 2010 interaction between Mr. Guthrey and Mr. Pate?

21  Such documents have no bearing on this case. Accordingly, CDCR should not be forced to locate

22  and disclose this information as it is overbroad and irrelevant to the claims in question.

23      **D.    Request for Production No. 28.**

24      Request For Production No. 28:

25      All DOCUMENTS that constitute, make up, are a part of, or are incorporated into Rafael

26  Mendoza's personnel file including but not limited to, all employment applications and interviews,

27  pay records, work history records, work performance and work evaluations, records of

28  disciplinary action taken or requested, attendance records, promotions, supervisors' remarks,

15

company benefits, retirement plans and pension pertaining to the employment of Rafael Mendoza, all grievances and dispositions, and all other information as is contained in Rafael Mendoza's personnel file for Rafael Mendoza's entire employment tenure at the California Department of Corrections and Rehabilitation.

Response To Request For Production No. 28:

Defendant objects to this request as being overly broad and unduly burdensome and seeking the production of privileged and private documents which are irrelevant to this case (e.g., Mr. Mendoza's "retirement plans and pension" documents), including those protected by Mr. Mendoza's constitutional and statutory privacy rights (e.g., Article 1, § of California Constitution and Penal Code § 832.7). Defendant further objects to this request to the extent that it calls for the production of documents protected by the attorney-client, attorney work-product, official information privileges. *See, e.g., Sanchez v. City Santa Ana,* 936 F.2d 1027, 1034 (9th Cir. 1990) ("While these files are not absolutely privileged, the confidential nature of the employee personnel files suggests that opening the files to the plaintiffs for a general search could reach well beyond the legitimate inquiries necessary to this litigation … ."). Defendant also objects on the grounds that the terms "all … interviews," "work history records," "work performance and work evaluations," "supervisors' remarks," "retirement plans and pension pertaining to the employment of Rafael Mendoza," "all grievances and dispositions," "all other information" are vague and ambiguous.

NOTE:  Through the meet and confer process, the dispute regarding this request has narrowed to the following categories of documents in Mr. Mendoza's personnel file:

- Mr. Mendoza's application and resume;
- records of interviews in which Mr. Mendoza participated;
- performance reviews or work evaluations conducted of Mr. Mendoza during his tenure at CDCR;
- records of Mr. Mendoza's work performance, including attendance records and supervisor's remarks;

16

- records of commendation or promotion conferred on Mr. Mendoza during his tenure at CDCR;

- records of disciplinary actions contemplated or instituted against Mr. Mendoza during his tenure at CDCR;

- records of oral or written grievances or complaints made against Mr. Mendoza during his tenure at CDCR; and

- records of oral or written grievances or complaints made by Mr. Mendoza during his tenure at CDCR

<u>NOTE</u>: CDCR has disclosed to the plaintiff that there are no records regarding Mr. Mendoza's employment during the period prior to his hiring as a retired annuitant; thus the dispute here encompasses only those personnel records from Mr. Mendoza's employment as a retired annuitant.

<u>Plaintiff's Arguments to Compel RFP No. 28</u>:

Despite Defendant's initial agreement in spring of this year to provide the requested file subject to a protective order, Defendant now refuses to produce Mr. Mendoza's file based upon Defendant's belief that the requested information is not relevant to Mr. Guthrey's claim. As discussed above, Plaintiff is entitled to discovery of any nonprivileged matter that is relevant or appears reasonably calculated to lead to admissible evidence in support of his claim. Fed. R. Civ. P. 26(b)(1).

The relevancy of the requested documents is clearly established by the fact that Mr. Mendoza is similarly situated to Mr. Guthrey in all relevant ways *except* his religious faith: Mr. Mendoza was hired and retained as a Retired Annuitant, Correctional Counselor I, the same position to which Plaintiff was hired; while working as a Retired Annuitant, Mr. Mendoza maintained a full beard; while working as a Retired Annuitant, Mr. Mendoza maintained a ponytail that extended beyond his shirt collar when not tied at the base of his neck.

