1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RAYMOND GUTHREY, | ) | 1: 10-cv-02177-AWI-BAM |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER ON PLAINTIFF'S MOTION TO |
| v. | ) | COMPEL DISCOVERY; |
| | ) | |
| CALIFORNIA DEPARTMENT OF | ) | ORDER ON DEFENDANTS' MOTION FOR |
| CORRECTIONS AND REHABILITATION, | ) | A PROTECTIVE ORDER; |
| MICHAEL PATE, JR., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## I.   INTRODUCTION

Plaintiff Raymond Guthrey ("Plaintiff") brings this employment discrimination action against the California Department of Corrections and Rehabilitation ("CDCR") and Michael Pate, Jr. ("Pate") (CDCR and Pate are collectively referred to as the "Defendants"). (Doc. 2.)

On June 8, 2012, Plaintiff filed a motion to compel responses to Plaintiff's interrogatories and requests for production of documents ("Plaintiff's Motion to Compel"). (Doc. 46.) On June 20, 2012, Defendants filed a motion for a protective order regarding Plaintiff's Fed. R. Civ. P. 30(B)(6) deposition notice ("Defendants' Motion for a Protective Order"). (Doc. 49.) On June 27, 2012, the Court granted in part and denied in part Plaintiff's Motion to Compel. (Doc. 52.) The Court ordered the parties to continue to meet and confer, and submit additional briefing concerning other portions of Plaintiff's Motion to Compel. *Id.*

On July 12, 2012, at the joint request of the parties, the Court ordered the parties to consolidate the outstanding issues in their respective Motions into one Joint Statement for the

1

Court's consideration.  (Doc. 53.)  On July 27, 2012, the parties filed a Joint Statement addressing the remaining issues from their respective Motions.  (Doc. 54.)   On August 3, 2012, the Court heard oral argument on the parties' Motions.  Counsel Shannon Seibert appeared telephonically for Plaintiff.  Counsel Michael Gowe appeared telephonically for Defendants. Having considered the arguments presented in the Joint Statement, arguments presented at the August 3, 2012 hearing, as well as the Court's file, the Court issues the following Order.

## II.    FACTUAL BACKGROUND

Plaintiff is a 56-year-old Caucasian male who subscribes to the Ananda Marga faith, which is based on the Hindu religion.  (Pl.'s Second Amended Complaint ("SAC"), ¶ 9, Doc. 23.)  Followers of Ananda Marga believe in allowing the hair on their heads, faces and bodies to grow naturally.  *Id.*  In observance of his faith, Plaintiff maintains a full beard and long hair.  *Id.*

From 1984 until retirement in 2008, Plaintiff worked as a Correctional Counselor at the Sierra Conservation Center, a CDCR facility.  (SAC, ¶ 10.)  During that time, Plaintiff instituted a counseling program at the Sierra Conservation Center in which Ananda monks and nuns provided spiritual instruction to prisoners.  The monks invited by Plaintiff wore turbans upon their heads as they taught principles of yoga and meditation to the prisoners in workshops.  *Id.*

During his employment with Defendant CDCR, Plaintiff was subjected to offensive remarks by Defendant Pate.  (SAC, ¶ 11.)  For example, Plaintiff alleges Pate regularly called Plaintiff "Ragjeesh," and other slurs often directed towards persons of the Muslim faith or Middle Eastern/South Asian ancestry.  *Id.*

In early 2010, Plaintiff applied to participate in CDCR's Retired Annuitant Program as a Correctional Counselor on a contract basis.  (SAC, ¶ 12.)  On April 29, 2010, Pate contacted Plaintiff and stated that CDCR's personnel office had instructed him to extend an offer of employment to Plaintiff.  *Id.*  During the April 29, 2010 conversation, Pate and Plaintiff discussed CDCR's grooming standards.  (SAC, ¶ 14.)  Plaintiff was offered employment with CDCR's Sierra Conservation Center for a period of six months, renewable upon expiration of the contract.  *Id.*  Plaintiff accepted the offer of employment and agreed to begin working for CDCR on May 3, 2010.  *Id.*

On May 3, 2010, Plaintiff arrived at the Sierra Conservation Center to begin his position as a Retired Annuitant with CDCR.  Plaintiff was scheduled to attend a week-long training session.  As Plaintiff was entering the training session classroom, Pate "began gesturing wildly and jabbing his finger toward the door behind [Plaintiff] while staring directly at [Plaintiff]." Pate grabbed Plaintiff by the arm and forced him into the hallway.  Pate physically blocked Plaintiff from entering the classroom and told Plaintiff that "this" was not going to work, telling Plaintiff to leave the grounds immediately.  (SAC, ¶¶ 16, 17.)

Plaintiff alleges that Pate's actions were motived by his dislike of Plaintiff's religion, as well as his perception of Plaintiff's race and ancestry.  (SAC, ¶ 22.)  Plaintiff further alleges that there exists a culture of discrimination against non-Christians at CDCR's Sierra Conservation Center, and that Plaintiff was discriminated against because of his nonconformance with the majority belief system.

Plaintiff's SAC presents eight causes of action: (1) violation of Plaintiff's First Amendment Right to free exercise of religion (alleged against both Defendants); (2) violation of Plaintiff's Fourteenth Amendment right to due process (alleged against both Defendants); (3) violation of Plaintiff Fourteenth Amendment right to equal protection (alleged against both Defendants); (4) religious discrimination pursuant to 42 U.S.C. § 1983 (against Defendant Pate); (5) race discrimination pursuant to 42 U.S.C. § 1981 (against Defendant Pate); (6) religious discrimination pursuant to Title VII, 42 U.S.C. §§ 2000e *et seq.,* (against both Defendants); (7) race discrimination pursuant to Title VII, 42 U.S.C. §§ 2000e *et seq.,* (against both Defendants); and (8) intentional infliction of emotional distress (against Defendant Pate).