Unlike Plaintiff, however, Mr. Mendoza adheres to and is known to be a follower of the Christian faith. And unlike Plaintiff, Mr. Mendoza was permitted to work as a retired annuitant

17

1  for nearly three years despite being out of compliance with Defendant CDCR's purported dress

2  code during that time.

3      It is well established that evidence that one or more similarly situated individuals outside of

4  a protected class received more favorable treatment can constitute sufficient evidence of

5  discrimination for a Title VII plaintiff to prevail. *See, e.g., McDonald v. Santa Fe Trail Transp.*

6  *Co.*, 427 U.S. 273, 282 (1976) (holding that a plaintiff can establish a Title VII violation based on

7  evidence that two white employees "were discharged for their alleged participation in a

8  misappropriation of cargo . . . but that a fellow [nonwhite] employee . . . was not"); *Noyes v.*

9  *Kelly Servs.*, 488 F.3d 1163, 1172 (9th Cir. 2007) (evidence that an employer favored a "more

10  junior, less qualified" religious employee over a non-religious employee supported an inference

11  of discrimination); *Josephs v. Pac. Bell*, 443 F.3d 1050, 1065 (9th Cir. 2006) (holding that

12  evidence of three similarly situated employees was properly admitted); *Vasquez v. County of Los*

13  *Angeles*, 349 F.3d 634, 641 (9th Cir. 2003) (evaluating comparative evidence regarding two other

14  employees); *Raad v. Fairbanks N. Star Borough*, 323 F.3d 1185, 1194 (9th Cir. 2003) (holding

15  that plaintiff "demonstrated a genuine factual dispute as to whether…proffered reasons were

16  pretextual," where defendant hired a less-qualified applicant).

17      Because this request is calculated to obtain relevant information regarding Mr. Mendoza's

18  qualifications and work performance relative to that of Mr. Guthrey and because the parties have

19  entered into a protective order to ensure the privacy of the documents produced, Plaintiff requests

20  that the Court order Defendants to produce all documents responsive to the narrowed request.

21      Defendant's Arguments in Objection to RFP No. 28:

22      According to Mr. Guthrey, Mr. Mendoza is his "road dog" and "friend." Guthrey

23  deposition, p. 109:4. Also according to the plaintiff, Mr. Mendoza "would be more than happy to

24  testify to [Mr. Mendoza's] hiring being free of discrimination and/or retaliation." Guthrey

25  deposition, pp. 108:25-109:1-3. Consistent with what would apparently be Mr. Mendoza's own

26  testimony, CDCR has already disclosed that there have been no complaints of religious

27  discrimination at the institution during the relevant period other than that by Mr. Guthrey at issue

28  here. And it's undisputed that Mr. Pate did not hire or supervise Mr. Mendoza as a retired

18

annuitant.  If Mr. Pate did not hire or supervise Mr. Mendoza, and Mr. Mendoza agrees that his hiring was discrimination-free, what personnel document in Mr. Mendoza's retired annuitant records could have any bearing on Mr. Guthrey's claims that Mr. Pate acted discriminatorily towards him on May 3, 2010 regarding his own hiring as a retired annuitant?  None.  And if Mr. Mendoza is in fact Mr. Guthrey's "road dog" and "friend," he is free to share with Mr. Guthrey any copies of his own personnel documents without CDCR involvement—that he apparently hasn't agreed to do so only supports CDCR's position here.