## II. DISCUSSION

### A.   Legal Standard For On A Motion to Compel Discovery

Rule 26(b) of the Federal Rules of Civil Procedure provides that any non-privileged material "that is relevant to any party's claim or defense" is within the scope of discovery. The court may allow discovery of any material "relevant to the subject matter involved in the action," not just the claims or defenses of each party, if there is good cause to do so.  Fed. R. Evid. 401 defines "relevant evidence" as "evidence having any tendency to make existence of any fact that

is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 402 provides that all relevant evidence is admissible except as otherwise provided by the U.S. Constitution, Act of Congress, or applicable rule of Federal Rules of Evidence.

Relevance requires only that the evidence have "any" tendency to prove or disprove "any" consequential fact.  This test incorporates two separate components: (1)  Logical relevance, meaning the evidence must have some tendency, however slight, to make any fact more or less probable; and (2) Legal Relevance, meaning the evidence must relate to a fact "of consequence" to the case, i.e., will the "fact" that the evidence is offered to establish help in determining some issue in the case?  *See,* Jones & Rosen, Federal Civil Trials and Evidence (2011) Evidence, para. 8:111, p. 8B-2.  If the inference to be drawn from the evidence is the result of speculation or conjecture, the underlying evidence is not relevant.  *See Engstrand v. Pioneer Hi-Bred Int'l*, 946 F.Supp. 1390, 1396 (S.D. Iowa 1996), *aff'd* 112 F.3d 513 (8th Cir. 1997).  "[T]he standard of relevancy is not so liberal as to allow a party to . . . explore matter which does not presently appear germane on the theory that it might conceivably become so."  *Food Lion v. United Food & Comm'l Workers Union,* 103 F.3d 1007, 1012-1013 (D.C. Cir. 1997)(internal quotes omitted).

A responding party that objects to interrogatories or requests for production of documents is required to state objections with specificity.  Fed. R. Civ. P. 33(b)(4), 34(b)(2)(B).  If the party requesting discovery is dissatisfied with any of the responses, the party may move to compel further responses by informing the court "which discovery requests are the subject of [the] motion to compel, and, for each disputed response, inform the [c]ourt why the information sought is relevant and why [the opposing party's] objections are not justified." *Ellis v. Cambra*, No. 02-cv-5646 AWI (SMS), 2008 WL 860523, at *4 (E.D. Cal. Mar. 27, 2008); *Brooks v. Alameida*, No. 03-cv-2343 JAM (EFB), 2009 WL 331358 (E.D. Cal. Feb. 10, 2009).

The court must limit discovery if the burden of the proposed discovery outweighs its likely benefit.  Fed. R. Civ. P. 26(b)(2)(C)(iii).  "In each instance [of discovery], the determination whether ... information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action." Fed. R. Civ. P. 26 Advisory

4

1    Committee's note (2000 Amendment) (Gap Report)(Subdivision (b)(1)).

2    **B.    Plaintiff's Discovery Requests**

3         **1.    Interrogatory No. 12**

4              Please identify (by name, job title, home address, and phone number) each and
              every person who was present in the In Service Training Room at the Sierra
5              Conservation Center on May 3, 2010.

6    (Joint Discovery Statement, 4: 1-4, Doc. 54.)  Through the meet and confer process, the dispute

7    regarding this interrogatory has been narrowed to home addresses and telephone numbers for

8    each individual.[1]  *Id.* at 4: 15-16.  Defendants state they will not release the addresses and phone

9    numbers of correctional peace officers to individuals outside CDCR because such disclosures

10   could put these men and women, as well as their families, at risk of serious physical injury or

11   death at the hands of former or current inmates.[2]

12        Defendants do not challenge the relevancy of the witnesses; rather, Defendants state that

13   these witnesses cannot be contacted directly by Plaintiff's counsel because they are "represented

14   parties" under California Rules of Professional Responsibility 2-100.  Accordingly, Defendants

15   argue that Plaintiff would be required to depose these individuals.  Plaintiff disputes these

16   individuals are represented parties within the intended meaning of Rule 2-100.  However,

17   Plaintiff expressed a willingness to limit his contact with these individuals to depositions,

18   provided Plaintiff be permitted to take in excess of the ten depositions allowed under Fed. R.

19   Civ. P. 30.  Defendants would not stipulate to more than ten depositions.  Accordingly, the Court

20   must determine (1) whether the individuals identified in response to Plaintiff's Interrogatory No.

21   12 are "represented parties" within the meaning of California Rule of Professional Responsibility

22

23        [1] Of the nineteen potential witnesses to Pate's and Plaintiff's interaction, nine are correctional officers (non-
     supervisory), five are sergeants (supervisory), one is a lieutenant (supervisory), and four are unidentified.
24

25        [2] Aside from this lone statement by Defendants, the parties to not address the privacy rights of the potential
     witness employees, nor do they offer any analysis regarding the benefits and burdens of producing this information.
26   Rather, the parties exclusively focus on whether these employees can be contacted directly under California Rule of
     Professional Conduct 2-100, and, if so, whether more than ten depositions should be permitted.  The Court notes,
27   however, its agreement with Defendants that the burden, i.e., the potential for harm to CDCR employees and their
     families, outweighs any likely benefit from releasing the home addresses of CDCR employees.  For this reason alone,
     the Court denies Plaintiff's Motion to compel further responses to Plaintiff's Interrogatory No. 12. *See,* Fed. R. Civ.
28   P. 26(b)(2)(C)(iii).  Nonetheless, the Court focuses on the parties' arguments to provide guidance.