Moreover, because his hiring and employment as a retired annuitant has been admittedly discrimination-free, Mr. Mendoza's personnel records would not support a "me too" argument; Mr. Guthrey argues that his hiring was the polar opposite of Mr. Mendoza's.  But that, alternatively, Mr. Mendoza was allegedly "similarly situated" is not something to that will be supported by the material requested.  If Mr. Guthrey's contentions are correct, that Mr. Mendoza's hair and beard violated CDCR's grooming standards but those standards were not enforced in his case (by a supervisor who is not Mr. Pate), then his resume and performance evaluations are unnecessary and unhelpful to establish that as a fact. Additionally, Mr. Guthrey's position is that Mr. Mendoza was never disciplined, as he was, for having long hair and a beard— why then are Mr. Mendoza's disciplinary records, to the extent that any exist, necessary to be disclosed?  Such information has no relevance to Mr. Guthrey's contention here and CDCR, therefore, should not be required to disclose Mr. Mendoza's confidential personnel records. *See* Penal Code § 832.7 *and Sanchez v. City Santa Ana,* 936 F.2d 1027, 1033-1034 (9th Cir. 1990) (regarding balancing test in determining whether to disclose otherwise confidential peace officer personnel information). Mr. Guthrey is free to notice Mr. Mendoza's deposition to obtain any of the sought-after information if he believes that information regarding Mr. Mendoza's work experience will bolster his own claims.

## II. REMAINING DISPUTES REGARDING DISCOVERY AT ISSUE IN DEFENDANT CDCR'S MOTION FOR PROTECTIVE ORDER.

Since CDCR filed its notice and motion for a protective order, the parties have met and conferred extensively to resolve the issues in dispute.  While the parties were able to resolve the

19

bulk of the issues, there remain the following areas requiring court intervention—listed by item number from "Attachment A" to the plaintiff's "person most knowledgeable" deposition notice that is Exhibit 1 the CDCR's motion for protective order. These items further encompass "any and all documents that refer, pertain, or relate to" the category of information in question (*see* "Attachment B" to the deposition notice).

**A.  Attachment A, Items 10, 11.**

Item 10:

A person most knowledgeable regarding:  The application, screening, selection and hiring of Theresa Howell to Position No. 099-222-9904-007 in 2010.

Objections to Item 10:

Because neither Ms. Howell nor Mr. Mendoza were hired as a retired annuitant by Defendant Michael Pate, Jr. or supervised by him, there is no threshold basis for any testimony regarding their employment. Moreover, Ms. Howell would not be subject to the male grooming standards—it's therefore unclear what bearing her employment has on the case. These requests encompass information that is neither relevant nor designed to lead to the discovery of admissible evidence, and the requests are also overbroad and further encompass confidential and private personnel information that should not be subject to discovery.

[With respect to documents related to this category of information,] CDCR objects to this request because it seeks information protected pursuant to third-party privacy rights (e.g., Article 1, § of California Constitution and Penal Code § 832.7) and encompasses information that is neither relevant nor designed to lead to the discovery of admissible evidence. CDCR also objects to the extent the request encompasses information subject to the attorney-client privilege, the attorney work product doctrine protections, official information privilege, deliberative process privilege. Lacking any good faith basis for the request, it appears to be designed to cause Ms. Howell embarrassment and is also overbroad.

Item 11:

A person most knowledgeable regarding:  The application, screening, selection and hiring of Theresa Howell to Position No. 099-222-9904-005 in 2010.

20

Objections to Item 11:

Because neither Ms. Howell nor Mr. Mendoza were hired as a retired annuitant by Defendant Michael Pate, Jr. or supervised by him, there is no threshold basis for any testimony regarding their employment. Moreover, Ms. Howell would not be subject to the male grooming standards—it's therefore unclear what bearing her employment has on the case. These requests encompass information that is neither relevant nor designed to lead to the discovery of admissible evidence, and the requests are also overbroad and further encompass confidential and private personnel information that should not be subject to discovery.

[With respect to documents related to this category of information,] CDCR objects to this request because it seeks information protected pursuant to third-party privacy rights (e.g., Article 1, § of California Constitution and Penal Code § 832.7) and encompasses information that is neither relevant nor designed to lead to the discovery of admissible evidence. CDCR also objects to the extent the request encompasses information subject to the attorney-client privilege, the attorney work product doctrine protections, official information privilege, deliberative process privilege. Lacking any good faith basis for the request, it appears to be designed to cause Ms. Howell embarrassment and is also overbroad.