1   2-100; and (2) if so, whether Plaintiff should be permitted to take in excess of ten depositions.[3]

2   **I.      CDCR Employees Are Represented Parties Under Rule 2-100**

3   Local Rule 180(e) states that attorneys before this court must comply with the Rules of

4   Professional Conduct of the State Bar of California (hereafter "California Rules").  California

5   Rule of Professional Responsibility Rule 2-100 states:

6   > (A) While representing a client, a member shall not communicate directly or
    > indirectly about the subject of the representation with a party the member knows
7   > to be represented by another lawyer in the matter, unless the member has the
    > consent of the other lawyer.

8
9   > (B) For purposes of this rule, a "party" includes:

10  > > (1) An officer, director, or managing agent of a corporation or association,
    > > and a partner or managing agent of a partnership; or

11  > > (2) An association member or an employee of an association, corporation,
12  > > or partnership, if the subject of the communication is any act or omission
    > > of such person in connection with the matter which may be binding upon
13  > > or imputed to the organization for purposes of civil or criminal liability or
    > > whose statement may constitute an admission on the part of the
    > > organization.

14
15  > (C) This rule shall not prohibit:

16  > > (1) Communications with a public officer, board, committee, or body; or

17  > > (2) Communications initiated by a party seeking advice or representation
    > > from an independent lawyer of the party's choice; or

18  > > (3) Communications otherwise authorized by law.

19  Plaintiff argues that employees of the State of California are "public officers," and thus,

20  are not a "party" under Rule 2-100(C)(1).  Plaintiff further argues that Rule 2-100 applies only to

21  "managing agents" who have "actual authority . . . sufficient to give them the right to speak for,

22  and bind, the corporation," citing *Snyder v. Superior Court,* 113 Cal. App. 4th 1187, 1209 (2003).

23  Defendants respond that, to the extent management-level employees are involved, i.e.,

24  supervisory employees, Rule 2-100(B)(1) prohibits such contact.  Defendants additionally argue

25  that even "rank-and-file" employees of CDCR can not be contacted by Plaintiff, citing *United*

26
27      [3] Plaintiff has not formally requested permission to take in excess of ten depositions.  However, after
28  reviewing Plaintiff's arguments, the Court has construed Plaintiff's position, as an alternative to the Court granting
    Plaintiff's motion to compel, as requesting leave to take in excess of ten depositions.

1    *States v. Sierra Pacific Industries,* 2011 WL 5828017 (E.D. Cal. 2011).

2              **a.**          **CDCR Employees Are Not Public Officials Within the**

3                                         **Intended Meaning of Rule 2-100**

4            CDCR employees are not "public officers" within the meaning of Rule 2-100(C)(1).  The

5    Eastern District of California considered this issue in *U.S. v. Sierra Pacific Industries ("Sierra*

6    *I")*, 759 F. Supp.2d 1206 (E.D. Cal. 2010), and the Court finds its reasoning persuasive.  In

7    *Sierra I,* an attorney for a private litigant informally contacted non-managing employees of the

8    U.S. Forest Service, which occurred without notice to or consent from attorneys representing the

9    United States in the litigation.  *Id.* at 1207-09.  The plaintiff's attorneys in that case argued the

10   U.S. Forest employees were "public officers."

11           *Sierra I,* citing a proposed, but not formally adopted, opinion by the state bar, found that

12   the public officer exception allows for contact with a represented party or employee if the

13   communication is with:

14           a person whom a communication would be constitutionally protected by the First
             Amendment right to petition the government. Such a person would be one who,
15           for example, has the authority to address, clarify or alter governmental policy; to
             correct a particular grievance; or to address or grant an exemption from
16           regulation.

17   *Sierra I,* 759 F. Supp. at 1209, citing Proposed Formal Opinion Interim No. 98–0002.  The

18   "public official" exemption applies only when an individual "exercise[s] [] the right to petition a

19   policy level government official for a change in policy or to redress a grievance."  *Id.* at 1213.

20   As *Sierra I* explained, a contrary finding would be untenable:

21

22           To suggest that the "public official" exception to the rule permits unfettered
             access to the employees in question here, regardless of the purpose, carries the
23           exception too far. SPI's counsel argues for an exception so broad that it eviscerates
             the rule by the mere presence of the government in the litigation. Absent an
24           appropriate exercise of the First Amendment right to seek governmental redress of
             a grievance(s) or to decide or address a particular issue before the official being
25           contacted, these exceptions have no application here.

26   *Id.* at 1213.

27           A finding that any state or federal employee is a "public officer" exempt from the

28   prohibitions of Rule 2-100 would devour the Rule.  A more reasonable interpretation of this

Rule, grounded in the proposed opinions of the California State Bar, is that this exemption

applies only to an individual who exercises his First Amendment right to petition a policy level

official for a change in policy or to address a grievance.

### b.   CDCR Employees Are Parties Under Rule 2-100

Rule 2–100(B)(2) dictates that a "represented party" exists when:

> An association member or an employee of an association, corporation, or
> partnership, if the subject of the communication is any act or omission of such
> person in connection with the matter which may be binding upon or imputed to
> the organization for purposes of civil or criminal liability or whose statement may
> constitute an admission on the part of the organization.