Defendant's Arguments for Protective Order re Items 10 and 11:

Ms. Howell is a woman and, under the CDCR's grooming standards, she is free to have longer hair than Mr. Guthrey. *See* CDCR-00067 (*compare*: "Male employee's hair shall be *cut* so as to not extend below the *top* of the shirt collar" *versus* "Female employee's hair shall not extend below the *bottom* of the collar"—thus, not only may female employees' hair extend beyond the top of the collar, it need not be "cut" to do so) (emphasis added).[3]  Not that there is any

---

[3] Mr. Guthrey has operated under the misunderstanding that "female rank and file are not required to have any restriction to how they wear their hair." *See* "Declaration of Raymond R. Guthrey, MS" in support of State Personnel Board complaint at RG000207. As noted in the excerpts from the grooming standards above, it is not the case that female employees are free of restrictions regarding the manner in which they wear their hair. In fact, the grooming standards make it clear that female employees have very specific restrictions on how they may wear their hair: "Female employee's hair shall not extend below the bottom of the collar. If the hair is long, it shall be worn up in a neat, nonflamboyant style. No decorations in the hair are permitted and hair clips and/or pins shall closely match the color of the hair." CDCR-00067. That Mr. Guthrey so misunderstands the contents and applicability of CDCR's grooming standards explains the

(continued…)

information regarding Ms. Howell's specific hair length in the record, let alone religious beliefs: All that Mr. Guthrey has to connect Ms. Howell to this case then is the fact that she was apparently hired as a retired annuitant for a Correctional Counselor I position around the same period that he was. She is not "similarly situated" to Mr. Guthrey, of course, because she is a woman subject to distinct grooming standards. And she's not a "me too" complainant because there have been no other complaints of religious discrimination at SCC by an employee during the relevant period other than by Mr. Guthrey. That she was also a CCI hired as a retired annuitant is meaningless, then, to Mr. Guthrey's claims that Mr. Pate acted discriminatorily towards him on May 3, 2010 by releasing him from service as a retired annuitant for a particular available CCI position (there is no dispute that Mr. Guthrey was free to apply to and be employed—and remains so, to this day—in other available CCI positions at SCC or at any of the other 33 prisons within California). Accordingly, Ms. Howell's employment information, by way of a "person most knowledgeable" deponent or otherwise, is irrelevant and should remain confidential. *See* Penal Code § 832.7 *and Sanchez v. City Santa Ana,* 936 F.2d 1027, 1033-1034 (9th Cir. 1990) (regarding balancing test in determining whether to disclose otherwise confidential peace officer personnel information).

<u>Plaintiff's Arguments Against Protective Order re Items 10 and 11</u>:

The position to which Plaintiff was hired and from which he was terminated as a Retired Annuitant Correctional Counselor I on May 3, 2010 was Position No. 099-222-9904-**005**.

Records produced by Defendants indicate that Theresa Howell was hired as a Retired Annuitant Correctional Counselor I to Position No. 099-222-9904-**007** in April 2010. Defendants' records further indicate that Ms. Howell was then assigned to Position No. 099-222-9904-**005** as a Retired Annuitant Correctional Counselor I on May 31, 2010. Ms. Howell is not a subscriber of the Ananda Marga faith.

Despite this documentary evidence, Defendants have repeatedly denied that Plaintiff's position was filled by a Retired Annuitant after Plaintiff was terminated. The testimony from

(…continued)
entire basis for this lawsuit and its complete lack of merit.

22

1    Defendant CDCR's Person Most Knowledgeable is expected to provide information regarding

2    whether Plaintiff's position was, as indicated by Defendant CDCR's own documents, filled with

3    an individual outside of Plaintiff's protected class, despite the denial of Defendant.

4         The testimony from Defendant CDCR regarding the application, screening, selection and

5    hiring of Ms. Howell is further expected to provide information on the standards to which Retired

6    Annuitants are held, in particular whether all Retired Annuitants are screened for and must strictly

7    comply with grooming standards as Defendant claims.