The admissions or statements of CDCR employees may constitute admissions on the part

of CDCR.  The Eastern District of California has previously addressed the applicability of Rule

2-100(B)(2) under circumstances such as these.  In *U.S. v. Sierra Pacific Industries ("Sierra II")*,

2011 WL 5828017 (E.D. Cal. 2011), the Court found a violation of Rule 2-100 when an expert

retained by the plaintiffs directly contacted employee witnesses of the United States.  *Id.* at *2.

As Plaintiff does here, the *Sierra II* plaintiffs argued that, under *Snyder v. Superior Court,* 113

Cal. App. 4th 1187 (2003)*,* low level employee statements do not constitute admissions on the

part of the government agency because the employees were not of the requisite level of authority

to speak on behalf of the government agency.  *Id.* at *5.

*Snyder* found that Rule 2–100 had not been violated where the employees who had been

contacted were not officers, directors and managing agents of the organization; had not been

interviewed about their own actions and omissions, but merely their percipient knowledge; and

were not "high-ranking executives and spokespersons" with the authority to make an admission

on behalf of the organization.  *Snyder v. Superior Court*, 113 Cal. App. 4th 1187 (2003).  "But

*Snyder* is not persuasive here because that case applied California evidence law, whereas federal

evidence law applies here."  *See, U.S. v. Sierra Pacific Industries,* 2011 WL 5828017 (E.D. Cal.

2011).

Fed. R. Evid. 801(d)(2) defines a party admission as "a statement made by the party's

agent or servant concerning a matter within the scope of the agency or employment, made during

the existence of the relationship."  Here, Plaintiff is attempting to elicit statements from CDCR

employees concerning the substance of Plaintiff's civil claims.  These statements, if made, would

concern a matter within the scope of his or her employment, during the existence of that

employment relationship.  Thus, a statement from a CDCR employee may be imputed to CDCR

in a manner creating civil liability.  Under Rule 2–100(B)(2), in conjunction with the Federal

Rules of Evidence, such an employee is a represented party.  *See, U.S. v. Sierra Pacific*

*Industries,* 2011 WL 5828017 (E.D. Cal. 2011).

As the witness employees identified in response to Plaintiff's Interrogatory No. 12 are

"represented parties" under California Rule of Professional Conduct 2-100, Plaintiff may not

contact them directly, without the consent of Defendants' counsel.

### ii.     Good Cause Does not Exist to Grant Plaintiff Additional Depositions

Federal Rule of Civil Procedure 30(a)(2) presumptively limits the number of depositions

that each side may take. "A party must obtain leave of court, and the court must grant leave to the

extent consistent with Rule 26(b)(2) ... if the parties have not stipulated to the deposition and ...

the deposition would result in more than 10 depositions being taken under this rule or Rule 31 by

the plaintiffs, or by the defendants, or by the third-party defendants ..." Fed. R. Civ. P. 30(a)(2).

Under Rule 26(b)(2), "the court may alter the limits in these rules on the number of depositions

and interrogatories or on the length of depositions and interrogatories or on the length of

depositions under Rule 30." Fed. R. Civ. P. 26(b)(2)(A).  In general, if the parties cannot agree to

exceed the ten allowed depositions per side, more than ten must be justified under the "benefits

vs. burdens" approach of Rule 26(b)(2). *See* Advisory Comm. Notes to Rule 30(a)(2).

Under Rule 26(b)(2) the Court will consider whether: (I) the discovery sought is

unreasonably cumulative or duplicative, or is obtainable from some other source that is more

convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

the litigation, and the importance of the proposed discovery in resolving the issues. *Authentex,*

1   *Inc. v. Atrua Tech., Inc.,* 2008 WL 5120767 (N. D. Cal. 2008). *See Smith v. Ardew Wood*

2   *Products, Ltd.*, 2008 WL 4837216 (W.D. Wash. 2008).  A party seeking to exceed the

3   presumptive number of depositions must make a particularized showing of the need for the

4   additional discovery.  *Bell v. Fowler*, 99 F.3d 262, 271 (8th Cir.1996).  To that end, courts will

5   generally not grant leave to expand the number of depositions until the moving party has

6   exhausted the ten depositions permitted as of right under Rule 30(a)(2).  *See*, *Authentex, Inc. v.*

7   *Atrua Tech., Inc.,* 2008 WL 5120767 (N. D. Cal. 2008).

8        At this juncture, Plaintiff has not demonstrated the benefits of obtaining additional

9   depositions outweighs the burden imposed on Defendants.  Plaintiff has not taken the depositions

10  of any of the potential witnesses to Pate's and Plaintiff's interaction.  Neither the parties, nor the

11  Court, has any information whether nineteen additional depositions of individuals who

12  potentially witnessed the same brief occurrence (1) would be unreasonably cumulative or

13  duplicative; or (2) would be overly burdensome considering the potential benefit or the

14  importance of taking every one of these depositions.  Plaintiff has failed to explain why the

15  testimony of nineteen individuals is necessary to lay the foundation for an admittedly brief

16  factual occurrence.  Indeed, Plaintiff previously stated in his deposition that he was aware of only

17  two individuals who witnessed the altercation.  Neither of these individuals, however, have been

18  deposed by Plaintiff.  It appears to the Court that the information Plaintiff seeks can be obtained

19  from a sampling of these individuals.  Thus, without a more particularized showing, deposing all

20  nineteen of these employees would be unreasonably cumulative and duplicative. Should Plaintiff

21  determine there is good cause for taking more than ten depositions after deposing some of these

22  potential witnesses, the parties should meet and confer to readdress this issue.