8         Because the information sought is directly relevant to Plaintiff's claim as well as

9    Defendants' defenses, and because the parties have entered into a protective order to ensure the

10   privacy of information obtained through discovery, Plaintiff requests that the Court deny

11   Defendants' request for a protective order in this matter.

12        **B.    Attachment A, Item 12.**

13        Item 12:

14        A person most knowledgeable regarding:  The application, screening, selection hiring

15   and/or firing of Rafael Mendoza to, for, or from the position of Correctional Counselor I as a

16   Retired Annuitant in 2010 and/or 2011.

17        Objections to Item 12:

18        Because neither Ms. Howell nor Mr. Mendoza were hired as a retired annuitant by

19   Defendant Michael Pate, Jr. or supervised by him, there is no threshold basis for any testimony

20   regarding their employment. Moreover, Ms. Howell would not be subject to the male grooming

21   standards—it's therefore unclear what bearing her employment has on the case. These requests

22   encompass information that is neither relevant nor designed to lead to the discovery of admissible

23   evidence, and the requests are also overbroad and further encompass confidential and private

24   personnel information that should not be subject to discovery.

25        [With respect to documents related to this category of information,] CDCR objects to this

26   request because it seeks information protected pursuant to third-party privacy rights (e.g., Article

27   1, § of California Constitution and Penal Code § 832.7).  CDCR also objects to the request

28   because it encompasses information that is neither relevant nor designed to lead to the discovery

23

of admissible evidence, and is therefore overbroad. CDCR also objects to the extent the request encompasses information subject to the attorney-client privilege, the attorney work product doctrine protections, official information privilege, deliberative process privilege.

Defendant's Arguments for Protective Order re Item 12:

This request is simply approaching Mr. Mendoza's confidential peace officer personnel information from a different angle than the document request discussed above, RFP No. 28. In addition to reasserting the same arguments against the plaintiff's motion to compel here, CDCR notes that it is also overly burdensome to require CDCR to prepare a deponent to speak to all aspects of Mr. Mendoza's hiring and employment, to the extent it is possible for anyone to be educated in such a manner, given that the requested areas mix knowledge of information in his written personnel file with percipient knowledge and firsthand experience in working with Mr. Mendoza.

As argued already above: According to Mr. Guthrey, Mr. Mendoza is his "road dog" and "friend." *See* Deposition of Raymond Guthrey, September 20, 2011, p. 109:4. Also according to the plaintiff, Mr. Mendoza "would be more than happy to testify to [Mr. Mendoza's] hiring being free of discrimination and/or retaliation." Guthrey deposition, pp. 108:25-109:1-3. Consistent with what would apparently be Mr. Mendoza's own testimony, CDCR has already disclosed that there have been no complaints of religious discrimination at the institution during the relevant period other than that by Mr. Guthrey at issue here. And it's undisputed that Mr. Pate did not hire or supervise Mr. Mendoza as a retired annuitant. If Mr. Pate did not hire or supervise Mr. Mendoza, and Mr. Mendoza agrees that his hiring was discrimination-free, what personnel document in Mr. Mendoza's retired annuitant records could have any bearing on Mr. Guthrey's claims that Mr. Pate acted discriminatorily towards him on May 3, 2010 regarding his own hiring as a retired annuitant? None. And if Mr. Mendoza is in fact Mr. Guthrey's "road dog" and "friend," he is free to share with Mr. Guthrey any copies of his own personnel documents without CDCR involvement—that he apparently hasn't agreed to do so only supports CDCR's position here.