23        Accordingly, the Court DENIES Plaintiff's Motion to Compel further responses to

24  Plaintiff's Interrogatory No. 12.  Additionally, the Court DENIES Plaintiff's request to take more

25  than ten depositions.

26        **2.    Request for Production No. 6**

27        All DOCUMENTS that constitute, make up, are a part of, or are incorporated into
    Michael Pate, Jr.'s personnel file including, but not limited to, all employment
28      applications and interviews, pay records, work history records, work performance

1
2
3
4

and work evaluations, records of disciplinary action taken or requested, attendance
records, promotions, supervisors' remarks, company benefits, retirement plans
and pension programs pertaining to the employment of Michael Pate, Jr., all
grievances and dispositions, and all other information as is contained in Michael
Pate, Jr.'s personnel file for Michael Pate, Jr.'s entire employment tenure at the
California Department of Corrections and Rehabilitation.

5

(Joint Discovery Statement, 9: 15-23, Doc. 54.)   Through the meet and confer process, this

6

request has been narrowed to the following categories of documents in Mr. Pate's personnel file:

7

(1) Pate's application and resume; (2) performance reviews or work evaluations conducted of

8

Mr. Pate during his tenure at CDCR; (3) records of Mr. Pate's work performance, including

9

attendance records and supervisor's remarks; and (4) records of commendation or promotion

10

conferred on Mr. Pate during his tenure at CDCR.  *Id.* at 10: 6-14.

11

Defendants object to this request as irrelevant, over broad, and protected by Pate's

12

privacy rights.[4]  Defendant further argues that the only relevant information in Pate's personnel

13

file would concern prior discrimination complaints - of which there are none.  Plaintiff argues

14

that information concerning Pate's work history and performance reviews is relevant to Pate's

15

credibility.

16

Plaintiff's discovery request, even in its narrowly tailored form, is over broad, and

17

ultimately seeks irrelevant information.  The Court agrees that there may be information in Pate's

18

personnel file relevant to the subject matter of the pending action.  Indeed,"[r]esumes and

19

employment applications in the personnel files of named defendants are relevant to employer's

20

knowledge of a harasser's prior history of harassment and, thus, relate to the claim against

21

defendant . . ." *Ragge v. MCA/Universal Studios,* 165 F.R.D. 601 (C.D. Cal. 1995).  Moreover,

22

information such as promotions, demotions, disciplinary proceedings, work evaluations, and

23

performance reviews, among other things, *could* be relevant.  *See, Id.*  However, this information

24
25
26
27
28

[4] The privacy concerns raised by the Defendants are legitimate concerns.  Federal common law
acknowledges a qualified privilege for official information, including government personnel files.  *Sanchez v. City of
Santa Ana,* 936 F.2d 1027, 1033 (9th Cir.1990, as amended, 1991) (police officer personnel files in national origin
discrimination action), *cert. denied,* 502 U.S. 957, 112 S. Ct. 417, 116 L.Ed.2d 437 (1991).  However, "a carefully
drafted protective order could minimize the impact" of disclosure.  *Soto v. City of Concord,* 162 F.R.D. 603 (N.D.
Cal.1995).  Here, the parties have entered into such a protective order.  (Doc. 42.)  Defendants do not argue that the
protective order currently in place is inadequate to protect Pate's privacy rights.  At oral argument, defendant stated
the concern was the relevancy of the information.

1    is only relevant to the extent these categories of information relate to Pate's interactions with

2    Plaintiff or other instances of harassment or discrimination. *Burgess v. Wm. Bolthouse Farms,*

3    *Inc.,* 2009 WL 4810170 (E.D. Cal. 2009)

4         In *Burgess,* the plaintiff filed a Title VII racial discrimination complaint, and

5    subsequently sought to compel the personnel file of his coworker and alleged harasser. *Id.* at *1.

6    In determining the relevant information to be obtained from an accused harasser's personnel file,

7    *Burgess* stated the following:

8         In this case, information relating to any previous complaints of harassment by Mr.
          Solis, as well as any information relating to Mr. Ellis' past involvement with Ms.
9         Solis' employment actions are relevant given Plaintiff's allegations of racial
          harassment and retaliation. This information is also relevant for purposes of
10        assessing Mr. Ellis' credibility and any potential bias. However, the Court also
          recognizes that Mr. Solis' personnel file may contain information including
11        personal information such as rates of compensation, personal earnings, and other
          incidents of discipline. Thus, the Court must balance the interests of both parties.
12
          Therefore, Defendant shall not be required to produce Mr. Solis' entire personnel
13        file. Instead, Defendant shall produce any document or other information it has in
          its possession (whether or not it is in the personnel file), up until the present date,
14        that relates to any misconduct involving claims of discriminatory or harassing
          conduct by Mr. Solis. This includes all substantiated claims, as well as any claims
15        which were ultimately determined to be unfounded. Additionally, Defendant shall
          produce any document or other information in its possession that relates to Mr.
16        Solis' employment actions in which Mr. Ellis played a role, regardless of whether
          the action related to complaints of harassment.
17

18   *Id.* at *3. *See also, Frederick v. California Dept. Of Corrections and Rehabilitation,* 2011 WL

19   1884201 (N. D. Cal. 2011) (finding that while "at least some portion of the personnel" file is

20   relevant to plaintiff's claims, such discovery requests must be tailored to relate to the issues

21   involved in proving plaintiff's claims).

22        The Court agrees with the reasoning in *Burgess.* Information contained in Pate's

23   personnel file may be relevant to Plaintiff's claims as tending to show similar conduct or bear

24   upon credibility.