Moreover, because his hiring and employment as a retired annuitant has been admittedly discrimination-free, Mr. Mendoza's personnel records would not support a "me too" argument; Mr. Guthrey argues that his hiring was the polar opposite of Mr. Mendoza's. But that, alternatively, Mr. Mendoza was allegedly "similarly situated" is not something to that will be supported by the material requested. If Mr. Guthrey's contentions are correct, that Mr. Mendoza's hair and beard violated CDCR's grooming standards but those standards were not enforced in his case (by a supervisor who is not Mr. Pate), then his resume and performance evaluations are unnecessary and unhelpful to establish that as a fact. Additionally, Mr. Guthrey's position is that Mr. Mendoza was never disciplined, as he was, for having long hair and a beard— why then are Mr. Mendoza's disciplinary records, to the extent that any exist, necessary to be disclosed? Such information has no relevance to Mr. Guthrey's contention here and CDCR, therefore, should not be required to disclose Mr. Mendoza's confidential personnel information. *See* Penal Code § 832.7 *and Sanchez v. City Santa Ana,* 936 F.2d 1027, 1033-1034 (9th Cir. 1990) (regarding balancing test in determining whether to disclose otherwise confidential peace officer personnel information). Mr. Guthrey is free to notice Mr. Mendoza's deposition to obtain any of the sought-after information if he believes that information regarding Mr. Mendoza's work experience will bolster his own claims.

Plaintiff's Arguments Against Protective Order re Item 12:

As discussed in support of Plaintiff's Argument to Compel Request No. 28, above, Mr. Mendoza is a similarly situated individual outside of Plaintiff's protected class who, despite having a full facial beard and long hair secured at the nape of his neck, remained employed for three years as a Retired Annuitant Correctional Counselor I with Defendant CDCR.

As with testimony regarding Defendant CDCR's screening, selection, and hiring of Ms. Howell, testimony regarding the application, screening, selection and hiring of Mr. Mendoza is expected to provide information regarding whether all Retired Annuitants are screened for and must strictly comply with grooming standards. Knowledge of the screening and hiring processes as applied to Mr. Mendoza is of particular importance given Mr. Mendoza's position as a

25

1  similarly situated individual outside of Plaintiff's protected class who was retained by Defendant

2  CDCR.

3      Because the information sought is directly relevant to Plaintiff's claim as well as

4  Defendants' defenses, and because the parties have entered into a protective order to ensure the

5  privacy of information obtained through discovery, Plaintiff requests that the Court deny

6  Defendants' request for a protective order in this matter.

7      **C.    Attachment A, Item 19.**

8      Item 19:

9      A person most knowledgeable regarding:  Any and all substance-abuse programs conducted,

10  held administered, provided, or allowed by Defendant CDCR at the Sierra Conservation Center,

11  including all camps and divisions, from January 1, 1999 through the present day.

12      Objection to Item 19:

13      The plaintiff's claims in this case are premised on an approximately 10-minute interaction

14  between him and Mr. Pate on May 3, 2010.  Neither the plaintiff nor Mr. Pate was involved in

15  substance-abuse or religious programs at that time.  There is no basis then for testimony regarding

16  such programs *predating* the alleged interaction and *spanning a 13-year period*.  Accordingly,

17  this request is overbroad, vague and ambiguous, and encompasses information that is neither

18  relevant nor designed to lead to the discovery of admissible evidence. Moreover, this request

19  appears to be designed to impose annoyance, oppression, and undue burden on CDCR.

20      [With respect to documents related to this category of information,] the plaintiff's claims in

21  this case are premised on an approximately 10-minute interaction between him and Mr. Pate on

22  May 3, 2010.  Neither the plaintiff nor Mr. Pate was involved in religious programs at that time.

23  There is no basis then for information regarding such programs *predating* the alleged interaction

24  and *spanning a 13-year period*.  Accordingly, this request is overbroad, vague and ambiguous,

25  and encompasses information that is neither relevant nor designed to lead to the discovery of

26  admissible evidence. Moreover, this request appears to be designed to impose annoyance,

27  oppression, and undue burden on CDCR.  CDCR also objects to extent the request encompasses

28  information subject to the attorney-client privilege, the attorney work product doctrine

26

protections, official information privilege, deliberative process privilege, and to the extent it encompasses information that is otherwise protected by third-party privacy rights (e.g., the First Amendment to the United States Constitution, Article 1, § of California Constitution, and Penal Code § 832.7).