25        Accordingly, the Court GRANTS IN PART and DENIES IN PART Plaintiff's Motion to

26   Compel responsive documents to Plaintiff's Request for Production No. 6.  The Court GRANTS

27   Plaintiff's Motion to Compel to Plaintiff's Request for Production No. 6 as follows: Defendants

28   shall produce performance reviews or work evaluations from January 1, 2005 until the present

1   date, that relate to any misconduct involving claims of discriminatory or harassing conduct by

2   Pate. This includes all substantiated claims, as well as any claims which were ultimately

3   determined to be unfounded.  Complaints of misconduct by inmates are excluded from this

4   definition.  Additionally, Defendant shall produce any document or other information in Pate's

5   personnel file that relates to plaintiff.  Defendants shall also produce Pate's resume and records

6   of commendation or promotion conferred on Pate from January 1, 2005 to the present.  In all

7   other respects, Plaintiff's Motion to compel responsive documents to Plaintiffs Request for

8   Production No. 6 is DENIED.

9            **3.    Request for Production No. 8**

10          All DOCUMENTS that REFER OR RELATE to any Substance Abuse Programs
            provided to inmates at the Sierra Conservation Center between January 1, 2000
11          and the present day.

12  (Joint Discovery Statement, 12: 21-22, Doc. 54.)  Through the meet and confer process, the

13  dispute regarding this request has narrowed to responsive documents from between 2000 to 2003

14  (and with inmate names redacted, if any), which reflects the time period that Plaintiff

15  administered a meditation and yoga class as part of the substance abuse program at SCC.  *Id.* at

16  13: 8-11.

17          Defendants object to this request as being irrelevant and over broad.  Specifically,

18  Defendants argue that documents from nine-to-twelve years ago is beyond the scope of this

19  litigation, as well as beyond applicable statutes of limitations.  Defendants additionally argue that

20  any documents relating to substance abuse programs other than those initiated by Plaintiff are

21  over broad and irrelevant.

22          Plaintiff argues that he suffered discrimination and ridicule for creating the Ananda

23  Marga-based program.  Plaintiff further argues that although any such claims are no longer

24  actionable, acts of discrimination outside applicable statutes of limitations are nonetheless

25  relevant as evidence of a defendant's animus.  Plaintiff makes no argument concerning the

26  relevance of, or need for documents relating to other substance abuse programs.

27          Information and documents relating the Ananda Marga-based program previously

28  instituted by Plaintiff are relevant to the subject matter involved in the action.  Information

1  evidencing animosity or contempt for Plaintiff's Ananda Marga-based program could make the

2  existence of Plaintiff's discrimination claims more or less probable. Pretext may also be shown

3  by circumstantial evidence that casts doubt on whether the employer's stated reason was the true

4  reason for its action, creating an inference that the employer acted for some other, discriminatory

5  reason. *See Cornwell v. Electra Central Credit Union,* 439 F.3d 1018, 1030–1031 (9th Cir.

6  2006).

7        However, Plaintiff's request for *all* documents relating to the Ananda Marga-based

8  substance abuse program is over broad, and would require production of irrelevant documents

9  and documents which potentially infringe on the privacy rights of inmates participating in the

10  program.  Documents that may "refer or relate" to this program may include a host of potentially

11  sensitive and confidential medical information.  Such information is irrelevant to Plaintiff's

12  claims, and would infringe on the privacy rights of prisoners.

13        Moreover, documents relating to substance abuse programs wholly unrelated to the

14  Ananda Marga-based program initiated by Plaintiff are irrelevant.  Such information or

15  documentation has no bearing on any of Plaintiff's claims, nor are they reasonably calculated to

16  lead to admissible evidence.

17        With this understanding, documents that describe, summarize or otherwise explain the

18  program, including revisions or modifications to these programs, as well as documents

19  identifying the organizers of the program, e.g., Plaintiff, are reasonably calculated to lead to

20  admissible evidence.  As Plaintiff claims discrimination based on his Ananda-Marga faith, such

21  documents may demonstrate Plaintiff's open and notorious practice of the faith, as well as his

22  efforts to introduce certain aspects of the faith to others.  Documents and information of this type

23  could make the existence of Plaintiff's discrimination claims more or less probable.

24        Accordingly, the Court GRANTS IN PART, and DENIES IN PART, Plaintiff's Motion

25  to Compel responses to Request for Production No. 8.  The Court ORDERS Defendants to

26  produce documents created between 2000 to 2003 that describe, summarize or otherwise explain

27  the Ananda Marga-based program, including revisions or modifications to these programs, as

28  well as documents identifying the organizers of the program.  In all other respects, Plaintiff's

1    request is DENIED.

2        **4.**     **Request for Production No. 28**

3          All DOCUMENTS that constitute, make up, are a part of, or are incorporated into
     Rafael Mendoza's personnel file including but not limited to, all employment

4          applications and interviews, pay records, work history records, work performance
     and work evaluations, records of disciplinary action taken or requested, attendance

5          records, promotions, supervisors' remarks, company benefits, retirement plans
     and pension pertaining to the employment of Rafael Mendoza, all grievances and

6          dispositions, and all other information as is contained in Rafael Mendoza's
     personnel file for Rafael Mendoza's entire employment tenure at the California

7          Department of Corrections and Rehabilitation.

8    (Joint Discovery Statement, 9: 15-23, Doc. 54.)  Through the meet and confer process, the parties

9    have narrowed the scope of this request to the following information: (1) Mr. Mendoza's

10   application and resume; (2) records of interviews in which Mr. Mendoza participated; (3)