NOTE:  Through the meet and confer process, the dispute regarding this item has narrowed to such information from January 1, 2000 to December 31, 2003.

Defendant's Arguments for Protective Order re Item 19:

As with a "person most knowledgeable" deponent to speak to Mr. Mendoza's personnel information, the plaintiff uses this demand to get at the same information as sought in RFP No. 8 discussed above.  The sheer breath of the information sought here, for events and programs occurring up to twelve years prior to support a claim that Mr. Pate acted with bias towards Mr. Guthrey during a 10-minute interaction in May 2010, demonstrates the lack of merit to Mr. Guthrey's position that this request is warranted:  "*Any and all* substance-abuse programs conducted, held administered, provided, or allowed by Defendant CDCR at the Sierra Conservation Center, *including all camps and divisions*" between 2000 and 2003. (Emphasis added).

There is no argument that Mr. Pate was involved in any of these programs; Mr. Guthrey's counsel has asserted that her client's yoga and meditation group was "pushed out" of the programs in favor of Christian-based programming. Putting aside the accuracy of this (and CDCR denies the contention—as Mr. Guthrey was free to continue his wholly voluntarily work in providing a yoga and meditation program for inmates regardless of when or where he was rotated to different posts in the institution), even if true, that it in no way involved Mr. Pate and took place well-beyond the applicable limitations period means that such information is irrelevant to this case. As such, the Court should grant a protective order that relieves CDCR from complying with this otherwise overbroad and overly burdensome, oppressive demand.

Plaintiff's Arguments Against Protective Order re Item 19:

As discussed in support of Plaintiff's Argument to Compel Request No. 8, above, Plaintiff was responsible for the institution and teaching of a "Spiritual Awareness Program" as part of the

27

Sierra Conservation Center's Substance Abuse Program from approximately 2000 through 2003. Plaintiff has narrowed the request to encompass only the location where Plaintiff's program was instituted (the Sierra Conservation Center) and only the time during which Plaintiff was involved in and terminated from the program (January 1, 2000 through December 31, 2003).

In the interest of brevity, the relevancy of the requested information is summarized from above as follows: While overseeing and teaching the program, Plaintiff was subjected to harassment from his colleagues; Defendant Pate began derogatorily calling Plaintiff "Ragjeesh" after the program was instituted; Plaintiff was falsely accused of engaging in improper activities in retaliation for having instituted an Ananda Marga-based program; and Plaintiff's program was cancelled in 2003 as a result of his supervisor's disapproval of Plaintiff's religion.

The deposition of the CDCR's representative regarding the Substance Abuse Program at the Sierra Conservation Center from 2000 through 2003 is expected to provide information regarding the administration of substance abuse programs at the Sierra Conservation Center, including the standards applied to the teaching and administration of the programs, the inclusion or exclusion of faith-based teachings from the programs, and the criteria by which programs are evaluated for discontinuance.[4]

Because the information sought is directly relevant to Plaintiff's claim and because Plaintiff does not seek information regarding individual participants in the program, thereby avoiding third-party privacy concerns on behalf of the inmates, Plaintiff requests that the Court deny Defendants' request for a protective order in this matter.

///

///

///

///

///

_____

[4] In addition, Defendants' counsel has indicated that documents relating to the Substance Abuse Program may no longer be in existence, in which case the testimony of the CDCR will the only method of obtaining information related to the program.

Respectfully submitted,

DATED: July 27, 2012                                    SEIBERT & BAUTISTA


BY:   /s/ Shannon Seibert
      Shannon Seibert
      *Attorneys for Plaintiff*

DATED: July 27, 2012                                    KAMALA HARRIS
                                                        Attorney General of California




BY:   /s/ Michael Gowe
      MICHAEL GOWE
      Deputy Attorney General
      *Attorneys for Defendants*


SA2010103304
90257503.doc