11   performance reviews or work evaluations conducted of Mr. Mendoza during his tenure at CDCR;

12   (4) records of Mr. Mendoza's work performance, including attendance records and supervisor's

13   remarks; (5) records of commendation or promotion conferred on Mr. Mendoza during his tenure

14   at CDCR; (6) records of disciplinary actions contemplated or instituted against Mr. Mendoza

15   during his tenure at CDCR; (7) records of oral or written grievances or complaints made against

16   Mr. Mendoza during his tenure at CDCR; and (8) records of oral or written grievances or

17   complaints made by Mr. Mendoza during his tenure at CDCR. *Id.* at 16-17.  Additionally,

18   Defendants have disclosed to Plaintiff that there are no records regarding Mr Mendoza's

19   employment during the period prior to this hiring as a retired annuitant; thus the dispute here

20   encompasses only those personnel records from Mr. Mendoza's employment as a retired

21   annuitant. *Id.* at 17: 9-12.

22         Plaintiff argues that Mr. Mendoza is similarly situated to Plaintiff in that Mr. Mendoza

23   wears long hair, a beard, and works as a Retired Annuitant.  Plaintiff argues Mr. Mendoza was

24   permitted to work despite being out of compliance with CDCR's grooming policies because he

25   was a Christian.  Plaintiff argues Mr. Mendoza's personnel file, thus, is reasonably calculated to

26   lead to admissible evidence that he received favorable treatment, despite similar grooming to that

27   of Plaintiff.

28         Defendants object to producing this information on grounds of relevance.  Defendants

argue that because Pate did not hire or supervise Mr. Mendoza, and Mr. Mendoza never claimed any form of discrimination, his personnel file is irrelevant to Plaintiff's claims.

Defendant's "same supervisor" argument is too narrow.  In the Ninth Circuit, the question of "whether two employees are similarly situated is ordinarily a question of fact." *Beck v. United Food & Commercial Workers Union Local 99*, 506 F.3d 874, 885 n. 5 (9th Cir. 2007).  The employees' roles need not be identical; they must only be similar "in all material respects." *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006); *see also Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 660 (9th Cir.2002).  Materiality will depend on context and the facts of the case.  *Hawn v. Executive Jet Management, Inc.,* 615 F.3d 1151, 1157 (9th Cir. 2010).

If, from a grooming and employment standpoint, Mr. Mendoza was similarly situated to Plaintiff, and Mr. Mendoza received favorable treatment, Mr. Mendoza's personnel file may contain evidence of such favorable treatment.  Defendants argument that Mr. Mendoza's physical characteristics will not be reflected in his personnel file misses the point.  If Plaintiff can otherwise demonstrate Mr. Mendoza and Plaintiff are similarly situated individuals, Plaintiff may be able to offer evidence, i.e., performance reviews, promotions, etc., that Mr. Mendoza was treated favorably in comparison to Plaintiff.  The information contained in Mr. Mendoza's personnel file is reasonably calculated to lead to admissible evidence.

Accordingly, the Court GRANTS IN PART and DENIES IN PART Plaintiff's Motion to Compel responsive documents to Plaintiff's Request for Production No. 28.  The Court ORDERS Defendants to produce documents as follows (1) application and resume, (2) interview of Mr. Mendoza for the retired annuitant position, (3) performance reviews or work evaluations conducted of Mr. Mendoza in the retired annuitant position, (4) records of commendation or promotion conferred on Mr. Mendoza in the retired annuitant position, (5) grievances or complaint made by Mr. Mendoza in the retired annuitant position**.**

**C.**    **Defendants' Motion for a Protective Order**

Since CDCR filed its motion for a protective order, the parties have informally resolved the bulk of issues.  (Joint Discovery Statement, 19-20, Doc. 54.)  Defendants object to the following items in Attachment A to Plaintiff's Rule 30(B)(6) deposition notice:

Item 10:

A person most knowledgeable regarding: The application, screening, selection and hiring of Theresa Howell to Position No. 099-222-9904-007 in 2010.

Item 11:

A person most knowledgeable regarding: The application, screening, selection and hiring of Theresa Howell to Position No. 099-222-9904-005 in 2010.

Item 12:

A person most knowledgeable regarding: The application, screening, selection hiring and/or firing of Rafael Mendoza to, for, or from the position of Correctional Counselor I as a Retired Annuitant in 2010 and/or 2011.

Item 19:

A person most knowledgeable regarding: Any and all substance-abuse programs conducted, held administered, provided, or allowed by Defendant CDCR at the Sierra Conservation Center, including all camps and divisions, from January 1, 1999 through the present day.

## 1.    Legal Standard

Fed. R. Civ. P. 26(c) provides that a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Protective orders provide a safeguard for parties and other persons in light of the otherwise broad reach of discovery. Fed. R. Civ. P. 26(c), Advisory Comm. Notes (1970); *United States v. Columbia Broadcasting System, Inc.*, 666 F.2d 364, 368–369 (9th Cir. 1982).  Similarly, Fed. R. Civ. P. 30(d)(3) permits the Court to limit or terminate a deposition if "it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party."  The Court may order that the deposition be terminated or may limit its scope and manner as provided in Rule 26(c).

In order to establish good cause for issuance of a protective order, the party seeking protection bears the burden of showing that specific prejudice or harm will result if no protective order is granted. *See Beckman Indus., Inc. v. International Ins. Co.*, 966 F.2d 470, 476 (9th Cir.1992) (holding that broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test); *see also San Jose Mercury News, Inc. v. United States Dist. Court,* 187 F.3d 1096, 1103 (9th Cir. 1999) (holding that to gain a protective

1   order the party must make a particularized showing of good cause with respect to any individual

2   document).  If a court finds particularized harm will result from disclosure of information to the

3   public, it then balances the public and private interests to decide whether a protective order is

4   necessary. *See Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3rd Cir.1995).  A court

5   should not prohibit a relevant deposition "absent extraordinary circumstances" because such a

6   prohibition would "likely be in error."  *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir.1979).

7       **2.     Items No 10 & 11**

8       Defendants object to this category of information because Ms. Howell, a woman, is not

9   subject to the same grooming standards as male CDCR employees.  Thus, Defendants argue,

10  general information concerning her hiring and placement at CDCR is irrelevant.  Defendant also

11  argues that Pate did not do the hiring for these positions.

12      Plaintiff argues that the position to which Plaintiff was hired and terminated from on May

13  3, 2010 was Position No. 099-222-9904-**005**.  Defendants' records indicate that Ms. Howell was

14  hired as a Retired Annuitant Correctional Counselor to Position No. 099-222-9904-**007** in April

15  of 2010.  Defendants' records later indicate that Ms. Howell was assigned to Position No 099-

16  222-9904-**005** (Plaintiff's former position) on May 31, 2010.  Plaintiff argues that Ms. Howell

17  does not subscribe to the Ananda Marga faith, and testimony as to whether the position was filled

18  by an individual outside a protected class is relevant to Plaintiff's claims.  Plaintiff further argues

19  that information concerning the application, screening, selection and hiring of Ms. Howell is

20  relevant to Plaintiff's claims.

21      Testimony concerning Ms. Howell's employment with CDCR has some tendency to

22  make Plaintiff's allegations of discrimination more or less probably.  Plaintiff alleges a

23  discriminatory practice or policy within the CDCR.  A claim for disparate treatment religious

24  discrimination under Title VII requires Plaintiff to establish  similarly situated individuals

25  outside his protected class were treated more favorably, or other circumstances surrounding the

26  adverse employment action give rise to an inference of discrimination. *Peterson v.*

27  *Hewlett-Packard Co.,* 358 F.3d 599, 603 (9th Cir. 2004) *; Lyons v. England*, 307 F.3d 1092,

28  1112-14 (9th Cir. 2002).

1    While Ms. Howell is not necessarily similarly situated to Plaintiff, she did assume

2    Plaintiff's previous position.  Moreover, although Ms. Howell is not subject to the *same*

3    grooming standards as Plaintiff, she is nonetheless subject to grooming standards.  *See* Joint

4    Discovery Statement, 21: 20-21, Doc. 54) ("Female employees hair shall not extend below the

5    *bottom* of the collar") (emphasis in original).  Information relating to Ms. Howell's pre-

6    employment screening  is relevant to Plaintiff's discrimination claims.

7        Accordingly, the Court DENIES Defendants' Motion for a protective order regarding

8    Items 10 and 11.

9        **3.     Item No. 12**

10       The parties make the same arguments for and against the need for Defendants to provide

11   a person most knowledgeable of Rafael Mendoza's employment with CDCR that were made

12   with respect to Plaintiff's Request for Production of Documents No. 28.  (Joint Discovery

13   Statement, 23-26, Doc. 54.)  For the same reasons discussed above, *supra* Section III.B.4, the

14   Court DENIES Defendants' Motion for a protective order regarding Item No. 12.

15       **4.     Item No. 19**

16       The parties make the same arguments for and against the need for Defendants to provide

17   a person most knowledgeable of any substance abuse programs provided to inmates at the Sierra

18   Conservation Center between the years 2000 and 2003 as were made in Plaintiff's Request for

19   Production of Documents No. 8.  (Joint Discovery Statement, 26-28, Doc. 54.)  For the same

20   reasons discussed above, *supra* Section III.B.3, the Court GRANTS in part and DENIES in part

21   Defendants' Motion for a protective order regarding Item No. 19.

22       The Court DENIES Defendants' Motion for a protective order with respect to information

23   concerning Plaintiff's Ananda Marga-based substance abuse program.  The Court GRANTS

24   Defendants' Motion for a protective order with respect to all other substance abuse programs at

25   the Sierra Conservation Center.

26   /////

27   /////

28   /////

# IV.   CONCLUSION

Based on the foregoing, the Court orders as follows:

1.   The Court DENIES Plaintiff's Motion to Compel further responses to Plaintiff's Interrogatory No. 12;

2.   The Court DENIES Plaintiff's request to take more than ten depositions;

3.   The Court GRANTS IN PART and DENIES IN PART Plaintiff's Motion to Compel responsive documents to Plaintiff's Request for Production No. 6, Request for Production No. 8, and Request for Production No. 28 as stated more fully in this order.

4.   The Court DENIES Defendants' Motion for a protective order regarding Items 10 and 11;

5.   The Court DENIES Defendants' Motion for a protective order regarding Item No. 12; and

6.   The Court GRANTS IN PART, and DENIES IN PART, Defendants' Motion for a protective order with respect to Item 19.  The Court DENIES Defendant's Motion for a protective order with respect to information concerning Plaintiff's Ananda Marga-based substance abuse program.  The Court GRANTS Defendants' Motion for a protective order with respect to all other substance abuse programs at the Sierra Conservation Center.

7.   The documents shall be produced within 10 days of the date of service of this order.

IT IS SO ORDERED.

Dated:   **August 7, 2012**                    _____**/s/ Barbara A. McAuliffe**_____
                                                                  UNITED STATES MAGISTRATE JUDGE